**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LAUREN ADELE OLIVER,

     Plaintiff,

v.                                                                          Civ. No. 20-237 KK/SCY

MEOW WOLF, INC. *et al.,*

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on: (1) Defendants' Partial Motion to Dismiss (Doc. 32) ("Motion"), filed August 3, 2020; and, (2) Plaintiff's Request for Judicial Notice (Doc. 36) ("Request"), filed August 24, 2020.  Plaintiff filed a response in opposition to Defendants' Motion on August 24, 2020, and Defendants filed a reply in support of it on September 14, 2020.  (Docs. 35, 44.)  Defendants, in turn, filed a response in partial opposition to Plaintiff's Request on September 14, 2020, and Plaintiff filed a reply in support of it on September 27, 2020.  (Docs. 45, 47.)  Having reviewed the parties' submissions, the record, and the relevant law, taking judicial notice of certain documents in Plaintiff's Request, and being otherwise sufficiently advised, the Court FINDS that Defendants' Motion is well taken in part.  Plaintiff's conversion claims are hereby dismissed without prejudice to her ability to file an amended complaint within thirty (30) days of entry of this Order, and in all other respects the Court denies Defendants' Motion.

**I.  <u>Factual Background and Procedural History</u>**

In her Complaint for Violation and Threatened Violation of the Visual Artists Rights Act, Copyright Infringement, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Conversion, Misrepresentation, and Constructive Trust (Doc. 1)

("Complaint"), Plaintiff Lauren Adele Oliver alleges the following.[1]  In or about 2006, Plaintiff first sketched "the Space Owl," an original "owl-like alien . . . with horns and a face visor."  (Doc. 1 at 3.)  She developed, created, and exhibited versions of this character in various art media and venues through at least 2015, placing the Space Owl at the center of "a climate change-themed art project" entitled "Ice Station Quellette" ("ISQ").  (*Id.* at 3-4.)  Plaintiff holds registered copyrights for the Space Owl and ISQ.  (*Id.* at 11.)

Defendant Meow Wolf, Inc. ("MWI") is a Delaware corporation formed in November 2016. (Doc. 1 at 2; Doc. 37-4.[2])  Defendant Vince Kadlubek was at relevant times a director and/or officer of Defendant MWI.  (Doc. 1 at 2.)  Before Defendant MWI's incorporation, "Meow Wolf" was an "artists' collective" that acted through Defendant Kadlubek and other representatives.[3] (*See id.* at 3-6.)

In late 2014 or early 2015, Meow Wolf representatives began to solicit proposals for a "permanent flagship project" called the "House of Eternal Return" ("HoER").  (*Id.* at 4.)  The HoER was to be a "jam-packed art playland" featuring the works of "dozens of artists," installed in a former bowling alley leased to Meow Wolf for a nominal sum.  (*Id.* at 4-5, 9.)

In early 2015, Meow Wolf representatives asked Plaintiff to install ISQ in the HoER.  (*Id.* at 4.)  "In exchange for [Plaintiff's] timely installation of ISQ at [the] HoER without initial compensation," these representatives, including Defendant Kadlubek, "offered [Plaintiff]

---

[1] Because Defendants bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will decide it based on the allegations in the Complaint, except as otherwise noted.  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

[2] As explained in Section II.A., *infra*, the Court takes judicial notice of the Delaware Department of State webpage at Docket No. 37-4, which indicates the date of Defendant MWI's incorporation.

[3] In her Complaint, Plaintiff fails to identify the business structure, if any, of the "Meow Wolf artists' collective."  (*See generally* Doc. 1.)

membership in the Meow Wolf artists' collective and a right to receive a share of Meow Wolf's revenue." (*Id.* at 5, 17.)

> Meow Wolf's representations constituted an offer: If [Plaintiff] agreed to invest the time and resources necessary to become an original participating artist in [the HoER], [she] might not be paid if the venture failed, but would proportionally share in Meow Wolf's success should it take off.

(*Id.* at 5.) Plaintiff accepted this offer "and expended months of her time and considerable personal resources designing and installing a version of ISQ, including a robust version of the Space Owl, at the HoER." (*Id.* at 6.)

The HoER opened in March 2016. (*Id.* at 12.) It was "a monumental success, generating tens-of-millions in revenue in its first four years." (*Id.* at 11.) As a result, Defendant MWI became "an artistic enterprise . . . valued at hundreds of millions of dollars," with "huge profit margins" and "hundreds of employees." (*Id.* at 6, 11.) The Space Owl, in particular, "became an instant fan favorite" and "a highly recognizable, iconic element" of the HoER, appearing in "countless social media posts" and "[n]umerous local, national, and international press articles." (*Id.* at 12.)

In 2017 or 2018, Defendants began to call artists' compensation a "[b]onus [p]rogram" rather than a revenue share. (*Id.* at 6.) Also, in 2018, Plaintiff discovered that Defendants were "making money from the ISQ without compensating or crediting [her]," including from a coloring book and a coffee table book sold in the HoER gift shop. (*Id.* at 7, 12-13.) Thus, around April 2018, Plaintiff "decided the parties needed to formalize their agreement and relationship." (*Id.* at 7.) When negotiations failed to produce a formal agreement by June 2018, Plaintiff asked Defendant MWI to "stop using the Space Owl until their relationship had been formalized." (*Id.*) Nevertheless, in December 2018, Plaintiff learned that Defendant MWI "had used the Space Owl" in a "self-made puff-piece documentary." (*Id.* at 8.)

In June 2019, Plaintiff met with Defendant Kadlubek.  (*Id.*)  Until that meeting, Plaintiff had "trusted that Defendants would at some point negotiate a reasonable method of compensation in keeping with her contribution and status as a member of the Meow Wolf artists' collective." (*Id.* at 14.)  At the meeting, however, Defendant Kadlubek offered Plaintiff a "cruel ultimatum," *i.e.*, either "sell [Defendant MWI] all rights to the Space Owl for a nominal sum and end the relationship or remove ISQ from [the] HoER without additional compensation and end the relationship."  (*Id.* at 8-9, 14.)  In the months following the meeting, Plaintiff continued to try to "negotiate a fair resolution" but Defendants' position remained the same.  (*Id.* at 9.)  Meanwhile, Defendant MWI "repeatedly threatened [Plaintiff] with the removal of ISQ without her permission."  (*Id.* at 10.)  "Because of the way it is constructed, removal of the installation would require its destruction, including the destruction of the Space Owl."  (*Id.*)

A "significant portion" of Defendant MWI's success and value is "attributable to the ISQ, and its iconic Space Owl."  (*Id.* at 15.)  Nevertheless, to date, Plaintiff has received only $2,000 from Defendants for her installation of ISQ at the HoER, which does "not even cover the personal funds she . . . expended for the installation."  (*Id.* at 8, 15.)

Plaintiff filed this civil action against Defendants MWI and Kadlubek and fifty Doe Defendants on March 16, 2020.  (*Id.* at 1-2.)  In her complaint, Plaintiff asserts claims for copyright infringement, violation of the Visual Artists Rights Act ("VARA"), breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, intentional misrepresentation, negligent misrepresentation, and constructive trust.  (*Id.* at 15-21.)  Based on these claims, she seeks injunctive relief, compensatory, punitive, and statutory damages, equitable relief including disgorgement of unjust enrichment and conveyance of an ownership interest in "the Meow Wolf artists' collective," and attorney's fees and costs.  (*Id.* at 22-24.)  In their Motion,

Defendants ask the Court to dismiss all of Plaintiff's claims against Defendant MWI except her copyright infringement and VARA claims, and all of her claims against Defendant Kadlubek. (Doc. 32-1 at 5.) In opposing the Motion, Plaintiff asks the Court to take judicial notice of five documents not attached to or incorporated into her Complaint.  (Doc. 36 at 1-2.)

## II. **Analysis**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249.  "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020).

In determining whether a complaint states a plausible claim to relief, courts "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

Courts evaluating a motion to dismiss may consider not only the factual allegations in the complaint, "but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d

1194, 1201 (10th Cir. 2011).  Courts may also consider documents not attached to or specifically incorporated into the complaint if the complaint refers to the documents, the documents are central to the plaintiff's claim, and the parties do not dispute their authenticity.  *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1247 (D.N.M. 2011).  Finally, on a Rule 12(b)(6) motion, courts may take judicial notice of appropriate facts and records.  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Hill*, 834 F. Supp. 2d at 1247.  The Court will consider Plaintiff's Request and Defendants' Motion in light of the foregoing standards.

A.      **Plaintiff's Request**

In her Request, Plaintiff asks the Court to take judicial notice of five documents not attached to or incorporated by reference into her Complaint in resolving Defendants' Motion. (Doc. 36 at 1-2.)  These documents are:

(1)      The Delaware Department of State, Division of Corporations' "Entity Details" regarding Defendant MWI as of August 17, 2020 (Doc. 37-4) ("Delaware DOS webpage"), at:

https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx;

(2)      The New Mexico Department of State, Division of Corporations' "Search Information" regarding Defendant MWI as of August 17, 2020 (Doc. 37-5) ("New Mexico DOS webpage"), at:

https://portal.sos.state.nm.us/BFS/online/CorporationBusinessSearch/CorporationBusinessInformation;

(3)      The TEDxABQ Talk given by Defendant Kadlubek on September 12, 2015 entitled "Radically Inclusive Art" (Doc. 37-1) ("TEDx Talk"), at:

https://www.youtube.com/watch?v=F0x4__QRPIg;

(4)      Jesse Roth's February 17, 2020 article entitled "The Reinventions of Meow Wolf's Vince Kadlubek," in *Dent* (Doc. 37-2) ("Roth article"), at:

https://dentthefuture.com/2020/the-reinventions-of-meow-wolfs-vince-kadlubek/;

and,

(5)      Brendan L. Smith's July 25, 2017 article entitled "Interactive Art Center Meow Wolf is Forging a New Business Model for Artists," in *Hyperallergic* (Doc. 37-3) ("Smith article"), at:

https://hyperallergic.com/392154/interactive-art-center-meow-wolf-is-forging-a-new-business-model-for-artists/.

(Doc. 36 at 1-2.)

Courts may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) ("Judicial notice is proper when a fact is beyond debate, for instance, what time the sun sets on a given day.").  However, "judicial notice is inappropriate for disputed facts because it precludes a party from introducing contrary evidence and raises serious due process concerns." *Arjouan v. Cabré*, Civ. No. 17-782 PJK/JHR, 2018 WL 1413031, at *1 (D.N.M. Mar. 21, 2018) (citing *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002)).

Courts may also judicially notice documents such as their own files and other public records.  *Tal*, 453 F.3d at 1264 n.24.  However, such records "may only be considered to show their contents, not to prove the truth of matters asserted therein."  *Id.*  Likewise, courts have taken judicial notice of news articles, but only to show "what was in the public realm at the time," and not for the truth of the articles' contents.  *Estate of Lockett*, 841 F.3d at 1111.  For the Court to

take judicial notice of a fact asserted in a document for its truth, that fact would have to satisfy Rule 201(b)'s requirements.  *See* Fed. R. Evid. 201(b).

Notably, on a Rule 12(b)(6) motion, the Court must assume the truth of a complaint's factual allegations, *Schrock*, 727 F.3d at 1280, and is "not concerned with evidence that the parties might bring supporting or challenging those allegations."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 n.1 (10th Cir. 2009).  Thus, there is neither need nor justification for the Court to take judicial notice of facts redundant to the allegations in a plaintiff's complaint in deciding a motion to dismiss.

Here, Defendants do not oppose Plaintiff's request for the Court to take judicial notice of the Delaware and New Mexico DOS webpages.  (Doc. 45 at 1.)  Also, these two webpages and their contents satisfy the requirements for judicial notice because the webpages are public records and their contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and are "not subject to reasonable dispute."  *Tal*, 453 F.3d at 1264 n.24; Fed. R. Evid. 201(b)(2).  Further, at least one fact in the Delaware DOS webpage—*i.e.*, Defendant MWI's date of incorporation—is material to the resolution of Defendants' Motion and not redundant to the allegations in the Complaint.  The Court will therefore grant the portion of Plaintiff's Request seeking judicial notice of the Delaware and New Mexico DOS webpages and their contents.

However, as Defendants assert, it would be inappropriate for the Court to take judicial notice of the three remaining documents.  (Doc. 45 at 1-3.)  Regarding the TEDx Talk, even if the Court were to assume that the accuracy of the recording is beyond reasonable dispute, Defendant Kadlubek did not in this talk make any statements that would add anything material to Defendants' Motion to the allegations in Plaintiff's Complaint.  (*Compare generally* Doc. 1 *with* Doc. 37-1.)

For example, although Defendant Kadlubek at times referred to Meow Wolf as a "collective," these references are wholly redundant to the Complaint's allegations.[4]  Because the TEDxTalk would essentially function as evidence supporting Plaintiff's allegations and would add nothing material to the Complaint, the Court need not and should not take judicial notice of it at this stage. *Christy Sports, LLC*, 555 F.3d at 1191 n.1.

As for the Roth and Smith articles, the Court could take judicial notice of them to show "what was in the public realm at the time." *Estate of Lockett*, 841 F.3d at 1111.  However, "what was in the public realm at the time" is not relevant to any of the issues raised in Defendants' Motion.  And, even if some of the facts asserted in these articles are potentially material and not redundant to Plaintiff's Complaint,[5] the Court cannot take judicial notice of them for their truth, because the accuracy of the articles' contents is very much subject to reasonable dispute.[6]  *Id.*; Fed. R. Evid. 201(b).

More broadly, the Court notes that, if a plaintiff wishes to defend against a motion to dismiss based on disputed facts omitted from her original complaint, she should file a motion to amend the complaint to allege these facts, not seek judicial notice of them via sources whose accuracy is debatable.  *See Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020) ("District

---

[4]  *Inter alia*, the Complaint alleges that

> Meow Wolf representatives, including [Defendant] Kadlubek, repeatedly described participating artists, including [Plaintiff], as part of the "collective."  Examples of representatives describing Meow Wolf as a collective abound in local and national publications. To this day, Meow Wolf's website touts its status as a "collective[.]"

(Doc. 1 at 5.)

[5] For example, the Smith article states that, as of July 2017, "Meow Wolf" was "an employee-owned company with a revenue-sharing plan for the more than 135 artists who created [the HoER]."  (Doc. 37-3 at 3.)  This statement goes beyond the Complaint's allegations and could, if accepted as true, be material to the issues raised in Defendants' Motion.

[6]  For example, the Roth article states that Meow Wolf became a corporation in 2017, but the Delaware DOS webpage indicates that the corporation was formed in 2016.  (*Compare* Doc. 37-2 at 4 *with* Doc. 37-4 at 2.)

courts should freely give leave to amend when justice so requires.") (brackets and quotation marks omitted). For these reasons, the Court will deny the portion of Plaintiff's Request seeking judicial notice of the TEDx Talk and Roth and Smith articles and their contents at this time.

**B.     Defendants' Motion**

In their Motion, Defendants ask the Court to dismiss Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, intentional misrepresentation, negligent misrepresentation, and constructive trust, for failure to state a claim. (Doc. 32-1 at 5-6.) Defendants also ask the Court to dismiss all of Plaintiff's claims against Defendant Kadlubek because she has sued him personally for actions he took as a corporate officer. (*Id.* at 5-6, 19.) The Court will address each of Defendants' arguments in turn.

**1.     Plaintiff's Breach of Contract Claims**

Defendants first argue that the Court should dismiss Plaintiff's breach of contract claims because Plaintiff has failed to allege the existence of a contract or, in the alternative, because the statute of frauds bars enforcement of the contract she has alleged. (Doc. 32-1 at 9-13.)

*a.     The Existence of a Contract*

Under New Mexico law,[7] "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Res. Assocs. Grant Writing &*

---

[7] The parties have stipulated that substantive New Mexico law governs Plaintiff's state law claims in this case. (Doc. 23 at 2); *see Barnett*, 956 F.3d at 1237 n.2. ("[A] federal court applies the substantive law of the forum state . . . when [it] exercises supplemental jurisdiction over state law claims in a federal question lawsuit.") (quotation marks and ellipses omitted).

> When the federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule. Where a state's highest court has not addressed an issue of law, a starting point . . . is the decisions of the state's intermediate court of appeals and those decisions are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200, 1246 (D.N.M. 2016).

> A complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

*Id.* (brackets omitted); *Rio Real Estate Inv. Opportunities, LLC v. Tesla Motors, Inc.*, No. CV 12-758 JP/ACT, 2013 WL 12136382, at *4 (D.N.M. Feb. 28, 2013); *McCasland v. Prather*, 1978-NMCA-098, ¶ 7, 92 N.M. 192, 194, 585 P.2d 336, 338.

 "[I]ndefiniteness can defeat a contract claim in two ways.  First, indefiniteness can indicate that the parties failed to reach an agreement." *Am. Nat. Prop. & Cas. Co. v. United Specialty Ins. Co.*, 592 F. App'x 730, 739 (10th Cir. 2014) (quoting *Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 6, 124 N.M. 111, 114, 946 P.2d 1122, 1125).  And second, indefiniteness can render an agreement unenforceable because its terms are not reasonably certain.  *Id.*

As to the first point, indefiniteness does not conclusively establish the absence of a bargain in every case.  *Padilla*, 1997-NMCA-104 at ¶ 7, 124 N.M. at 114, 946 P.2d at 1125.  However, as the second point makes clear, "[e]nforceability of a contract requires more than just the parties' intent to be bound." *Id.* at ¶ 8, 124 N.M. at 114, 946 P.2d at 1125.  Even if it is intended as such, an offer "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Id.*  The terms of a contract are "reasonably certain" when they provide a basis for (1) "determining the existence of a breach," and (2) providing "an appropriate remedy." *Id.*; *Las*

---

*Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947–48 (10th Cir. 2018) (citation and quotation marks omitted).  The Court will consider Defendants' Motion in light of the foregoing principles.

*Cruces Urban Renewal Agency v. El Paso Elec. Co.*, 1974-NMSC-004, ¶ 14, 86 N.M. 305, 309, 523 P.2d 549, 553 (same); *see also Am. Nat. Prop. & Cas. Co.*, 592 F. App'x at 739 ("The question . . . is whether there is a sufficient basis for ascertaining a breach and remedying it.").

Critically, "under New Mexico law, an oral contract can be enforceable even where it is missing some terms that appear material." *Fiore Indus., Inc. v. Ericsson*, No. CV 18-1218 SCY/JFR, 2019 WL 5595190, at *8 (D.N.M. Oct. 30, 2019). Of particular relevance in this case, if the price of goods or services "is left to be agreed by the parties and they fail to agree," then the price "is set as a reasonable price at the time for delivery." *Padilla*, 1997-NMCA-104 at ¶ 9, 124 N.M. at 114-15, 946 P.2d at 1125-26 (quotation marks and ellipses omitted). Similarly, "when an agreement does not specify a time for performance, it is implied that it is to be performed within a reasonable time, and what is a reasonable time is a question of fact." *Beaver v. Brumlow*, 2010-NMCA-033, ¶ 30, 148 N.M. 172, 180, 231 P.3d 628, 636.

In the present matter, Defendants argue that Plaintiff has failed to plausibly allege the existence of a contract because the parties' alleged agreement is too indefinite to be enforced. (Doc. 32-1 at 9-12.) The Court will consider this argument in light of the terms on which Plaintiff claims the parties agreed, as well as the terms on which she admits they did not. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

In her Complaint, Plaintiff alleges that, in exchange for her timely installation of ISQ at the HoER without initial compensation, Defendants agreed to provide her with future compensation in the form of an ownership interest in the Meow Wolf "collective" and a "right to receive a share of Meow Wolf's revenue . . . proportionate with any increased value of Meow

Wolf's brand and enterprise and any increased revenue" Meow Wolf realized.[8]  (Doc. 1 at 17.)

However, she implicitly but unmistakably concedes that the parties did *not* agree on the specific

amount or value of her future compensation, exactly how this compensation was to be calculated,

or the specific terms governing the ownership interest and revenue share she was to receive.  (*See,*

*e.g.*, Doc. 1 at 6, 14.)  Rather, Plaintiff "trusted" that Defendants would "work with her to formalize

a mechanism by which she could share in Meow Wolf's extraordinary success" and "would at

some point negotiate a reasonable method of compensation."  (*Id.*)  Relatedly, the Complaint

suggests that the parties never agreed on a specific time when Plaintiff's compensation would be

due.  (*See id.*)

It is certainly possible that Plaintiff will be unable to prove the existence of a valid and

binding contract at summary judgment or trial because the parties' alleged agreement is too

indefinite to be enforced.  For purposes of this Rule 12(b)(6) motion, however, the Court finds that

Plaintiff's allegations are sufficient to "nudge[]" her breach of contract claims "across the line

from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

Complaint indicates that the parties "left the payment term to later negotiations" and failed to

agree.  *Padilla*, 1997-NMCA-104 at ¶ 10, 124 N.M. at 115, 946 P.2d at 1126.  In these

circumstances, New Mexico law permits a finding "that the parties have reached an enforceable

contract . . . for a reasonable payment."  *Id*. (quotation marks omitted).  Similarly, although the

Complaint suggests that the parties did not agree on when Defendants should compensate Plaintiff,

New Mexico law permits a finding that compensation was due "within a reasonable time."  *Beaver*,

2010-NMCA-033 at ¶ 30, 148 N.M. at 180, 231 P.3d at 636.

---

[8] Defendants repeatedly characterize the parties' alleged agreement as "a contract to enter into a future contract" or an "agreement to agree."  (*See, e.g.*, Doc. 32-1 at 12; Doc. 44 at 4.)  However, in light of Plaintiff's allegations that she actually and fully performed her obligations under the agreement, (Doc. 1 at 17), this characterization is inapposite.

In so holding, the Court does not mean to suggest that Plaintiff could recover the value of the ownership interest and revenue share she claims she was promised as a "reasonable payment," *Padilla*, 1997-NMCA-104 at ¶ 10, 124 N.M. at 115, 946 P.2d at 1126, unless she is able to allege and prove more and different facts than those alleged in her present Complaint.  As already noted, the Complaint indicates that the parties never agreed on the specific terms that would govern the promised ownership interest and revenue share.[9]  Further, Plaintiff has identified no authority that would permit the Court to create these terms out of whole cloth.  Ownership interests and revenue shares are considerably more complex than the simple monetary compensation New Mexico law allows courts to imply.  Absent any specific terms to govern them, it would be impossible to assign an appropriate value to these assets.

Nevertheless, based on the allegations in the Complaint, there are two ways in which the Court could determine that the parties entered into an enforceable contract despite their failure to agree on the amount of or method of calculating Plaintiff's compensation.  *Id.* (quotation marks omitted).  First, Plaintiff could "argue[] for a 'reasonable' fee" and "suggest[ a] method of computing such a fee."  *Id.* at ¶ 11, 124 N.M. at 115, 946 P.2d at 1126.  For example, Plaintiff could seek compensation for her labor at a reasonable hourly rate and for the cost of her materials at a fair market price; or, she could seek compensation at the appraised value of ISQ.  Second, Plaintiff could demonstrate that, though the parties never agreed on an exact amount or method of compensation, they did agree on a range of alternatives, which would support an award "in

---

[9] *Inter alia*, Plaintiff's Complaint suggests that the parties failed to agree on what percentage of the Meow Wolf collective Plaintiff would own and what percentage of its revenue she would receive. (*See generally* Doc. 1.)  Plaintiff could of course seek leave to amend her Complaint to allege that the parties agreed on these terms if the Complaint states her intended position inaccurately or incompletely.

accordance with the alternative that will result in the smallest recovery."[10]  *Id.* at ¶ 12, 124 N.M. at 115, 946 P.2d at 1126.  In sum, "because New Mexico would not necessarily require a plaintiff to prove the existence of every detail of the contract even at trial, it is unreasonable to hold Plaintiff to the requirement of pleading every detail of a contract in order to allege its existence."  *Fiore Indus., Inc.*, 2019 WL 5595190 at *8.  The Court finds that Plaintiff has adequately alleged the existence of a contract.

> b.    *The Statute of Frauds*

Defendants argue in the alternative that if Plaintiff *has* alleged the existence of a contract, the statute of frauds bars its enforcement.  (Doc. 32-1 at 12-13.)  Under New Mexico law, the statute of frauds generally bars the enforcement of oral contracts that cannot be performed within one year.[11]  *Leon v. Kelly*, 618 F. Supp. 2d 1334, 1341 (D.N.M. 2008); *Skarda v. Skarda*, 1975-NMSC-028, ¶ 21, 87 N.M. 497, 501, 536 P.2d 257, 261; *Matter of Estate of Bergman*, 1988-NMCA-061, ¶ 8, 107 N.M. 574, 577, 761 P.2d 452, 455.  However, "full performance of an oral contract not to be performed within one year renders the contract enforceable by the party who has performed."  *Gaming Fin. Assocs., Inc. v. Infinity Grp. Inc.*, No. CV 05-609 LCS/LAM, 2006 WL 8444087, at *3 (D.N.M. Jul. 14, 2006); *Estate of Bergman*, 1988-NMCA-061 at ¶ 9, 107 N.M. at 577, 761 P.2d at 455.

In their Motion, Defendants argue that the statute of frauds bars enforcement of the alleged oral contract at issue because the contract could not be performed within one year.  (Doc. 32-1 at 12-13.)  However, as Plaintiff points out in her response, the Complaint plausibly alleges that she

---

[10] In their reply, Defendants baldly assert that, "[h]ere . . . there is no agreed range—and even if there were, no agreement on what that range would apply to and how it would be calculated."  (Doc. 44 at 3.)  However, nothing in the Complaint requires the Court to accept this unsupported assertion.

[11] There appears to be no dispute that the contract Plaintiff has alleged is an oral one.

"performed all duties required of her under the contract." (Doc. 1 at 17.) Accepting this allegation as true, Plaintiff is entitled to enforce the contract even if it could not be performed within a year. *Gaming Fin. Assocs., Inc.*, 2006 WL 8444087 at *3; *Estate of Bergman*, 1988-NMCA-061 at ¶ 9, 107 N.M. at 577, 761 P.2d at 455.

Attempting to refute this point, Defendants argue that Plaintiff could not have fully performed under the contract because her performance "did not . . . [end] with the installation of Space Owl," but rather "extended" to its "display" at the HoER for at least ten years. (Doc. 44 at 7-8 (emphases omitted).) However, nothing in the Complaint suggests that *Plaintiff* was or is obligated, or indeed had or has any ability, to display ISQ at the HoER. On the contrary, according to Plaintiff's allegations, it is *Defendants* who have at all relevant times controlled access to the HoER and who have thus had the sole ability to display the artwork installed there. (*See* Doc. 1 at 4-5 (alleging that Meow Wolf leased the building in which the HoER is located for ten years in late 2014 or early 2015).)

True, Plaintiff's consent for Defendants to display ISQ was necessarily an express or implied term of the parties' alleged contract, for at least two reasons. First, a primary purpose of the contract was to make money by displaying artwork to the public for a fee, and Plaintiff's consent to display ISQ was indispensable to achieve that end. (*See generally id.*) Second, as Defendants observe, Plaintiff's consent to display ISQ was required to provide consideration for Defendants' assent to the contract, because installation alone would confer no benefit on them. (Doc. 44 at 8); *see generally Fiore Indus., Inc.*, 2019 WL 5595190 at *7 ("For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, *consideration*, and mutual assent.") (emphasis added).

However, the Complaint amply supports the inference that Plaintiff in fact gave her consent for Defendants to display ISQ, not least by indicating that Defendants did display it very publicly for several years and Plaintiff knew and did not object.  (Doc. 1 at 6, 17.)  Thus, notwithstanding Defendants' arguments to the contrary, Plaintiff has plausibly alleged that she fully performed under the contract, and the statute of frauds does not bar her from enforcing it at this juncture. *Gaming Fin. Assocs., Inc.*, 2006 WL 8444087 at *3; *Estate of Bergman*, 1988-NMCA-061 at ¶ 9, 107 N.M. at 577, 761 P.2d at 455.  For this reason, and because Plaintiff has sufficiently alleged the existence of a contract, the Court will deny Defendants' Motion to the extent that it seeks dismissal of Plaintiff's breach of contract claims for failure to state a claim.

**2.      Plaintiff's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendants next argue that the Court should dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing.  (Doc. 32-1 at 14-15.)  "New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract."  *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 144 N.M. 449, 452, 188 P.3d 1200, 1203.  "The implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement."  *Id.* (quotation marks omitted).  A party breaches the implied covenant when it "wrongfully and intentionally use[s] the contract to the detriment of the other party."  *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 64, 115 N.M. 690, 706, 858 P.2d 66, 82, *holding limited on other grounds by Davis v. Devon Energy Corp.*, 2009–NMSC–048, ¶¶ 34–35, 147 N.M. 157, 167-68, 218 P.3d 75, 85-86.

Defendants make three arguments in opposition to Plaintiff's implied covenant claims. First, they argue that the Court should dismiss these claims because Plaintiff has not alleged the

existence of an enforceable contract.  (Doc. 32-1 at 14.)  In this regard, Defendants are correct that, "[i]f there is no enforceable contract, one cannot bring a claim for breach of the covenant of good faith and fair dealing sounding in contract."  *Rio Real Estate Inv. Opportunities, LLC*, 2013 WL 12136382 at *5.  However, as discussed in Section II.B.1., *supra*, Plaintiff *has* alleged the existence of an enforceable contract.  As such, Defendants' first argument is without merit.

Defendants next argue that Plaintiff cannot recover for breach of the implied covenant of good faith and fair dealing *in tort* because she has not alleged that she had a "special relationship" with Defendants.  (Doc. 32-1 at 15); *see African-Am. Cultural Ass'n, Inc. v. Davidson Hotel Co.*, No. CIV 99-1421 BB/WWD, 2000 WL 36739514, at *5 (D.N.M. Oct. 24, 2000) (holding that, absent a special relationship, a plaintiff who proves a breach of the implied covenant can recover in contract but not in tort).  This argument is true as far as it goes but does not entitle Defendants to dismissal of Plaintiff's implied covenant claims because, as just discussed, she has plausibly alleged that she is entitled to recover on these claims *in contract*.

Finally, Defendants argue that the Court should dismiss Plaintiff's implied covenant claims because the only breach Plaintiff has alleged is of the contract itself, and not of the covenant of good faith and fair dealing.  (Doc. 32-1 at 14; Doc. 44 at 10.)  In support of this argument, Defendants cite to *Guidance Endodontics, LLC v. Dentsply International, Inc.*, 708 F. Supp. 2d 1209 (D.N.M. 2010).  Applying Delaware law, the court in that case held that an "implied-covenant claim cannot survive if an express term of the contract governs the conduct."  *Id.* at 1236.

Assuming without deciding that New Mexico law tracks Delaware law on this point, the Court finds that Plaintiff has plausibly alleged sufficient facts to show that Defendants breached the implied covenant of good faith and fair dealing in a manner not governed by an express contract term.  Specifically, Plaintiff has alleged that Defendants used the parties' contract to profit from

Plaintiff's work while wrongfully and substantially delaying negotiations regarding her compensation.  (Doc. 1 at 7-8; *see* Doc. 35 at 11.)  Plaintiff has therefore stated a claim for breach of the implied covenant.  *Guidance Endodontics, LLC*, 708 F. Supp. 2d 1236; *Cont'l Potash, Inc.*, 1993-NMSC-039 at ¶ 64, 115 N.M. at 706, 858 P.2d at 82.  For these reasons, the Court will deny the portion of Defendants' Motion seeking dismissal of Plaintiff's claims for breach of the implied covenant of good faith and fair dealing for failure to state a claim.

### 3.    Plaintiff's Unjust Enrichment Claims

Defendants next ask the Court to dismiss Plaintiff's unjust enrichment claims.  "One who has been unjustly enriched at the expense of another may be required by law to make restitution. This quasi-contractual obligation is created by the courts for reasons of justice and equity, notwithstanding the lack of any contractual relationship between the parties."  *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 8, 110 N.M. 173, 175, 793 P.2d 855, 857 (citation omitted). "[T]o prevail on an unjust enrichment claim, a party must demonstrate that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allow[ing] the other to retain the benefit would be unjust."  *Res. Assocs. Grant Writing & Evaluation Servs., Inc.*, 193 F. Supp. 3d at 1246–47 (quotation marks omitted); *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414, 428–29.

A claim for unjust enrichment sounds in equity. *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, 129 N.M. 200, 204, 3 P.3d 695, 699.  "[E]quity does not take the place of remedies at law, it augments them; in this regard, an action in contract [is] preferred to one in quasi-contract."  *Id.*  On this basis, the Tenth Circuit has held that, under New Mexico law, "quasi-contractual remedies are not to be created when an enforceable express contract regulates the

relations of the parties with respect to the disputed issue." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (ellipses omitted).[12]

Defendants make three arguments in opposition to Plaintiff's unjust enrichment claims. First, Defendants argue that the Court should dismiss these claims because they are duplicative of and barred by her breach of contract claims.  (Doc. 32-1 at 14-16.)  This may ultimately be true if "an enforceable express contract" is found to "regulate[]" the parties' relations "with respect to the disputed issue." *Elliott Indus. Ltd. P'ship*, 407 F.3d at 1117.  To date, however, Defendants have vigorously disputed the existence of an enforceable contract that regulates the parties' relations, and if they prevail on this point, there will be no contractual bar to Plaintiff's unjust enrichment claims.  Plaintiff is therefore entitled to plead her breach of contract and unjust enrichment claims in the alternative.[13] *Fiore Indus., Inc.*, 2019 WL 5595190 at *8 ("Plaintiff is permitted to plead contract and quasi-contract theories in the alternative."); Fed. R. Civ. P. 8(d)(2), (3) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count

---

[12] After the Tenth Circuit decided *Elliott Industries*, the New Mexico Court of Appeals issued an opinion in which it stated that a "contractual relationship" does not "automatically foreclose" a claim for unjust enrichment.  *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶¶ 91, 94, 276 P.3d 252, 278, *rev'd on other grounds sub nom. Starko, Inc. v. New Mexico Human Servs. Dep't*, 2014-NMSC-033, ¶ 1, 333 P.3d 947, 949.  However, in that context, the *Starko* court went on to observe that New Mexico procedural rules "provide[] for alternative pleading of civil claims," which suggests a more limited holding that a contract claim does not foreclose an unjust enrichment claim when these claims are pled in the alternative.  *Id.* at ¶ 94, 276 P.3d at 278.  In the Court's view, *Elliott Industries* and *Starko* can be harmonized, because *Elliott Industries* does not purport to bar alternative pleading of contract and unjust enrichment claims.  However, to the extent the two decisions are inconsistent, this Court is bound to follow *Elliott Industries*.  *See Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1271 (D.N.M. 2014) (When the Tenth Circuit "has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved the issue.").

[13] According to Defendants, the Complaint does not indicate Plaintiff's intent to plead these claims in the alternative.  (Doc. 44 at 8.)  The Court disagrees.  Every count in the Complaint begins with the language, "[Plaintiff] repeats and realleges the averments contained in all other paragraphs of this complaint as though fully set forth, *except to the extent they are contrary to this claim for relief*."  (Doc. 1 at 15-21 (emphasis added).)  This language, though it could be clearer, sufficiently indicates alternative pleading.

. . . or in separate ones. . . .   A party may state as many separate claims . . . as it has, regardless of consistency.").

Next, Defendants argue that Plaintiff cannot use her unjust enrichment claims to "plead around" contract claims that are deficient due to the statute of frauds.  (Doc. 32-1 at 14.)  However, this argument fails for the simple reason that Plaintiff's contract claims are *not* deficient due to the statute of frauds, as explained in Section II.B.1.b., *supra*.[14]

Finally, Defendants argue that the Court should dismiss Plaintiff's unjust enrichment claims because Plaintiff "fails to allege the requisite element of inequity, other than in an entirely conclusory . . . manner."  (Doc 32-1 at 15.)  This argument is groundless.  In her Complaint, Plaintiff alleges that:  (a) she spent months of her time and her own money installing ISQ in the HoER; (b) ISQ contributed significantly to the HoER's extraordinary success; and, (c) Defendants consequently earned "millions of dollars in revenue" with "huge profit margins"; but, (d) to date, Defendants have paid Plaintiff only $2,000, "which did not even cover the personal funds she . . . expended for the installation of ISQ at HoER."  (Doc. 1 at 6, 8, 15.)  These allegations are not conclusory and, accepted as true, plainly establish "the requisite element of inequity."  (Doc. 32-1 at 15.)  For these reasons, the Court will deny Defendants' Motion to the extent that it seeks dismissal of Plaintiff's unjust enrichment claims for failure to state a claim.

### 4.   Plaintiff's Conversion Claims

Defendants next argue that the Court should dismiss Plaintiff's conversion claims. "Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's

---

[14] For the same reason, the Court rejects Defendants' arguments that Plaintiff cannot use her implied covenant, conversion, and misrepresentation claims to "plead around" contract claims that are deficient due to the statute of frauds.  (*See* Doc. 32-1 at 14.)

property, or a wrongful detention after demand has been made." *Hollow Spirits, LLC v. Corson Distilling Sys., Inc.*, No. CV 18-257 MV/JFR, 2020 WL 1963188, at *13 (D.N.M. Mar. 9, 2020), *report and recommendation adopted,* No. CV 18-257 MV/JFR, 2020 WL 1954152 (D.N.M. Apr. 23, 2020); *Sec. Pac. Fin. Servs., a Div. of Bank of Am., FSB v. Signfilled Corp.*, 1998-NMCA-046, ¶ 15, 125 N.M. 38, 43, 956 P.2d 837, 842.  To state a claim for conversion, a plaintiff must allege that she owned the property or had the right to possess it at the time of conversion.  *Aragon v. Gen. Elec. Credit Corp.*, 1976-NMCA-099, ¶ 13, 89 N.M. 723, 725, 557 P.2d 572, 574.

Although "several New Mexico cases define the tort of conversion as involving the wrongful possession or use of 'chattels,' . . . none of these cases had occasion to decide whether the tort should be limited to tangible personal property." *Tomlinson v. Burkett*, No. A-1-CA-35610, 2018 WL 3868704, at *5 ¶ 23 (N.M. App. Jul. 18, 2018) (unpublished).  Further, "several New Mexico cases . . . have upheld judgments for conversion in situations involving" intangible property such as "loan proceeds or specifically-identifiable amounts of money."  *Id.* at *5 ¶ 24 (citing cases).  Thus, though the "common-law rule" is that an action for conversion will lie only "for interference with rights in tangible personal property," it is unclear to what extent, if any, New Mexico follows that rule.  *Id.* at *5-*6 ¶¶ 23-25.

In their Motion, Defendants first argue that the Court should dismiss Plaintiff's conversion claims because she has not alleged that Defendants converted "any *physical property* . . . that belonged to her."  (Doc. 32-1 at 19 (emphasis added).)  In this regard, Defendants are correct that Plaintiff's Complaint expressly limits her conversion claims to intangible property, *i.e.*, her alleged "ownership and contractual interests in the Meow Wolf artists' collective."[15]  (Doc. 1 at 19-20.)

---

[15] In her response, Plaintiff argues that, if there was no enforceable contract between the parties, then Defendants converted ISQ, which is tangible property.  (Doc. 35 at 14.)  However, this argument cannot override the Complaint's express exclusion of ISQ from her conversion claims.  (Doc. 1 at 11, 20); *see Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (declining to consider "extraneous arguments" in briefing because motion to dismiss tests "the legal

However, as just noted, New Mexico law is unsettled regarding whether a conversion action will lie for interference with intangible property and if so, in what circumstances.  Moreover, neither side has acknowledged this uncertainty or addressed how the New Mexico Supreme Court might resolve it.  (*See* Doc. 32-1 at 16; Doc. 35 at 13-14; Doc. 44 at 11-12); *see Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) ("When . . . called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").  The Court is disinclined to dismiss Plaintiff's conversion claims on the basis of an undeveloped argument that depends on unsettled state law.

However, Defendants also argue, more persuasively, that the Court should dismiss Plaintiff's conversion claims because she has not plausibly alleged that she possessed an ownership interest in the property she claims Defendants converted, *i.e.*, the Meow Wolf collective.  (Doc. 32-1 at 16.)  As noted above, to state a claim for conversion, Plaintiff must allege that she owned the property or had the right to possess it at the time of conversion.  *Aragon*, 1976-NMCA-099 at ¶ 13, 89 N.M. at 725, 557 P.2d at 574.  Although the Complaint does allege that Plaintiff "held an ownership interest in the Meow Wolf artists' collective" upon installation of ISQ at the HoER, (Doc. 1 at 11), this conclusory allegation is simply not plausible in light of the more specific factual allegations that directly contradict it.  According to the latter allegations, Defendants promised Plaintiff an ownership interest in the collective, but this promise was never fulfilled because the parties left the terms of ownership to later negotiation and failed to reach an agreement.[16]  (Doc. 1 at 5-8, 14.)

---

sufficiency of the allegations contained within the four corners of the complaint").  If Plaintiff has misstated or reconsidered her position on this point, she should seek leave to amend her Complaint accordingly.

[16] Plaintiff's specific factual allegations on this point are not pled in the alternative.  (*See* Doc. 1 at 5-8, 14.)

Nor can Plaintiff rely on her "contractual interests" to create the requisite right to possess the property at issue, for two reasons.  (Doc. 1 at 19); *Aragon*, 1976-NMCA-099 at ¶ 13, 89 N.M. at 725, 557 P.2d at 574.  First, as discussed in Section II.B.1.a., *supra*, Plaintiff's alleged contractual right to an ownership interest in the Meow Wolf artists' collective is simply too amorphous to be enforced.  As such, it cannot give her a right to possess a portion of the collective.

Second, even if Plaintiff's alleged contractual right to an ownership interest in the collective were enforceable, it would not support a claim for conversion, because such a claim will not lie where a plaintiff has failed to allege "that there was a legal duty imposed upon the defendants independent of the contract itself, or that the defendants engaged in tortious conduct separate and apart from their failure to fulfill their contractual obligations."  *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 85, 406 P.3d 1012, 1032 (quoting *D'Ambrosio v. Engel*, 741 N.Y.S.2d 42, 44 (N.Y.A.D. 2002)).  Here, Plaintiff's claimed interest in the Meow Wolf collective is dependent on the parties' alleged contract, and she has not alleged that Defendants engaged in tortious conversion separate and apart from their failure to keep their promise to preserve and transfer that interest to her.

In sum, the Court finds that a conversion action will not lie for interference with Plaintiff's alleged "ownership and contractual interests in the Meow Wolf artists' collective," and will dismiss Plaintiff's conversion claims for that reason.  (Doc. 1 at 19-20.)  However, the Court cannot say with certainty that granting Plaintiff leave to amend these claims would be futile.  The Court will therefore dismiss the claims without prejudice to Plaintiff's ability to file an amended complaint asserting conversion claims that conform to the legal standards discussed in this section. *Cf. Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[D]ismissal with

prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.") (brackets, ellipses, and quotation marks omitted).

### 5.    Plaintiff's Misrepresentation Claims

Defendants next seek dismissal of Plaintiff's claims for intentional and negligent misrepresentation.  The elements of intentional misrepresentation are that a party:  "(1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relie[d]."  *Bull v. BGK Holdings, LLC*, 859 F. Supp. 2d 1238, 1247 (D.N.M. 2012); *Saylor v. Valles*, 2003-NMCA-037, ¶ 21, 133 N.M. 432, 438, 63 P.3d 1152, 1158.

> The elements of negligent misrepresentation, in turn, are that:
>
> (1) the defendant made a statement that, though perhaps literally true, is misleading;
> (2) the defendant failed to exercise ordinary care in obtaining or communicating
> the statement; (3) the defendants intended that the plaintiff receive and be
> influenced by the statement; and (4) it was reasonably foreseeable that the plaintiff
> would be harmed if the information was incorrect or misleading.

*Bull*, 859 F. Supp. 2d at 1247.[17]

Defendants first argue that the Court should dismiss Plaintiff's misrepresentation claims because they are duplicative of her breach of contract claims.  (Doc. 32-1 at 14; Doc. 44 at 8-9.)

---

[17] Though related, the two types of misrepresentation claims are distinct in several ways:

> (1) fraudulent misrepresentation requires an untrue statement, while negligent misrepresentation
> may involve a statement that is "literally true" but misleading; (2) fraudulent misrepresentation
> requires the defendant to make the statement recklessly or with knowledge that it is false, while
> negligent misrepresentation only requires a failure to exercise ordinary care in obtaining or
> communicating the statement; [and,] (3) fraudulent misrepresentation requires an intent to deceive,
> while negligent misrepresentation only requires an intent that the plaintiff receive and be influenced
> by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the
> information conveyed was incorrect or misleading.

*Eckhardt v. Charter Hosp. of Albuquerque, Inc.,* 1998-NMCA-017, ¶ 55, 124 N.M. 549, 562, 953 P.2d 722, 735. Also, "while negligent misrepresentation may be proven by a preponderance of the evidence, common-law fraud must be proven by clear and convincing evidence." *Id.* at ¶ 56, 124 N.M. at 562, 953 P.2d at 735; *Cantrall v. Applera Corp.*, No. CV 02-0747 BB/RLP, 2003 WL 27385262, at *4 (D.N.M. Apr. 10, 2003).

"Defendants are correct that a simple breach of contract is not a tort." *Fiore Indus., Inc.*, 2019 WL 5595190 at *9.  However, "the promise to pay money in the future with the present intent to *not* keep the promise" is "actionable fraud."[18] *Telman v. Galles*, 1936-NMSC-073, ¶¶ 16-17, 41 N.M. 56, 63 P.2d 1049, 1052 (emphasis in original); *see also, e.g., Solomon v. Pendaries Properties, Inc.*, 623 F.2d 602, 605 (10th Cir. 1980) (under New Mexico law, "a representation of future events" is actionable fraud "when there is a misstatement of present intent"); *Primus v. Clark*, 1944-NMSC-030, ¶ 45, 48 N.M. 240, 149 P.2d 535, 542 ("If the defendant had the present fraudulent intent to not keep his agreements at the time he made them, then such agreements were fraudulent.").[19]

Here, Plaintiff has alleged that Defendants knew or should have known that their promises to compensate her "proportionally with the ISQ's contribution to Meow Wolf's brand, enterprise, and revenue" by way of an ownership interest and revenue share were false at the time they were made.  (Doc. 1 at 20-21.)  These allegations, viewed in the light most favorable to Plaintiff, plausibly support the inference that Defendants misstated their present intent to compensate Plaintiff as promised.  The Court therefore finds that Plaintiff's misrepresentation claims encompass more than "a simple breach of contract," *Fiore Indus., Inc.*, 2019 WL 5595190 at *9, and are not duplicative of her breach of contract claims.

Relatedly, Defendants argue that the Court should dismiss Plaintiff's intentional misrepresentation claims because her specific factual allegations do not support her general

---

[18] Cases applying New Mexico law use the terms "intentional misrepresentation" and "fraudulent misrepresentation" or "fraud" interchangeably.  *See, e.g., Bull*, 859 F. Supp. 2d at 1247.

[19] Defendants do not discuss or cite to any authority addressing whether a negligent misstatement of present intent to keep a promise is also actionable.  (*See* Doc. 32-1 at 14; Doc. 44 at 8-9.)  For purposes of this Memorandum Opinion and Order the Court will assume that it is, in the absence of any argument to the contrary and because a negligent misstatement of present intent also involves more than "a simple breach of contract."  *Fiore Indus., Inc.*, 2019 WL 5595190 at *9.

averment that Defendants knew their representations were false at the time they were made.[20] (Doc. 32-1 at 18-19; Doc. 44 at 12-13.)   In so arguing, Defendants fail to acknowledge that knowledge of falsity is "often proven by circumstantial evidence," because "fraud is usually committed in secrecy."  *Meiboom v. Carmody*, 2003-NMCA-145, ¶ 20, 134 N.M. 699, 703, 82 P.3d 66, 70.  Here, the specific circumstances Plaintiff has alleged adequately support her claim that Defendants knew their representations were false when made.  For example, viewed in the light most favorable to her, Plaintiff's allegations that Defendants persistently avoided meeting with her to negotiate her compensation support the inference that they did not intend to compensate her as promised.  (Doc. 1 at 7-8.)

Admittedly, as Defendants observe, the Complaint does include inconsistent allegations on this point.  (Doc. 32-1 at 18-19; *compare* Doc. 1 at 19 (alleging that "Defendants would have proceeded within the collective structure they presented by sharing with the artists, including [Plaintiff], on an equitable basis" if the HoER had been no more than moderately successful) *with id.* at 20 (alleging that Defendants knew their representations regarding Plaintiff's future compensation were "false at the time they were made").)   However, Plaintiff makes these inconsistent allegations in the alternative, the former in her unjust enrichment count and the latter in her intentional misrepresentation count.  As previously noted, Plaintiff is entitled to plead inconsistent allegations in the alternative.  Fed. R. Civ. P. 8(d)(2), (3).  In short, Plaintiff has adequately alleged that Defendants knew their representations regarding her compensation were false at the time they were made.

---

[20] This argument is inapplicable to Plaintiff's negligent misrepresentation claims.  To support those claims, Plaintiff avers that Defendants "should have known" that their representations were false when made, (Doc. 1 at 21); and, Defendants do not dispute that the specific factual allegations in the Complaint adequately support this averment.  (*See generally* Doc. 32-1 at 17-19.)

Finally, Defendants argue that the Court should dismiss Plaintiff's misrepresentation claims because she has not alleged sufficient facts to show that Defendants owed her a duty to disclose. (Doc. 32-1 at 17-18; Doc. 44 at 12.) The law pertinent to this question is somewhat complex and may depend on the type of misrepresentation alleged. As already discussed, an actionable misrepresentation can be intentional or negligent. In addition, it can be by "commission," *i.e.*, an affirmative statement, or by "omission," *i.e.*, a failure to disclose information.[21] *Bar J Sand & Gravel, Inc. v. Fisher Sand & Gravel Co.*, No. CV 15-228 SCY/KK, 2018 WL 3128991, at *2 (D.N.M. June 26, 2018); *see also Meiboom*, 2003-NMCA-145 at ¶ 13, 134 N.M. at 702, 82 P.3d at 69 ("A failure to disclose information can constitute fraud.")*.*

Under New Mexico law, misrepresentation by omission, whether negligent or intentional, "require[s] the existence of a duty" to disclose. *Bar J Sand & Gravel, Inc.*, 2018 WL 3128991 at *5. Negligent misrepresentation by affirmative statement requires the existence of a duty as well. *Id.* However, whether intentional misrepresentation by affirmative statement requires the existence of a duty to disclose is unresolved. *Id.*; *but see Kaveny v. MDA Enterprises, Inc.*, 2005-NMCA-118, ¶ 24, 138 N.M. 432, 437, 120 P.3d 854, 859 (duty is not a "component" of "the tort of fraud"); *see generally Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1319 (D.N.M. 2003) (including duty to disclose in elements of fraud by omission but excluding duty to disclose from elements of fraud by affirmative misrepresentation).

To determine whether a defendant owes a plaintiff a duty to disclose, "courts typically consider a number of factors, including the relationship between the parties, the relative knowledge

---

[21] Defendants assert that Plaintiff's misrepresentation claims "involv[e] an omission." (Doc. 32-1 at 17.) While that may be so, Plaintiff also alleges that Defendants made false, affirmative statements, *i.e.*, that they would compensate her for her installation of ISQ at the HoER proportionally to the HoER's success in the form of an ownership interest in the Meow Wolf collective and a revenue share. (Doc. 1 at 20-21.)

of the parties, the reasonable expectations of the plaintiff, the practices or customs of the trade,

and other relevant circumstances." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 61,

133 N.M. 669, 688, 68 P.3d 909, 928.   In particular, "[k]nowledge that the other party to a

contemplated transaction is acting under a mistaken belief as to certain facts is a factor in

determining that a duty of disclosure is owing." *Everett v. Gilliland*, 1943-NMSC-030, ¶ 12, 47

N.M. 269, 141 P.2d 326, 330.   Further,

> [t]here is much authority to the effect that if one party to a contract or transaction
> has superior knowledge, or knowledge which is not within the fair and reasonable
> reach of the other party and which he could not discover by the exercise of
> reasonable diligence, or means of knowledge which are not open to both parties
> alike, he is under a legal obligation to speak, and his silence constitutes fraud,
> especially when the other party relies upon him to communicate . . . the true state
> of facts to enable [the other party] to judge of the expediency of the bargain.

*Id.*; *see also Krupiak v. Payton*, 1977-NMSC-024, ¶ 3, 90 N.M. 252, 253, 561 P.2d 1345, 1346

("A duty to disclose may arise if there is knowledge that the other party to a contemplated

transaction is acting under a mistaken belief.  A duty to disclose may also arise if one has superior

knowledge that is not within the reach of the other party or could not have been discovered by the

exercise of reasonable diligence.").

> Thus, a party to a business transaction

> is under a duty to exercise reasonable care to disclose to the other facts basic to the
> transaction, if he knows that the other is about to enter into it under a mistake as to
> them, and that the other, because of the relationship between them, the customs of
> the trade or other objective circumstances, would reasonably expect a disclosure of
> those facts.

*Azar*, 2003-NMCA-062 at ¶ 61, 133 N.M. at 688, 68 P.3d at 928 (quoting Restatement (Second)

of Torts § 551(2)(e)) (ellipses omitted); *see also Wilcox v. Homestake Mining Co.*, 401 F. Supp.

2d 1196, 1203–04 (D.N.M. 2005) (In the context of "some sort of business relationship," a duty to

disclose "arises from knowledge that the other party is acting under a mistaken belief, or if a party

has superior knowledge not within the reach of the other party or which could not have been

discovered by the exercise of reasonable diligence."); *cf. R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 1988-NMCA-111, ¶¶ 9-20, 108 N.M. 84, 88-90, 766 P.2d 928, 932-34 (citing Restatement (Second) of Torts § 551 with approval and discussing relationships and special circumstances giving rise to a duty to disclose).

Likewise, in the context of a business transaction, "[t]o reveal some information on a subject triggers the duty to reveal all known material facts." *Wirth v. Commercial Res., Inc.*, 1981-NMCA-057, ¶ 12, 96 N.M. 340, 345, 630 P.2d 292, 297; *see also Everett*, 1943-NMSC-030 at ¶ 15, 47 N.M. 269, 141 P.2d at 331 ("Though one may be under no duty to speak, if he undertakes to do so, he is bound to speak truly without suppression of known material facts."). And, a duty arises when a defendant, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions."[22] *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1988-NMSC-014, ¶ 16, 106 N.M. 757, 761–62, 750 P.2d 118, 122–23 (quoting Restatement (Second) of Torts § 552(1)).

Here, the Court finds that Plaintiff has plausibly alleged circumstances giving rise to a duty to disclose in light of the authority just discussed. *Inter alia*, she has alleged facts tending to show that Defendants, as parties to a business transaction, affirmatively misrepresented and failed to disclose facts basic to the transaction, despite knowing that Plaintiff was about to enter into it under a mistake as to those facts and that she would reasonably expect a truthful and accurate disclosure of those facts in light of the objective circumstances. *Azar*, 2003-NMCA-062 at ¶ 61, 133 N.M.

---

[22] In this scenario, the defendant owes a duty only to "the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it," and is only liable for losses suffered "through reliance upon [the information] in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Garcia*, 1988-NMSC-014 at ¶ 16, 106 N.M. at 762, 750 P.2d at 123.

at 688, 68 P.3d at 928. Plaintiff has also plausibly alleged that Defendants knowingly or negligently supplied Plaintiff with false information for her guidance in a business transaction, in the course of a transaction in which they had a pecuniary interest. *Garcia*, 1988-NMSC-014 at ¶ 16, 106 N.M. at 761–62, 750 P.2d at 122–23. In short, Plaintiff has plausibly alleged that Defendants owed her a duty to disclose.[23] For these reasons, the Court will deny Defendants' Motion to the extent that it seeks dismissal of Plaintiff's misrepresentation claims for failure to state a claim.

### 6.   Plaintiff's Request for the Imposition of a Constructive Trust

Defendants next argue that the Court should dismiss Plaintiff's request for the imposition of a constructive trust. (Doc. 32-1 at 19; Doc. 44 at 13.) Under New Mexico law, "[t]he imposition of a constructive trust is an equitable remedy, and as such is within the broad discretion of the district court." *In re Estate of Duran*, 2003-NMSC-008, ¶ 35, 133 N.M. 553, 565, 66 P.3d 326, 338. "If a court imposes a constructive trust, the person holding legal title [to property] is subjected to an equitable duty to convey the property to [the] person to whom the court has determined that duty is owed." *Gushwa v. Hunt*, 2008-NMSC-064, ¶ 34, 145 N.M. 286, 292, 197 P.3d 1, 7; *Estate of Duran*, 2003-NMSC-008 at ¶ 34, 133 N.M. at 565, 66 P.3d at 338.

The purpose of a constructive trust is "to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *Gushwa*, 2008-NMSC-064 at ¶ 34, 145 N.M. at 292, 197 P.3d at 7 (quotation marks omitted); *Estate of Duran*, 2003-NMSC-008 at ¶ 34, 133 N.M. at 565, 66 P.3d at 338. Thus, for a court to impose this remedy, "there must be some underlying wrong giving rise to the equitable duty of the owner of the property to convey it to the

---

[23] As such, at this time, the Court need not decide whether intentional misrepresentation by affirmative statement requires the existence of a duty to disclose under New Mexico law. *Bar J Sand & Gravel, Inc.*, 2018 WL 3128991 at *5, *10.

party from whom it was wrongfully taken." *Bowman v. SP Pharm., L.L.C.*, 242 F.3d 387, at *8 (10th Cir. 2000) (unpublished).   Underlying wrongs that may give rise to such a duty include "fraud, constructive fraud, duress, undue influence, [and] breach of a fiduciary duty." *Gushwa*, 2008-NMSC-064 at ¶ 34, 145 N.M. at 292, 197 P.3d at 7; *Estate of Duran*, 2003-NMSC-008 at ¶ 34, 133 N.M. at 565, 66 P.3d at 338.

A constructive trust is a remedy rather than an independent cause of action. *Willis v. Smith*, No. 16 CV 167 JAP/LF, 2017 WL 2963873, at *9 (D.N.M. Feb. 13, 2017); *In re Franco*, 586 B.R. 489, 497 (Bankr. D.N.M. 2018).   However, courts sometimes refer to and analyze requests for the imposition of a constructive trust as "claims."   *See, e.g., Murray v. Burt*, No. 09-CV-1150-WJ/RHS, 2010 WL 11552924, at *2 (D.N.M. Dec. 28, 2010); *Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 52, 129 N.M. 497, 508–09, 10 P.3d 176, 187–88.

In their Motion, Defendants argue that the Court should dismiss Plaintiff's request for the imposition of a constructive trust because the Complaint lists it as a "claim for relief."   (Doc. 32-1 at 19; Doc. 44 at 13; *see* Doc. 1 at 21.)   In light of the authority just discussed, Defendants may well be correct that, technically, Plaintiff erred in presenting her request as an independent cause of action.   Nevertheless, this would merely be an error of form and would provide no substantive basis for denying the request as a matter of law.

Defendants also argue that the Court should dismiss Plaintiff's request for the imposition of a constructive trust because she has failed to identify the factual allegations supporting it.   (Doc. 44 at 13.)   However, Defendants make this argument for the first time in their reply and have therefore waived it.   *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.")   For these reasons, the Court will

deny Defendants' Motion to the extent that it seeks dismissal of Plaintiff's request for the imposition of a constructive trust.

### 7.    Plaintiff's Claims against Defendant Kadlubek

Finally, Defendants ask the Court to dismiss all of Plaintiff's claims against Defendant Kadlubek personally because these claims "concern actions [he] took in his capacity as an officer of [Defendant MWI]."  (Doc. 32-1 at 19-21.)  The Court will consider the viability of Plaintiff's claims against Defendant Kadlubek in light of the legal standards governing corporate officers' personal liability for the types of claims she has asserted.[24]

#### a.    Plaintiff's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant Kadlubek

Defendants' primary arguments in opposition to Plaintiff's claims against Defendant Kadlubek concern her contract claims against him.  "[A] corporation is a legal entity, separate from its shareholders, directors, and officers." *Stinson v. Berry*, 1997-NMCA-076, ¶ 17, 123 N.M. 482, 486, 943 P.2d 129, 133.  Thus, "[a]s a general rule of corporate law[,] shareholders, directors and officers are not personally liable for the acts and obligations of the corporation." *Farmers All. Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1177 (D.N.M. 2006) (quotation marks omitted).  In particular, a corporate officer is not a party to the corporation's contracts and generally cannot be held personally liable for breaching them. *Ettenson v. Burke*, 2001-NMCA-003, ¶ 25, 130 N.M. 67, 76, 17 P.3d 440, 449; *see also Everage v. Vigil*, No. CV 07-664 DJS/RLP, 2008 WL 11335037,

---

[24] In arguing that the Court should dismiss Plaintiff's claims against Defendant Kadlubek, Defendants divide these claims into just two groups.  (Doc. 32-1 at 19-21.)  Specifically, Defendants place Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, misrepresentation, and constructive trust claims in one group and her copyright infringement and VARA claims in another.  (*Id.*)  However, as further discussed in this section, the legal standards governing corporate officers' personal liability for the types of claims in the first group are not as uniform as Defendants suggest.

at *4 (D.N.M. Aug. 28, 2008) ("[A]n agent for a disclosed principal is not a party to any contract entered into on behalf of the principal.").

> The rules governing pre-incorporation contracts, however, are different.

> Contracts are frequently made by promoters on behalf of corporations they expect to organize. Often, . . . if the corporation were already in existence, the contract would be that of the corporation and not of the promoter. However, since it is impossible for the corporation to contract before it comes into existence, the contract is treated as that of the promoter even though the language of the contract is appropriate for a contract by the corporation.

*Stonewood Capital Mgmt., Inc. v. Giner*, No. CIV.A. 11-11422-RWZ, 2013 WL 49771, at *3 (D. Mass. Jan. 3, 2013) (quoting 12 Williston on Contracts § 35:71 (2012)).

Consequently, the "general rule" is that "promoters are personally liable on contracts made by them for the benefit of a corporation they intend to organize." *Frazier v. Ash*, 234 F.2d 320, 326 (5th Cir. 1956) (applying Florida law); *see also Shelter Mortg. Corp. v. Castle Mortg. Co., L.C.*, 117 F. App'x 6, 15-16 (10th Cir. 2004) (holding promoter personally liable on pre-incorporation contract) (applying Utah law).  This general rule applies unless "the contract is on behalf of the corporation and the person with whom the contract is made agrees to look to the corporation alone for responsibility," in which case "the promoters incur no personal liability." *Frazier*, 234 F.2d at 326–27; *see also* 41 A.L.R.2d 477, § 3 (1955 & Cum. Supp.) (exception to general rule "applies where a promoter contracts in the name of a corporation which is to be formed later and does not intend to be liable on it, and the other party knows that the corporation has not been formed and that the promoter does not intend to be liable").

New Mexico courts have implicitly recognized this hornbook law.  As long ago as 1916, the New Mexico Supreme Court noted that "[a] corporation has no life and consequently no power until it is legally organized, with authorized officers and agents to conduct and manage its business; hence it cannot authorize promoters to enter into contracts on its behalf." *Moriarity v. Meyer*,

1916-NMSC-022, ¶ 2, 21 N.M. 521, 157 P. 652, 653.  Thus, the *Moriarity* court concluded that "a contract made between a promoter and a third party" binds the corporation only when the corporation assumes or adopts it.  *Id.* at ¶ 10, 21 N.M. 521, 157 P. at 654.  More recently, the New Mexico Court of Appeals observed that "it may be accurate in the abstract to say that a promoter who contracts on behalf of a corporation contemplated, but not yet organized, is personally bound."[25]  *O'Brien & Assocs., Inc. v. Behles Law Firm, P.C.*, No. 30,724, 2012 WL 3193589, at *5 (N.M. Ct. App. Jul. 12, 2012) (unpublished).  The Court therefore predicts that the New Mexico Supreme Court would apply the foregoing principles regarding promoter liability on pre-incorporation contracts if called upon to do so.  *Amparan*, 882 F.3d at 947.

In their Motion, Defendants argue that the Court should dismiss Plaintiff's breach of contract and implied covenant claims against Defendant Kadlubek because these claims are based on an alleged contract between Plaintiff and Defendant MWI, and not between Plaintiff and Defendant Kadlubek.  (Doc. 32-1 at 19-20.)  However, as explained below, the Court finds that the plausible factual allegations in the Complaint, in combination with the Delaware DOS webpage, adequately support Plaintiff's position that Defendant Kadlubek is personally liable on the contract at issue because he entered into it as a promoter before Defendant MWI was formed.  (Doc. 35 at 18-20.)

In her Complaint, Plaintiff alleges that she and Meow Wolf representatives including Defendant Kadlubek entered into the contract at issue months before March 2016, when the HoER opened.  (Doc. 1 at 5-6, 12, 17.)  The Delaware DOS webpage, in turn, shows that Defendant MWI

---

[25] The *O'Brien & Associates* court determined that the "abstract" rule did not apply to the facts before it, because "there was no unidentified principal" and neither the promoter nor the other party to the contract intended for the promoter to be a party to it.  2012 WL 3193589 at *5.  In other words, the court applied the exception discussed in *Frazier*, *i.e.*, that if a "contract is on behalf of the corporation and the person with whom the contract is made agrees to look to the corporation alone for responsibility, the promoters incur no personal liability."  234 F.2d at 326–27.

was not incorporated until November 2016.  (Doc. 37-4 at 2.)  Thus, the alleged contract was a pre-incorporation contract subject to the general rule that promoters such as Defendant Kadlubek are personally liable on contracts they make for the benefit of a corporation they intend to organize. *Frazier*, 234 F.2d at 326–27.  Moreover, nothing in the Complaint indicates that an exception to this general rule would apply.  For example, there is no allegation that Plaintiff knew Defendant Kadlubek did not intend to be liable on the contract or that she agreed not to enforce it against him. *Id.*

Defendants contend that, even so, Defendant Kadlubek cannot be personally liable on the alleged contract because Plaintiff claims it was not breached until after Defendant MWI was formed.  (Doc. 44 at 14-15.)  However, this circumstance does not necessarily relieve Defendant Kadlubek of liability.

> Where a promoter has become personally liable on a contract executed before the organization of a corporation, he is not discharged from liability merely because the corporation is later organized and receives the benefit of the contract *where the parties have not agreed that his liability should cease at that time*.

41 A.L.R.2d 477, § 14 (1955 & Cum. Supp.) (emphasis added); *see also In re Blaszak*, 397 F.3d 386, 392 (6th Cir. 2005) (corporation's adoption of pre-incorporation contract does not relieve promoter of liability absent a subsequent novation because "a party to a contract cannot relieve himself from its obligations by the substitution of another person, without the consent of the other party") (brackets omitted) (applying Ohio law).

In the present matter, nothing in the Complaint indicates that the parties ever agreed to extinguish Defendant Kadlubek's liability on the contract at issue after Defendant MWI's incorporation.  (*See generally* Doc. 1.)  Thus, accepting the allegations in the Complaint as true, Defendant Kadlubek remained personally liable on the contract after Defendant MWI was formed and through the time of its breach.  For these reasons, the Court will deny Defendants' motion to

the extent that it seeks dismissal of Plaintiff's breach of contract and implied covenant claims against Defendant Kadlubek.

           **b.**      *Plaintiff's Unjust Enrichment Claim against Defendant Kadlubek*

Defendants also argue that the Court should dismiss Plaintiff's unjust enrichment claim against Defendant Kadlubek.  (Doc. 32-1 at 19-20; Doc. 44 at 14-15.)  However, Defendants completely fail to develop this argument.  In particular, they neither describe the legal standards governing corporate officers' personal liability for unjust enrichment nor cite to any authority on this issue.  Further, the Court cannot simply assume that the standards governing corporate officers' personal liability for unjust enrichment mirror the standards governing corporate officers' personal liability in contract or tort, because "unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from . . . contract and tort." *Hydro Conduit Corp.*, 1990-NMSC-061 at ¶ 19, 110 N.M. at 178, 793 P.2d at 860.  The Court therefore finds that Defendants have forfeited this point and will deny their request for dismissal of Plaintiff's unjust enrichment claim against Defendant Kadlubek.  *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (brackets omitted).

           **c.**      *Plaintiff's Conversion and Misrepresentation Claims against Defendant Kadlubek*

Next, Defendants contend that the Court should dismiss Plaintiff's claims for conversion, intentional misrepresentation, and negligent misrepresentation against Defendant Kadlubek. Again, however, they present no argument or authority specific to these claims. (*See* Doc. 32-1 at 19-21; Doc. 44 at 13-15.)  In addition, as Plaintiff points out in her response, though corporate

officers "cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold," they "are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable." *Stinson*, 1997-NMCA-076 at ¶¶ 17-18, 123 N.M. at 486-87, 943 P.2d at 133-34; *see also Bourgeois v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 12, 117 N.M. 434, 437, 872 P.2d 852, 855 ("[O]fficers or employees of corporations can be held personally liable when they commit intentional torts."). In other words, corporate officer status "neither immunizes a person from individual liability nor subjects him or her to vicarious liability" in tort. *Stinson*, 1997-NMCA-076 at ¶ 18, 123 N.M. at 487, 943 P.2d at 134.

Here, Plaintiff has alleged that Defendant Kadlubek engaged in the acts forming the basis of her conversion and misrepresentation claims. (*See generally* Doc. 1.) Assuming these allegations are true, he can be held personally liable for these torts, and his status as a corporate officer does not immunize him from liability. *Stinson*, 1997-NMCA-076 at ¶ 18, 123 N.M. at 487, 943 P.2d at 134. Though the Court will dismiss Plaintiff's conversion claim against Defendant Kadlubek for the reasons stated in Section II.B.4., *supra*, it will not dismiss Plaintiff's misrepresentation claims against him.

        d.    *Plaintiff's Request for the Imposition of a Constructive Trust against Defendant Kadlubek*

Although Defendants ask the Court to dismiss "all" of Plaintiff's claims against Defendant Kadlubek, in neither their Motion nor their reply do they specifically refer to, much less offer any argument or authority to support the dismissal of, Plaintiff's request for the imposition of a constructive trust against him. (*See* Doc. 32-1 at 19-21; Doc. 44 at 13-15.) As such, the Court finds that Defendants have again "forfeit[ed] the point," *Phillips*, 244 F.3d at 800 n.10, and will deny Defendants' Motion to the extent that it seeks dismissal of this request.

     e.     *Plaintiff's Copyright Infringement and VARA Claims against Defendant Kadlubek*

Finally, Defendants seek dismissal of Plaintiff's copyright infringement and VARA claims against Defendant Kadlubek.  According to Defendants, the Court should dismiss these claims because Plaintiff has failed to allege that Defendant Kadlubek participated in the acts underlying them and did so in his individual capacity.  (Doc. 32-1 at 20-21; Doc. 44 at 14.)  Defendants again fail to support their argument with any citations to pertinent authority.[26]  (*See id.*)

Defendants' minimal effort falls far short of demonstrating that the Court should dismiss Plaintiff's intellectual property claims against Defendant Kadlubek.  Initially, and notwithstanding Defendants' argument to the contrary, the Complaint does in fact allege that Defendant Kadlubek was one of the parties who engaged in the activities underlying these claims.  (*See* Doc. 1 at 12-13, 15-17.)  By referring to "Defendants" collectively, Plaintiff plainly means to include both of the identified Defendants, *i.e.*, Defendant MWI and Defendant Kadlubek, in the allegations supporting her copyright infringement and VARA claims.

Further, if Defendants mean to suggest that Plaintiff has not *plausibly* alleged that Defendant Kadlubek participated in the acts underlying her copyright infringement and VARA claims, they fail to address two critical points.  First, as previously noted, Defendant MWI was not formed until the end of November 2016.  (Doc. 37-4 at 2.)  Thus, to the extent the acts underlying Plaintiff's copyright infringement and VARA claims were committed before then, it is entirely plausible that Defendant Kadlubek personally participated in and benefitted from those acts.

Second, there are avenues by which Defendant Kadlubek could potentially be held personally liable for Defendant MWI's alleged infringing activities after the corporation was

---

[26] Defendants do cite to one case to support this argument in their reply, *i.e.*, *Farmers Alliance Mutual Insurance Co.*, 452 F. Supp. 2d at 1177, but the case is inapposite because it does not address copyright infringement or VARA claims. (Doc. 44 at 14.)

formed.  Specifically, "a defendant can . . . be secondarily liable for another's copyright infringement under principles of vicarious and contributory liability."[27]  *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013); *see Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992) (listing "corporate officer" as one who may be vicariously liable for copyright infringement); *see also Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 355 (6th Cir. 2014) (affirming vicarious liability of limited liability company owner for copyright infringement). Defendants' Motion fails to address, in even the most cursory fashion, why Defendant Kadlubek could not be held liable for Defendant MWI's alleged infringing activities on one or both of these theories.  (*See* Doc. 32-1 at 19-21; Doc. 44 at 13-15.)  The Court will therefore deny the portion of Defendants' Motion seeking dismissal of Plaintiff's copyright infringement and VARA claims against Defendant Kadlubek.

### III.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1.   Plaintiff's Request for Judicial Notice (Doc. 36) is GRANTED IN PART and DENIED IN PART.

     a.   The Request is GRANTED in that the Court takes judicial notice of:

          (1)   The Delaware Department of State, Division of Corporations' "Entity Details" regarding Defendant MWI as of August 17, 2020 (Doc. 37-4), and,

          (2)   The New Mexico Department of State, Division of Corporations' "Search Information" regarding Defendant MWI as of August 17, 2020 (Doc. 37-5), and,

---

[27] "Vicarious liability attaches when the defendant has the right and ability to supervise the infringing activity and has a direct financial interest in such activities"; and, "contributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement."  *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) (quotation marks omitted).

      b.      The Request is DENIED in all other respects;

2.     Defendants' Partial Motion to Dismiss (Doc. 32) is GRANTED IN PART and DENIED IN PART.

      a.      The Motion is GRANTED in that the "Sixth Claim for Relief (Conversion against All Defendants)" in Plaintiff's Complaint for Violation and Threatened Violation of the Visual Artists Rights Act, Copyright Infringement, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Conversion, Misrepresentation, and Constructive Trust (Doc. 1), is DISMISSED WITHOUT PREJUDICE; and,

      b.      In all other respects, the Motion is DENIED; and,

3.     Plaintiff may file an amended complaint within thirty (30) days of entry of this Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent