IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,
an individual,

    Plaintiff,

v.                                       Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

    Defendants.

## DECLARATION OF ELISA MONTOYA

I, Elisa Montoya, declare as follows:

1.    I have personal knowledge of the matters set forth below, am over the age of eighteen, and am otherwise competent to make this declaration.

2.    I am the Vice President of Administration & Legal of Meow Wolf, Inc. (Meow Wolf).

3.    It would be a staggering task for Meow Wolf to search for, locate, gather, and send to Meow Wolf's litigation counsel all of the likely millions of documents sought in response to the broad categories of information above. None of the categories of information Ms. Oliver seeks is compiled in a single location nor can it be generated in a single report. Some of it is in hard paper copy only and dispersed throughout at least four locations. Each of the requests would require hundreds of labor hours, and months to compile. This is in addition to the time required by Meow Wolf's litigation counsel to review the documents for responsiveness and privilege.

4.    This process would be extremely expensive and time consuming for Meow Wolf and would involve substantial effort by Meow Wolf's in house counsel team, which comprises only

**EXHIBIT 1**

two individuals, one attorney and one staff member who shares responsibility for other non-legal related tasks and has approximately 25% of her time available for legal related issues.

**Plaintiff's Request for Information Regarding Meow Wolf's Investors and Their Interests in Meow Wolf (Interrogatory Nos. 1 and 2, Requests Nos. 14 and 15)**

5. Ms. Oliver asks Meow Wolf to identify and state each transaction involving each Meow Wolf investor's interest in the company from 2008 to present. There have been between 850 to more than 1000 investors in Meow Wolf over the course of the last 13 years.

6. To first identify each investor, and then to determine each of those persons' interests in Meow Wolf over a 13-year period, how they acquired those interests, what they earned upon alienation of any portion of those interests, and documents reflecting each of those transactions would be a monumental task and would require Meow Wolf to review thousands upon thousands of documents to determine whether the documents contain the information plaintiff requests. This information is not all stored in the same place; it would need to be gathered through archival resources, and also in separate physical locations. It is possible that Meow Wolf no longer uses the same software and online storage systems where some of this information may be stored, necessitating further investigation into whether some of this information could be accessed or recovered at all.

7. Ms. Oliver also seeks documents beginning in 2008, many years before Meow Wolf became a company, and then became incorporated. Much of the information that may be responsive in this earlier time period, if available at all, is not easily accessible or found.

8. While it would be hard to estimate how long it would take to find all documents related to these requests, we estimate it would take approximately six months, at a cost of hundreds

**EXHIBIT 1**

of labor hours involving at least five employees from multiple departments within Meow Wolf.

**"All Documents" Concerning Every**
**Person Who Attended a Meow Wolf Event**

9. Ms. Oliver seeks "all documents" shared with every investor or prospective investor in Meow Wolf without any time limitation and whether or not such person invested in Meow Wolf (Request for Production No. 6); and the names, addresses, telephone numbers, email addresses, corporate affiliations or identifications, and titles of every person who attended a promotional or investor event held by Meow Wolf without any limitation in time (Interrogatory No. 6).

10. It would be difficult to even begin to estimate how many persons' records Meow Wolf would have to search to provide the information of each person who has ever attended a promotional or investor event held by Meow Wolf. Meow Wolf has held hundreds of promotional events, including public open house events and national promotional conference events. The likely number of people who have attended Meow Wolf promotional or investor events is thousands.

11. To determine what documents and information these thousands of persons would have received, Meow Wolf would have to review online, paper, and archival resources stored in different physical locations to determine the dates and locations of each of several hundred (if not thousands) events, which representative or representatives of Meow Wolf were in attendance and the purpose of the event to determine what information may have been provided to attendees, and who would have attended.

12. It is difficult to determine how long this would take, but I estimate it would require Meow Wolf to devote hundreds of labor hours by at least three Meow Wolf employees over the course of six months to search for, gather, piece together, and verify the information and documents requested.

**EXHIBIT 1**

**"All Documents" Concerning Every Contract**
**<u>Between Meow Wolf and Hundreds of Artists</u>**

13. Although this case is only about Ms. Oliver and one work of art in the House of Eternal Return, Ms. Oliver seeks "All documents concerning any contract and/or agreement between Meow Wolf and any Participating Artist between January 1, 2014 and June 3, 2019, including but not limited to the contracts or agreements themselves, drafts, and communications concerning any contract and/or agreement." (Request for Production No. 11).

14. "Participating Artists" is defined by Ms. Oliver in her discovery as "any person that contributed copyrightable works of art to the HoER as more fully described in the Complaint."

15. More than 400 people contributed to the House of Eternal Return. How many of those made "copyrightable works of art" is something that would take specialized legal review of each one and about which reasonable minds differ.

16. Broadly speaking, there are easily at least 150 people who meet that standard over the 5 ½ year period specified by Ms. Oliver.

17. Some of those people were outside artists like Ms. Oliver who worked on a discreet room or spot within HoER, and others were contractors who worked on many aspects of HoER. Some artists became employees with Meow Wolf and have employment agreements with Meow Wolf which provide for the use of copyrightable works created by the employees in the scope of their employment. Many people who fit within this category had multiple agreements with Meow Wolf—contractor agreements, employment agreements, bonus payment agreements, and other forms of agreements.

18. We are a company that is built on artist engagement, and daily exchange hundreds of phone calls, emails, and other written communications with outside artists. Asking for "all

**EXHIBIT 1**

documents concerning" a contract for the creation of copyrightable works of authorship would easily require that we simply produce all communications between each artist and any representative of Meow Wolf, and communications among all representatives of Meow Wolf regarding each work.

19. The information sought is likely available in electronic and hard archives in three different locations and would take months to locate, review, and produce with the assistance of at least 6 Meow Wolf employees.

20. We anticipate that millions of documents are responsive to this request.

**"All documents" Concerning the Removal of**
**Other Copyrightable Works—The Chapel & Rabbit Room**

21. Ms. Oliver has requested "All documents concerning the removal of any copyrightable work from HoER" (Request for Production No. 16).

22. We understand that Ms. Oliver has agreed to limit her request to "all documents" concerning the removal of The Chapel by Billy Joe Miller and Rabbit Room by Sarah Bradley, but even a request limited to the removal of those two artists works' would involve substantial time and investment of Meow Wolf resources.

23. For instance, Meow Wolf would first have to determine each individual person within Meow Wolf who was involved in the removal of each work, and track down all associated emails and hard copy documents, including but not limited to every communication between Meow Wolf representatives and the artists, every communication between and among Meow Wolf staff, and every email between Meow Wolf staff and other contractors who may have been hired to assist with removal of the works.

24. We expect this information exists in electronic and hard archives in three different locations and would take a month for two Meow Wolf employees to search for, review, and provide to our litigation counsel.

25. All of the work described above would have to be performed before we could provide the responsive documents to our litigation counsel, Bardacke Allison LLP. Bardacke Allison LLP would then be required to review each document for responsiveness, privilege, and to determine whether the information contained in each document is confidential to apply the appropriate designation before documents could be produced.

26. Meow Wolf removed Rabbit Room to provide room for storage of musical equipment for concerts held at Meow Wolf. Meow Wolf's removal of Rabbit Room is not related in any way to Ms. Oliver's claims against Meow Wolf.

**Lauren Oliver's April 2015 Email with Vince Kadlubek**

27. As Vice President of Administration & Legal of Meow Wolf, I am a custodian of records for Meow Wolf, and understand Meow Wolf's record keeping system, including how records are maintained by Meow Wolf in the regular course of business. Meow Wolf maintains in the regular course of business email records of its employees and officers, including the email records of Vince Kadlubek who was a founder of Meow and its CEO.

28. One such email record is an April 2015 email exchange between Lauren Oliver and Vince Kadlubek, which is attached hereto as Exhibit A.

29. This record was made at or near the time of the occurrence of the matters set forth in the record by a person with knowledge, namely, Vince Kadlubek. The record was kept in the

**EXHIBIT 1**

course of regularly conducted business activity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 15, 2021

*Elisa Montoya*
DocuSigned by:
6E2D01B5425E493...
ELISA MONTOYA

**EXHIBIT 1**

EXHIBIT A

| | |
|---|---|
| From: | "Oliver/Quellette" |
| Date: | April 08, 2015 12:06:20 PM (-05) |
| To: | "Vince Kadlubek" |
| Subject: | **Re: Meow Terms** |
| Attachments: | |

**Hey. Awesome. Good luck tonight.**

# LO|Q

```
The information and possible profanity contained in this electronic mail message (including any attachments)
is confidential information that may be covered by the Electronic Communications Privacy Act, 18 USC
Sections 2510-2521, intended only for the use of the individual or entity named above, (and, let's face it,
the NSA) and may be privileged.  If the reader of this message (that would be you, you dopey dog) is not the
intended recipient, you are hereby notified that any dissemination, distribution, assignation, magnification
or emasculation, or copying of this communication, or the taking of any action based on it, is strictly
prohibited.  If you have received this communication in error, please immediately notify me and delete the
original message.  Thank you, and have a yippy-skippy day.
```

On Thu, Apr 2, 2015 at 8:01 PM, Vince Kadlubek <vince@meowwolf.com> wrote:

> Hello!  Writing to you today to talk about the contractual terms for your involvement in the Meow Wolf project.
>
> Your project(s) are to be completed by September 1st. We have $1000 allocated for your personal stipend to complete the project(s).  You will be paid $250 twice a month from July until September, for a total of $1000.  In addition, we want to offer you $10,00 of revenue share stipend, which we can go over in more depth when we meet.
>
> We will also be purchasing all the materials agreed upon for your project.
>
> I hope this amount works for you.  Please let me know if you have any questions or concerns before I send over the contract. I am available to speak over the phone (505-603-9176) or in person as well.
>
> It is important to note that you retain all intellectual property rights for your pieces and can sell reproductions, or images. Meow Wolf will own the actual pieces of work that you supply to the exhibit.

**EXHIBIT 1**

**EXHIBIT A**

Thanks! Excited to work with you!

vince

**EXHIBIT 1**

MW_432