IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LAUREN ADELE OLIVER,**

      **Plaintiff,**

      vs.                                       Civ. No. 20-237 KK/SCY

**MEOW WOLF, INC., a Delaware
Corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,**

      **Defendants.**

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Plaintiff Lauren Oliver's Motion to Compel Discovery from Defendant Meow Wolf, Inc., filed February 22, 2021. Doc. 72. In her complaint, Plaintiff alleges that she contributed artwork to Meow Wolf's House of Eternal Return ("HoER") and in exchange was promised an artist revenue share as compensation. Doc. 1 ¶ 23. However, she alleges she never received that compensation and instead Defendants gave her an ultimatum: sell Defendants all rights to her art, the Space Owl and Ice Station Quellette, for a low one-time payment, or remove the pieces with no additional compensation. Doc. 1 ¶ 66. In her present motion to compel, Plaintiff seeks information regarding Defendant Meow Wolf's investors, revenue, contracts with artists, and removal of other artwork from the HoER. Having considered the parties' arguments and all relevant authority, the Court grants in part and denies in part Plaintiff's motion.

## BACKGROUND

Plaintiff filed her complaint in federal court on March 16, 2020, alleging nine claims for relief: copyright infringement, violation and threatened violation of Visual Artists Rights Act ("VARA"), breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, conversion, intentional misrepresentation, negligent misrepresentation, and constructive trust. Defendants Meow Wolf and Vince Kadlubek filed a motion to dismiss, which the presiding judge, Judge Khalsa, granted in part. Doc. 59. Judge Khalsa dismissed Plaintiff's conversion claim but denied the remainder of Defendants' motion to dismiss.[1] Doc. 59.

In the meantime, the Court entered a scheduling order and the parties began conducting discovery. Doc. 53. Plaintiff filed her motion to compel, along with exhibits and a request for judicial notice, on February 22, 2021. Docs. 72, 74, 75, 78. Defendant Meow Wolf filed its response on March 15, 2021, Doc. 83, and Plaintiff filed a reply and exhibits on March 29, 2021, Docs. 87, 88, 89. With leave of the Court, Defendant Meow Wolf filed a surreply on May 3, 2021. Docs. 107, 114. At the same time as filing the motion to compel, Plaintiff also filed a Motion for Leave to File First Amended Complaint, seeking to amend her complaint to add a claim for promissory estoppel, revise her conversion claim, and allege additional factual allegations. Doc. 77.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), discoverable information is anything non-privileged "that is relevant to any party's claim or defense . . . ." "[A] request for discovery should be considered relevant if there is any possibility that the information sought may be

---

[1] Judge Khalsa dismissed the conversion claim without prejudice, allowing Plaintiff 30 days from the entry of the order to file an amended complaint, which Plaintiff did not do.

relevant to the subject matter of the action." *In re Vaughan Company*, No. 12-cv-0817 WJ/SMV, 2014 WL 12787951, at *2 (D.N.M Sept. 19, 2014) (citing *Williams v. Bd. of Cnty. Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000)). In other words, "[d]iscovery relevance is minimal relevance." *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1265 (D. Kan. 1996) (internal quotation marks omitted). "Although discovery is construed broadly under the federal rules, discovery is not without limits." *Macias v. Southwest Cheese Co.*, No. Civ. 12-350 LH/WPL, 2013 WL 11326737, at *3 (D.N.M. Oct. 2, 2013). Indeed, Federal Rule of Civil Procedure 26(b)(1) allows discovery of non-privileged, relevant matter that is "proportional to the needs to the case."

## DISCUSSION

In her motion to compel, Plaintiff seeks production of four categories of information: ownership and investments, revenue, contracts with other artists, and removal of artwork by other participating artists. She also asks the Court to take judicial notice of three documents. The Court begins its analysis with this judicial notice issue and then turns to the categories of information Plaintiff seeks.

1. **Judicial Notice**

Plaintiff requests that the Court take judicial notice of three documents she attaches as exhibits in support of her motion to compel: (1) an article from Hyperallergic titled "Interactive Art Center Meow Wolf is Forging a New Business Model for Artist" (Doc. 78 at 23-28); (2) a notice of exempt offering of securities by Meow Wolf, filed with the United States Securities and Exchange Commission (Doc. 78 at 29-37); and (3) a filing with the United States Securities and Exchange Commission titled "Meow Wolf- Austin" (Doc. 78 at 38-54).

Courts may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In other words, "[j]udicial notice is proper when a fact is beyond debate, for instance, what time the sun sets on a given day." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016). To that end, "[w]hen courts have taken judicial notice of contents of news articles, they have done so for proof that something is publicly known, not for the truth of the article's other assertions." *Id.*

Here, Defendant did not respond to Plaintiff's request for judicial notice and the request is therefore presumed to be unopposed. *See* D.N.M. LR-Civ. 7.1(b). The Court further finds that taking judicial notice of the article and SEC filings is appropriate, but only to indicate the information is in the public realm, not for the for the truth of the contents of the article and filings. *See Estate of Lockett*, 841 F.3d at 1111.

**2. Ownership, Investment, and Revenue Information**

Plaintiff propounded three interrogatories and three requests for production seeking information on Meow Wolf's ownership and investors. *See* Doc. 88-8, 88-10 (Rogs 1, 2, 6; RFPs 6, 14, 15). Plaintiff asserts this information is relevant to her claims for breach of contract, breach of covenant of good faith and fair dealing, misrepresentation, and unjust enrichment because Meow Wolf started as an art collective but ended as a privately held corporation. Likewise, Plaintiff seeks information concerning Meow Wolf's gross revenue from 2016 to the present. Doc. 88-10 (RFP 12). She asserts this information is relevant to her claim that Meow Wolf promised her and other artists a revenue share if they participated in the HoER. Indeed, she

alleges that she was part of Meow Wolf's "collective 'core team'" and she is entitled to "a 'revenue share' linked to the venture's success in exchange for her participation." Doc. 72 at 2.

In the Court's Order on Defendants' motion to dismiss, Judge Khalsa held that while Plaintiff has stated a claim for breach of contract "the Court does not mean to suggest that Plaintiff could recover the value of the ownership interest and revenue share she claims she was promised as a 'reasonable payment' . . . unless she is able to allege and prove more and different facts than those alleged in her present Complaint." Doc. 59 at 14. Judge Khalsa explained that "the Complaint indicates that the parties never agreed on the specific terms that would govern the promised ownership interest and revenue share," and that "Plaintiff has identified no authority that would permit the Court to create these terms out of whole cloth." *Id.* In other words, based on the facts in the operative complaint, the Court has foreclosed Plaintiff's claim that she is entitled to a revenue share. Instead, the Court found that Plaintiff can establish her breach of contract claim in two ways: (1) Plaintiff "could argue a reasonable fee and suggest a method of computing such a fee"; or (2) "Plaintiff could demonstrate that, though the parties never agreed on an exact amount or method of compensation, they did agree on a range of alternatives, which would support an award in accordance with the alternative that will result in the smallest recovery." Doc. 59 at 14-15 (internal quotations omitted).[2] As such, information regarding the overall ownership, investments, and revenue of Meow Wolf is not relevant to Plaintiff's claim for breach of contract.

---

[2] Plaintiff spends a portion of her reply briefing arguing the merits of her breach of contract claim. That issue is not presently before the Court. Instead, the Court need only determine whether Plaintiff's requested information is relevant and proportional compared to her surviving claims.

Plaintiff also argues that, regardless of her breach of contract claim, the requested information on ownership and investment in Meow Wolf is relevant to her other claims. Indeed, Plaintiff's complaint also alleges claims for copyright infringement, violation and threatened violation of VARA, breach of covenant of good faith and fair dealing, unjust enrichment, intentional misrepresentation, negligent misrepresentation, and constructive trust. Ownership and investment information, however, has little relevance to those claims. And, on the opposite side of the proportionality scale, Plaintiff seeks voluminous discovery, to include: (1) for all persons who have held any ownership interest in Meow Wolf over the past thirteen years, a description of the ownership interest, how it was acquired, the investment made for each interest, and the amount of money received by each person; and (2) all documents ever transmitted to any prospective Meow Wolf investor and a list of all persons who ever attended any Meow Wolf promotional or investor event. Doc. 72 at 5-7. Thus, Plaintiff seeks discovery that goes far beyond identification of documents, promotional events, and investor events where Defendant featured images of her art. Complete lists of everyone who ever attended a Meow Wolf promotional event and comprehensive information about all persons who have ever invested in Meow Wolf are over-broad. Moreover, the relevance of all investor information has been further reduced by Judge Khalsa's ruling that Plaintiff has not stated a claim for a revenue share of Meow Wolf. The information Plaintiff seeks scarcely relates to her individual claims and considerations of proportionality therefore militate against requiring Defendant to produce the over-broad discovery Plaintiff seeks.

However, the Court agrees with Plaintiff that Meow Wolf's gross revenue is relevant for her unjust enrichment claim and possibly her claim for punitive damages. The burden on Meow Wolf to produce documents related to its gross revenue is much less than the burden to produce

6

the documents described in the above paragraph. Further, Meow Wolf's legitimate privacy concerns are addressed by the protective order entered in this case. Accordingly, the Court finds the Plaintiff's request for revenue information is relevant and proportional to the needs of this case. Within 30 days of the entry of this order, Defendant Meow Wolf shall respond to Plaintiff's Request for Production No. 12.

### 3. Contracts with Other Artists

Plaintiff requests that Meow Wolf produce "all documents concerning any contract and/or agreement between Meow Wolf and any participating artist between January 1, 2014 and June 3, 2019, including but not limited to the contracts or agreement themselves, drafts, and communications concerning any contracts and/or agreement." Doc. 72 at 10 (RFP No. 11). This information, Plaintiff asserts, is relevant because "[w]hat deals [Meow Wolf was] cutting, or refusing to cut, with other participating artist may well lead to evidence (witnesses and documents) supporting Oliver's own breach of contract claim." Doc. 72 at 10. Meow Wolf asserts that producing this information would require it to "interpret which of the several hundred people who participated in HoER over a more than 5-year period contributed 'copyrightable works of art,'" and that such a tasks "would be monumental, and would produce very little if any information relevant to Ms. Oliver's claims." Doc. 83 at 12.

The Court agrees with Defendant Meow Wolf that, as written, Plaintiff's request for information on contracts with other artists is over-broad and seeks irrelevant information about artists who were not in the same position as Plaintiff. However, Meow Wolf also asserts that "Plaintiff was offered the same compensation model as other artists." Doc. 83 at 1 (citing Doc. 83-1 at 8 – an April 2015 email between Plaintiff Oliver and Defendant Kadlubek in which Kadlubek discusses the "contractual terms for [Plaintiff's] involvement in the Meow Wolf

project"). The Court agrees with Plaintiff that contracts using the same compensation model during the same time period when Plaintiff was working with Meow Wolf are relevant to Plaintiff's claims. As such, Defendant Meow Wolf shall produce contracts from January 1, 2015 to March 17, 2016 (when HoER opened) with other artists who were offered the same compensation model as Plaintiff.

    4.  **Removal of Artwork by Other Participating Artists**

Lastly, Plaintiff requests "all documents concerning the removal of any copyrightable work from HoER." Doc. 72 at 11 (RFP No. 16). During the meet and confer process, Plaintiff agreed to limit her request to just information concerning the removal of *The Giant Rabbit* by Sarah Bradley and *The Chapel* by Billy Joe Miller. Doc. 72 at 12. She believes this information will lead to admissible evidence related to her VARA claim, and possibly other claims. Doc. 72 at 12.

After reviewing the limited request, Meow Wolf refused to produce any responsive documents, asserting that "nothing in Plaintiff's explanation appears to demonstrate why the removal of the other two works created by different artists relates to the alleged threat to remove Ms. Oliver's work – for instance, Plaintiff alleges no facts that Meow Wolf threatened to remove other works in HoER unless artist assented to Meow Wolf's contract terms, or any other allegation that would make the removal of other artists' work relevant to Ms. Oliver's claim." Doc. 83 at 14. Although a party must have some basis to believe that its discovery requests will lead to admissible evidence, the Court also acknowledges the Catch-22 inherent in Defendant's argument: Plaintiff is not entitled to discovery about circumstances related to the removal of other artwork because Plaintiff has not shown that the other art work was removed under

circumstances similar to her case. Recognizing this dilemma, the Court concludes that Plaintiff is entitled to at least some information about why Defendant removed the other artwork.

And Defendant did provide at least some information – on March 15, 2021, in an affidavit attached to its response to the present motion. *See* Doc. 83 at 14 (explaining that *Rabbit Room* was removed to provide room for storage of equipment for events and concerts and *The Chapel* was removed to accommodate a new installation). Moreover, Plaintiff was free to question witnesses about the circumstances of the removal of this other artwork during depositions (many of which occurred after March 15). Because Plaintiff has provided no basis to believe the removal of this other artwork occurred in circumstances similar to her own, because Plaintiff was free to explore this topic during depositions (including depositions of the artists whose work was removed, assuming those artists would not otherwise provide this information), because production of all documents related to the removal of this other artwork is likely to have only minimal relevance to Plaintiff's claims, and because allowing this written discovery would delay the completion of discovery, the Court will not compel Meow Wolf to provide any more information in response to Plaintiff's request for production regarding removal of artwork (RFP No. 16).

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Discovery from Defendant Meow Wolf, Inc. (Doc. 72) is GRANTED IN PART AND DENIED IN PART. Within 30 days of the entry of this Order, Defendant Meow Wolf shall provide the following discovery:

- a complete response to Plaintiff's Request for Production No. 12; and
- all contracts from January 1, 2015 to March 17, 2016 with other artists who were offered the same compensation model as Plaintiff.

Because the Court has granted Plaintiff's motion in part and denied it in part, each side shall bear their own expenses related to this motion.

    **IT IS FURTHER ORDERED** that Plaintiff's Request for Judicial Notice (Doc. 75) is GRANTED.

                                              */s/ Steve Yarbrough*
                                              **STEVEN C. YARBROUGH**
                                              **United States Magistrate Judge**