**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LAUREN ADELE OLIVER,
an individual,

      Plaintiff,

v.                                                              Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

Defendants.

**DEFENDANTS MEOW WOLF, INC. AND**
**VINCE KADLUBEK'S MOTION FOR SANCTIONS**
**DUE TO PLAINTIFF LAUREN OLIVER'S SPOLIATION OF EVIDENCE**

      Pursuant to Federal Rule of Civil Procedure 37(e) and the Court's inherent power, Defendants Meow Wolf, Inc. (Meow Wolf) and Vince Kadlubek hereby move for sanctions against Plaintiff Lauren Oliver for spoliating evidence. Defendants request immediate appointment of a digital forensics expert at plaintiff's expense and under the supervision of the Court to seek to recover any or all of the deleted emails, as plaintiff has failed to respond to a request that she recover the emails. Pursuant to Local Rule 7.1(a), Meow Wolf and Mr. Kadlubek have determined plaintiff opposes this Motion.

**FACTUAL BACKGROUND**

      On June 27, 2018, Plaintiff Lauren Oliver accessed her lauren.oliver@gmail.com Gmail account, one of the three email accounts she had used to communicate with Meow Wolf during the time period relevant to this case, and deleted five years of emails. She deleted every email from that day, June 27, 2018 back to April 8, 2013. This deletion involved hundreds, if not thousands, of emails, and required intention and commitment to carry out.

In the months leading up to this mass deletion, she had informed Meow Wolf that she was consulting lawyers, asserted claims that Meow Wolf was infringing her copyrights, asked Meow Wolf and its attorney to "review where and how my work has already been used and credited in Meow Wolf promotional materials, publications and any other projects I'm not aware of," and demanded that Meow Wolf stop using images of her artwork in promoting the House of Eternal Return. *See* Oliver to M. Brinkerhoff and Kosh, Ex. A. Ms. Oliver had rejected Meow Wolf's attempts to reach an agreement for a license to use her works and told Brian Solomon, a Meow Wolf employee, that she was engaging in a "legal process" and review of Meow Wolf's proposed agreement to address her allegations of copyright infringement. *See* Solomon to M. Brinkerhoff, Ex. B.

On June 24, Ms. Oliver filed an application to register her "Ice Station Quellette" artwork, which she had created years before, with the United States Copyright Office. Copyright registration is a prerequisite to file a lawsuit for copyright infringement. Two days later, on June 26, 2018, Ms. Oliver requested sales figures from Meow Wolf's coloring book featuring an image of the Space Owl, a product about which Ms. Oliver had initially expressed enthusiasm but now claimed infringed her copyright. *See* Montoya to Mor, Ex. C. The next day plaintiff conducted her mass email deletion.

The emails Ms. Oliver destroyed included one of the most important documents in this case: Meow Wolf CEO Vince Kadlubek's March 17, 2017 email to her with her Artist Bonus Program contract. *See* Kadlubek to Oliver, Ex. D. Ms. Oliver has repeatedly complained in this action that Mr. Kadlubek failed to offer her a contract for the Artist Revenue Share/Bonus Program. What other documents Ms. Oliver deleted is unfortunately not known.

The destroyed email trove could well include communications of Ms. Oliver relating to the

terms of her relationship with Meow Wolf and what she understood about it, permissions to use her artwork, and the labor of others in co-creating the Space Owl sculpture and ISQ.

"Putative litigants are under an 'obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294 (D.N.M. 2016) (internal citation omitted). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *U.S. ex rel. Baker v. Cmty. Health Sys.,* No. 05-279 WJ/ACT, 2012 U.S. Dist. LEXIS 146865, at *10 (D.N.M. Aug. 31, 2012) (internal citation omitted).

The spoliation has already impaired Meow Wolf's ability to defend itself. Key points of Ms. Oliver's deposition testimony rested directly on the absence of the emails she destroyed: she testified that she "didn't get" Vince Kadlubek's March 2017 email offering her contract and "didn't get a contract" at all. Oliver Dep., Ex. E, 423:21, 424:13–14, 466:21. As a result of her own deletion of the email, plaintiff testified to the opposite of what her testimony would have been had the email been in her account: she would not have been able to testify she did not receive the contract.

Nor is it true that all relevant emails plaintiff deleted would be found because Meow Wolf sent the emails. Meow Wolf personnel were often independent contractors using non-Meow Wolf email addresses to communicate with artists during the relevant period, so not all significant communications are contained on Meow Wolf email servers. For example, important communications have been found in the non-Meow Wolf account of Kate Russell through investigation into other matters, and only a third-party subpoena to her revealed highly relevant materials such as emails from Lauren Oliver granting Meow Wolf permission to use images of

3

Space Owl for various purposes. *See* Ex. F. Without plaintiff's emails, defendants do not know who plaintiff's other email partners were, and do not know who to subpoena to find other relevant but deleted emails.

**Ms. Oliver Concealed the Deletion Until Cornered with the Facts**

Ms. Oliver destroyed evidence from her Gmail account before filing her complaint, but she concealed her spoliation until her deposition on March 26, 2021, when she was confronted with her failure to produce a critical email to her from Vince Kadlubek. She then revealed that during the entire first year of her own litigation, she had not searched the email account or produced any documents from it. Oliver Dep., Ex. E, 219:12. Under pressure from Meow Wolf, she then produced a "Takeout"[1] export of the account with regard to key search terms, which demonstrated a five-year gap in emails. Plaintiff's deposition was paused in part to address her failure to produce any emails from the lauren.oliver@gmail.com account.

After production of emails from this account generated only a small handful of emails and revealed the mass deletion, plaintiff's deposition proceeded. On the second day of her deposition, Ms. Oliver refused to admit her deletion of Mr. Kadlubek's key document even when asked directly about it in her deposition, saying only that it was "possible" she may have deleted it. Oliver Dep., 421:16. She finally confessed that she had deleted "a large chunk of emails" associated with this account, but still did not disclose that her deletion had been systematic and vast, encompassing the 2017 Kadlubek email and the entire period of her dealings with Meow Wolf at issue in her lawsuit. Oliver Dep., Ex. E, 419:1-4, 419:15-16. When defendants' counsel asked Ms. Oliver "Is there any other explanation for how the March 17, 2017, e-mail is not in your inbox, other than deletion?" Ms. Oliver responded first by suggesting the email was never sent,

---

[1] "Takeout" is a utility that provides a download of the contents of a Gmail account as of the time the "Takeout" is run.

then withdrew this suggestion and replied, ". . . Apart from my mass deletion of what had to have been hundreds and hundreds of e-mails in an attempt to eliminate the rot, I can't imagine." Oliver Dep., Ex. E, 421:21 to 422:9.

Only after the deposition was closed did Ms. Oliver's counsel finally inform Meow Wolf and Mr. Kadlubek that Ms. Oliver had destroyed five years of emails covering essentially the entire timeframe relevant to the lawsuit. *See* Ex. G. This letter came more than a year after Ms. Oliver filed her complaint, and only weeks before the Court's deadline for fact discovery.

**Ms. Oliver Deleted Substantive Sent Emails Relating to Meow Wolf**

In a conference between counsel and follow-up email about this matter, Ms. Oliver's counsel represented that Ms. Oliver's deletion did not include sent items, but that does not appear to be true.

When Ms. Oliver finally produced her remaining undeleted emails between the first and second days of her deposition, they all dated from before 2013 except for nine auto-replies asking senders not to use the email address, which were sent from the account in 2015. The production contained no other emails sent from the account during the deletion period of April 8, 2013 to June 27, 2018.

But the auto-replies were not the only emails Ms. Oliver sent regarding Meow Wolf during that period: Meow Wolf has produced multiple substantive, highly relevant emails sent from the lauren.oliver@gmail.com account to Caity Kennedy, Meow Wolf's art director, in 2013 and 2015. Ex. H and Ex. I. These include one thread in which Ms. Kennedy invited Ms. Oliver to submit a proposal to participate in House of Eternal Return, in 2015. Ex. H. This is one of the central communications in the case, but Ms. Oliver did not produce it. In another thread, Ms. Oliver responded to an email blast from Ms. Kennedy to the wider Meow Wolf community about a 2013 Meow Wolf exhibit in Miami that Ms. Oliver was not participating in. Ex. I. This thread sheds

light on Ms. Oliver's relationship with Meow Wolf in the period leading up to House of Eternal Return, another critical aspect of Ms. Oliver's case because she claims to have been a "core member" of Meow Wolf.

Ms. Oliver sent the emails, but she did not produce them. It appears Ms. Oliver deleted these emails from her Sent folder. We do not know what other substantive emails about Meow Wolf Ms. Oliver might have also deleted. Although all the substantive emails about Meow Wolf are deleted, Ms. Oliver did not delete her auto-replies to Meow Wolf addresses.

**Ms. Oliver Makes an Excuse that Does Not Hold Water**

When Ms. Oliver was confronted with her failure to produce any emails from the lauren.oliver@gmail.com account on the first day of her deposition, she tried to excuse the failure by stating she no longer used the email address, and had not since 2015 or 2016. She claimed she had discontinued using it because "it was used in the Anthem breach," a security incident that affected an insurance company in December 2014 and was discovered in January 2015. *See* Article on Anthem Breach by Norton, Ex. J. Meow Wolf's counsel asked when was the last time Ms. Oliver had access to the account, and she responded, "Quite a while ago, Ben. Quite a while ago. It just filled up with really scary spam, and it was used in the Anthem breach. The e-mail was used for, you know, eBay transactions and things that were illegal. I just stopped going there." Oliver Dep., Ex. E, 219:15-20.  When asked if she had the password for this account in 2017, she answered, "I'm not clear that I did, and I can only say I stopped checking it. . . And again, I may have had access to it in theory, but I did not use it." Oliver Dep., Ex. E, 259:4-5, 11-12. Between the first and second days of her deposition, however, Ms. Oliver in fact had no trouble accessing the account to produce emails from the period before the deletion. *Id.* at 412:5.

When Ms. Oliver finally admitted deleting emails, she said she did so in reaction to the

Anthem security breach, "in order to eliminate any phishing and other compromising e-mails." Oliver Dep., Ex. E, 419:12-17. But this explanation is not plausible. Although Ms. Oliver was aware of this breach and allegedly abandoned the email in 2015, it was three years later that she conducted the mass deletion, in 2018. Oliver Dep., Ex. E, 219:13-15, 421:11-17. This timing has no connection with the Anthem breach, but it falls three days after Ms. Oliver filed her copyright registration application—a prerequisite to litigation—and the day after she asked for sales records of the coloring book about which she sued Meow Wolf.

Second, the scope of the deletion indicates something other than Ms. Oliver's purported justification: while the Anthem breach occurred in December 2014, Ms. Oliver deleted back almost *two years* before this breach, to April 2013. This was a considered choice: deleting emails from a Gmail account involves going chronologically, screen-by-screen, and manually selecting emails to delete. The scope went far in excess of a response to Anthem, but it neatly covered the period when Meow Wolf was developing its HoER project and Ms. Oliver began to be involved.

It is also hard to see why Ms. Oliver would indiscriminately delete every single message in her Inbox, no matter how important, even messages clearly related to litigation she was contemplating, rather than just the spam she was allegedly concerned with, if she were just trying to practice digital hygiene. And there would be no reason to delete any sent items if Ms. Oliver's purpose was to clear spam.

Ms. Oliver emphasized in her deposition that after the Anthem security incident she set up an auto-reply notifying persons who emailed her at the lauren.oliver@gmail.com address that she was no longer using the account. Some Meow Wolf personnel including Vince Kadlubek received that auto-reply message. The earliest auto-reply to Meow Wolf personnel we know of is from March 2015, and Mr. Kadlubek received five of the auto-replies—indicating how many relevant

emails were going to this account. Use of the auto-reply does not explain the choice to delete all the emails from a five-year period going back nearly two years before the security incident. Ms. Oliver says she "abandoned" the account. Oliver Dep., Ex. E, 219:14–15. But the fact is she maintained access to it, still had access to it when she filed this lawsuit, and still has access to it now. She knew part of what she was destroying were Meow Wolf emails relating to the HoER build, of fundamental relevance to the lawsuit she was preparing to bring, and she almost certainly saw Mr. Kadlubek's 2017 email presenting a contract in the account when she clicked to delete it. The wide date-span of the deletion suggests she knew other materials in the account could hinder her lawsuit, but we now do not know what those were.

Security worries do not explain why Ms. Oliver would return to an email account three years after she had purportedly abandoned it, to laboriously mass delete every single message going back almost two years past the incident of supposed concern. Nor do cybersecurity worries explain why the timing would coincide with her consultation with a lawyer, claiming that Meow Wolf was infringing her copyright, asking for sales figures for a product she would claim in her lawsuit infringed her copyrights, and registering her copyright for a years-old artwork as required to initiate litigation.

**The Deletion is Part of a Pattern of
Concealing Evidence from the HoER Development Period**

The mass email destruction is not Ms. Oliver's only failure to provide relevant evidence. She also testified that in spite of filing this lawsuit and receiving numerous requests for documents relating to her activities during the building of her artwork at HoER, she has maintained her paper files from this period in storage in Santa Fe—and has never looked in those files for documents responsive to Meow Wolf's document requests. Oliver Dep., Ex. E, 467:7–13. Ms. Oliver lives in Menlo Park, California and has looked only in her limited electronic files for relevant documents.

There are likely critical papers in the files she has still, to this day, not searched: Ms. Oliver has repeatedly claimed Meow Wolf refused to provide her with a formal artist contract, but Meow Wolf likely did so, and it is in Ms. Oliver's Santa Fe paper storage which she has never searched. Meow Wolf distributed artist contracts at a meeting on May 6, 2015 which plaintiff was urged to attend. CEO Vince Kadlubek wrote to Ms. Oliver, "This meeting is pretty close to mandatory -- as I want to go over some logistical things with everyone, hand everyone their contract, and get things clarified." Kadlubek to Artists, Ex. K. These contracts were not emailed; they were form contracts on paper with blanks for names and compensation numbers to be filled in by hand. It is possible Ms. Oliver attended, as she was urged to, and received her formal contract—but at her deposition she would neither admit nor deny she had attended. Even if she missed the meeting, she almost certainly received the contract shortly after from Meow Wolf Art Director Caity Kennedy, who personally followed up with absent artists to ensure that every artist received his or her paper contract. Kennedy Decl., Ex. L.

Ms. Oliver testified that some of her paper files are in Santa Fe, where Ms. Oliver sued, and some are in California, where Ms. Oliver resides, but she has never searched either trove for relevant documents. Oliver Dep., Ex. E, 352:9 to 353:9. She did not reveal the existence of the paper files or her failure to search them until her deposition with only a month left in fact discovery. *Id.* She made no attempt to access them after the deposition, either. Her lawyer said she could "most likely" access them in the summer, at least a month after the close of discovery. Boyd to Allison, Ex. G.

## LEGAL STANDARD

"Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007). "Putative litigants are under an 'obligation to preserve evidence . . . when the party

has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Browder*, 187 F. Supp. 3d at 1294 (internal citation omitted). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Baker*, 2012 U.S. Dist. LEXIS 146865 at *10 (internal citation omitted). To prevent spoliation, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at *8 (internal citation omitted).

But the party's obligations do not end there—"that's only the beginning." *Id.* at *9. (internal citation omitted). "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Id.* (internal citation omitted).

Federal Rule of Civil Procedure 37(e) confirms the Court's power under its inherent authority to order sanctions when a party destroys ESI that "should have been preserved" because it "failed to take reasonable steps to preserve [the ESI], and it cannot be restored or replaced through additional discovery."

Under Rule 37(e)(2), if the Court finds that a party spoliated evidence in bad faith, or "with the intent to deprive another party of the information's use in the litigation," the Court "may presume the lost information was unfavorable to the party." *See Equal Emp. Opportunity Comm'n v. JetStream Ground Servs.*, 878 F.3d 960, 965–66 (10th Cir. 2017). The Court need not find prejudice to impose sanctions under Rule 37(e)(2) because finding the requisite bad faith supports "an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37 advisory committee's notes to 2015 Amendment.

The Court can infer bad faith from circumstantial evidence, including otherwise

inexplicable spoliation, even if there is not "smoking gun" evidence of intent. *See Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019); *see also Adams v. Gateway*, No. 2:02-CV-106 TS, 2006 WL 2563418, at *3–4 (D. Utah Mar. 22, 2006) (finding circumstantial evidence sufficient for inference of bad faith where there was "no explanation" for missing emails and defendant "did everything it could to avoid producing complete copies of all the relevant e-mails"); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (finding "unexplained, blatantly irresponsible behavior" sufficient for bad faith determination).

Even if a party spoliated evidence without bad faith, a Court "may order measures no greater than necessary to cure the prejudice," which may include attorney fees as well as an order "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e)(1); Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment; *see also Browder*, 187 F. Supp. 3d at 1295.

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Browder*, 187 F. Supp. 3d at 1295 (internal citation omitted). Thus, though courts consider a "variety of factors" in deciding whether to impose spoliation sanctions, two "carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Id.* "[P]rejudice is shown when the destroyed evidence goes to a crucial issue and the evidence at hand is conflicting." *Baker*, 2012 U.S. Dist. LEXIS 146865, at *43; *see also Browder*, 187 F. Supp. 3d at 1299 (finding prejudice where testimony of individual whose ESI had been spoliated "conflict[ed]

with testimony of the eyewitnesses and the findings of the internal investigations").

## ARGUMENT

## I
## PLAINTIFF AND HER COUNSEL HAVE
## FAILED TO RESPOND TO A DEMAND THAT
## THEY RECOVER THE DELETED EMAILS, AND AN
## INDEPENDENT EXPERT SHOULD BE REQUIRED TO DO SO

When Meow Wolf found out that Ms. Oliver had destroyed her emails, counsel for Meow Wolf promptly wrote to counsel for Ms. Oliver asking them to "immediately inform us what steps you have taken to investigate recovery of the deleted emails." Contreras to Boyd, Ex. M. For more than three weeks after, plaintiff failed to answer the letter or give any indication she had made any attempt to recover the emails. When Meow Wolf's counsel contacted plaintiff's counsel to ascertain her position on this motion, plaintiff's counsel indicated Ms. Oliver could not recover the deleted emails. Ex. N.

Through its own investigation, Meow Wolf has learned from digital forensics experts that it is possible some emails can be recovered, though the chance data still exists is slim and dwindles more every day. Possible sources of recovery include stored data on Ms. Oliver's cell phone used before the deletion, stored data in an email program like Outlook if Ms. Oliver used one, and servers maintained by Google.

Ms. Oliver should be required to take all possible measures to recover the emails she intentionally destroyed. Defendants request the Court to appoint a digital forensics expert at plaintiff's expense to pursue recovery of the deleted emails through all available means, and require Ms. Oliver to execute a release for Google to provide access for the forensics expert to Ms. Oliver's lauren.oliver@gmail.com account.

## II
## PLAINTIFF HAD A DUTY TO PRESERVE THE SPOLIATED EVIDENCE,
## BUT FAILED TO TAKE REASONABLE STEPS TO PRESERVE IT

Ms. Oliver "should have [] preserved" her ESI but "failed to take reasonable steps" to do so, and the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

*First*, in June 2018 when Ms. Oliver deleted the emails, she was taking steps to prepare for litigation, including consulting a lawyer and registering the copyright in her years-old work—something laypeople do not generally know is a prerequisite to filing suit. When a party takes a step toward litigation, litigation is necessarily "reasonably foreseeable" to the party. *Id.*; *Browder*, 187 F. Supp. 3d at 1294–95. It was at this point that plaintiff intentionally deleted five years of her Inbox and deleted the substantive emails about Meow Wolf from her Sent folder.

*Second*, Ms. Oliver did not take "reasonable steps to preserve" the ESI, Fed. R. Civ. 37(e), especially as she was the person preparing to bring the lawsuit. At a bare minimum, Ms. Oliver needed to suspend any routine deletions of Meow Wolf-related messages. Instead of taking "reasonable steps to preserve," Ms. Oliver took decisive steps to destroy her ESI through intentional acts that took a lot of work—selecting each email, screen by screen, to delete vast quantities of emails in a Gmail account, and to delete the substantive emails in her Sent folder while leaving her auto-replies. Even if clearing spam really had been Ms. Oliver's purpose in deleting the emails, as she claimed, doing so would have violated her preservation duties unless she took appropriate measures to shield all emails related to Meow Wolf.

Ms. Oliver's purported explanation is unlikely, however, because of the deletion's timing in the midst of other steps to prepare for litigation and because if she were just trying to get rid of spam, she could have stopped at the time of the Anthem breach rather than going back almost two years more. There was something before Anthem she did not want Meow Wolf to find.

Moreover, Ms. Oliver's decision not to produce even older emails from the account she

cleared represents further willful failure to make evidence available and an attempt that nearly succeeded to conceal her deletion of key emails. *See, e.g.*, *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 629–30 (D. Colo. 2007) (awarding sanctions where defendant "directed employees to produce all relevant information, and then relied upon those same employees to exercise their discretion in determining what specific information to save," and "simply assumed that the materials [] received were complete and the product of a thorough search" with no effort to validate the "accuracy and completeness" of the materials); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 WL 185082, at *59 (N.D. Ill. Jan. 19, 2021) ("[D]ocument collection by custodians who have a stake in the outcome of the litigation or whose conduct might have been embarrassing or compromising will draw heightened scrutiny and skepticism.").

Fault also lies with Ms. Oliver's attorneys if they did not advise her to preserve evidence rather than destroy it and if they did not make efforts to confirm with Ms. Oliver that she had provided materials from all relevant accounts to fulfill their document production obligations. *Baker*, 2012 U.S. Dist. LEXIS 146865, at *9 ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." (internal citation omitted)).

*Third*, the spoliated ESI cannot be restored or replaced though additional discovery. Deleted messages in Gmail accounts cannot generally be recovered after a few weeks or months, and Ms. Oliver has made no effort at all to recover the deleted emails. Even if some emails can ultimately be recovered through forensics, for the vast majority of the emails it is virtually certain Ms. Oliver's plan worked.

Ms. Oliver is likely to claim the loss of ESI from the Gmail account was insignificant. But

her bad faith and intentional concealment of the deletion indicate there was something Ms. Oliver thought significant among the deleted emails. Ms. Oliver's refusal to take action to try to recover the emails reinforces the inference. Given the scope of the deletion, the reasonable inference is that Ms. Oliver had a number of emails spanning several years that she was worried would compromise her litigation effort.

It would "defy logic" to "give [Ms. Oliver] the benefit of the doubt on [her] word alone" when her "conduct created [the] situation where we cannot assess exactly what or how much information was lost and what or how much information was important to [Meow Wolf's] case." *See Baker*, 2012 U.S. Dist. LEXIS 146865, at *50 (internal citation omitted). We know about at least four key emails Ms. Oliver deleted:

- a 2013 email thread with Caity Kennedy about an exhibit Ms. Oliver did not participate in, which indicates Ms. Oliver was aware of Meow Wolf's development, but not in the capacity of a "core member," as Ms. Oliver claims;

- the email in which Caity Kennedy invited Ms. Oliver to submit a proposal to participate in House of Eternal Return, and the thread including Ms. Oliver's response;

- the email in which Mr. Kadlubek announced the meeting where paper contracts were distributed in 2015; and

- the email in which Mr. Kadlubek offered Ms. Oliver an integrated contract in 2017.

Ex. I, Ex. H, Ex. K, and Ex. D. But Ms. Oliver spoliated the best if not the only source for other communications.

Anything Ms. Oliver might tell us about the other contents of the account must be doubted, since she is the one who decided to destroy the ESI and then hide the deletion and the very existence of the account, as well as the existence of her paper files which she has still not searched, through the entire discovery period. Even when confronted about the missing emails in her deposition, she was evasive and refused to admit her wholesale deletion until after her deposition.

Additional discovery would not "restore or replace" the lost evidence. The chance of most of the emails being recovered is very remote. And though Meow Wolf has deposed Ms. Oliver, memories fade and there are many details from the HoER build period Ms. Oliver did not claim to remember, so this does not begin to be a functional substitute for the spoliated ESI, even without taking into account the effect of Ms. Oliver's concealment on her credibility and the effect of the absence of contemporaneous materials on Defendants' ability to cross-examine. *See, e.g.*, *McQueen v. Aramark Corp.*, 2016 U.S. Dist. LEXIS 164678, at *6 (D. Utah Nov. 29, 2016) ("[T]he testimony of [the two witnesses] does not replace the destroyed documents. It is unlikely they will be able to remember the specific contents of each destroyed work order.").

## II
## MEOW WOLF HAS BEEN PREJUDICED BY PLAINTIFF'S SPOLIATION OF CONTEMPORANEOUS COMMUNICATIONS AND DOCUMENTATION FROM HER EMAIL ACCOUNT

The prejudice from losing all contemporaneous evidence and documentation from one of Ms. Oliver's email accounts during much of the relevant time period is self-evident.

Such evidence would go to "crucial issue[s]" where "the evidence at hand is conflicting." *Baker*, 2012 U.S. Dist. LEXIS 146865, at *49. Contemporaneous communications and documentation from the deleted emails could inform Meow Wolf's defenses, aiding in proving that Ms. Oliver agreed to the revenue share stipend presented to her by Meow Wolf, that she knew what Meow Wolf was offering was not equity or its equivalent and that Meow Wolf was a corporation, that Ms. Oliver was not the sole author of Space Owl and ISQ, and that Ms. Oliver gave permission for Meow Wolf to use Space Owl and ISQ in its promotional activities. *See Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 110 (S.D. Fla. 1987) (finding prejudice in destruction of documents despite being unable to determine what the destroyed documents contained because the destroyed documents fell "within a category directly pertinent to" the claims

in the case); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984) (entering default judgment because of destruction of documents despite not knowing the contents of the documents but knowing that the nature and class of documents destroyed were purchase, sale and inventory records, all of which were relevant to the plaintiff's abilities to prove its case); *Marrocco v. General Motors*, 966 F.2d 220, 223 (7th Cir. 1992) (when certain evidence was lost, the Court found the loss prejudicial, stating, "but therein lies the prejudice--GM was denied any opportunity to find out one way or the other" if the lost evidence would have assisted GM in its case).

And such evidence would be especially helpful here, where Ms. Oliver has given testimony that conflicts with other evidence. For example, Ms. Oliver claims "I just remember hearing the word share, share, share, sharing in the success of our creations" but Meow Wolf offered her specific deal terms including a capped revenue share and other particulars, and other witnesses testified in depositions that the existence of a cap was common knowledge. Oliver Dep., Ex. E, 280:5-7. Contemporaneous communications and documentation from Ms. Oliver could reveal whether she really thought at the time that she was being offered an unlimited equity share or whether her deposition testimony is merely a self-serving fabrication designed to inflate her damages claims. And this issue is at the core of the case.

Ms. Oliver has also testified that she didn't understand that Meow Wolf was a company. She says she thought it was the same sort of informal collective it had been in the preceding decade when a loosely affiliated group partied together and "[m]ade crazy art on the walls, and then glued stuff together, and created very dangerous structures that were probably fire traps"—as Ms. Oliver described the work–before the group began creating large-scale exhibitions around the country, created a company and elected leadership to develop the artistic vision, and secured millions of

dollars of outside-investor debt funding secured by personal guarantees of the officers. Oliver Dep., Ex. E, 577:23–25 to 578:1–2. Ms. Oliver's contemporaneous communications could have shown directly whether she was really as unaware of the context of House of Eternal Return context as she now claims. *See Mueller v. Swift*, 2017 U.S. Dist. LEXIS 112276, *11 (D. Colo. 2017) ("The absence of the [spoliated ESI] limits Defendants' ability to explore whether Plaintiff has or has not 'changed his story' . . . ."). The deleted 2013 email thread with Caity Kennedy about an exhibit Ms. Oliver did not participate in indicates Ms. Oliver was aware of Meow Wolf's development, but not in the capacity of a "core member," as Ms. Oliver claims. Ex I.

Ms. Oliver's testimony that she was never offered a written contract by Meow Wolf has been supported by her mass deletion and her failure to look in her paper files. The prejudice regarding these issues has already been considerable because of the large effort and expense Defendants have had to invest in pursuing information that should have been simply provided by Ms. Oliver in discovery; it is surely a discovery abuse and not proportional under Rule 26 to impose on another party costs of discovery necessitated by spoliation. Prejudice continues in the lack of Ms. Oliver's destroyed contemporaneous communications for cross-examination. *Mueller*, 2017 U.S. Dist. LEXIS 112276, at *11 (prejudicial spoliation where "Defendants are largely unable to cross-examine Plaintiff" regarding selectively preserved evidence). Additional prejudice remains because Ms. Oliver's destruction of contemporaneous records takes away a key check on Ms. Oliver's claims not to have seen the email with the contract and not to remember getting the paper contract. Oliver Dep., Ex. E., 423:21, 424:13–14 ("didn't get" emailed contract); 466:21 ("didn't get a contract" at all).

Another issue the deleted emails likely illuminated is the understanding between Meow Wolf and Ms. Oliver regarding use of her work in promoting Meow Wolf. Other discovery has

revealed a number of instances in which Ms. Oliver consented to use of her work in promotions, strongly suggesting an understanding that such use was permitted as a general matter. Ex. O. Such an understanding would cripple Ms. Oliver's copyright infringement claims. In light of the partial evidence from other sources, it is not unlikely that the lauren.oliver@gmail.com account contained additional communications regarding permissions, and Ms. Oliver had these in mind when she deleted the emails three days after she registered her copyright and the day after she requested sales figures for the allegedly infringing coloring book.

**III**
**THE TOTALITY OF THE EVIDENCE COMPELS THE CONCLUSION THAT MS.**
**OLIVER SPOLIATED THE DOCUMENTS AND COMMUNICATIONS IN BAD FAITH**

"There need not be a 'smoking gun' to prove intent" to deprive an opposing party of evidence. *Paisley Park*, 330 F.R.D. at 236. When Ms. Oliver's active spoliation of emails and years-long effort to conceal it are considered together, the only reasonable conclusion is that she spoliated her ESI in bad faith.

Ms. Oliver's excuse for the destruction of ESI from her principal Gmail account is implausible. At the same time she was consulting a lawyer, collecting damages information, and registering her copyright as a prerequisite for litigation, Ms. Oliver deleted all her emails with Meow Wolf that related to written contracts and all her emails from what appears to have been her primary account for part of the period. Ms. Oliver's excuse that she was deleting spam from an account she no longer used does not match the timing or the labor-intensive process to delete nearly two years of emails before the alleged data breach, much less the deletion of some emails from her Sent folder but not her auto-replies. *See Moody v. CSX Transp.*, *Inc.,* 271 F. Supp. 3d at 427, 430 (W.D.N.Y 2017) (finding bad faith where defendant railroad's explanation for loss of "most important objective evidence" of how train accident occurred was "implausible" and stating, "Of course, a court is not required to credit explanations for the loss of the relevant evidence that it

finds incredible."). Ms. Oliver has offered no explanation for why she deleted emails going back past the supposed security breach or why she deleted from her Sent folder. *Moody*, 271 F. Supp. 3d at 427 ("The implausible nature of defendants' narrative is heightened by their complete inability to explain what happened to Lewandowski's laptop after he returned it to Jacksonville.").

Moreover, Ms. Oliver waited until the last month of discovery, after she was cornered with the facts, to inform Meow Wolf of her spoliation, which calls into doubt the credibility of her excuse that the deletion was an attempt to clear out spam. *See, e.g., DR Distribs.*, 2021 U.S. Dist. LEXIS 9513, at *125 (finding that failure to "timely disclose the destruction of evidence violates the rules requiring candor to the court and fairness to the opposing party and counsel" and that "failure to comply with ethical obligations to opposing counsel and the Court does not further a witness' credibility"); *Baker*, 2012 U.S. Dist. LEXIS 146865, at *50-51 (finding it would "defy logic" to "give the government the benefit of the doubt on its word alone" when its "conduct created [the] situation where we cannot assess exactly what or how much information was lost and what or how much information was important"). She never admitted her deletion of the substantive messages from her Sent folder, despite the absence of known key emails from her production.

Ms. Oliver did not produce any emails from the lauren.oliver@gmail.com account at all or search the account until after Meow Wolf discovered the account's existence and specifically demanded production from it. It appears Ms. Oliver hoped the gaping hole in her production would go unnoticed. She also waited until her deposition at the tail end of discovery to let Meow Wolf know she had paper files in California and Santa Fe that she had never searched. This pattern of concealment does not befit negligent or even reckless spoliation; rather, it evinces an intent to deprive the parties of evidence. *See Adams*, 2006 WL 2563418, at *3–4 (finding circumstantial evidence sufficient for inference of bad faith where there was "no explanation" for missing emails

and a failure to "comply with discovery orders"). Even setting aside the strong circumstantial evidence that her purpose was bad, Ms. Oliver violated a duty she had to preserve the emails, whatever her purpose.

**IV**
**APPROPRIATE SANCTIONS**

Ms. Oliver's intentional spoliation of evidence directly bearing on key issues, and her exploitation of absence of the contemporaneous records she deleted, indicate strong sanctions to remedy the defending parties' prejudice, compensate them for the expenses in bringing this Motion and investigating the spoliation, and punish Ms. Oliver for her misconduct.

The relief should account for the evidence that has been forever taken from Meow Wolf—contemporaneous communications and documentation from Ms. Oliver, and what these documents could have shown regarding the communications Ms. Oliver received about the meeting when paper contracts were disputed, other information about the artist revenue share program, permissions for the use of images of Space Owl and ISQ, and communications making the obvious fact of Meow Wolf's company existence and functioning even plainer to Ms. Oliver. Meow Wolf has been deprived of the sort of evidence that could have rebutted Ms. Oliver's argument with her own documents and communications.

Meow Wolf requests, first, that the Court order Ms. Oliver to remedy the prejudice she caused by deleting emails, through a Court-appointed digital forensics expert applying all available measures to recover such emails as still exist from Ms. Oliver's devices and the servers where her Gmail account has been maintained, at Ms. Oliver's expense. The Court should order Ms. Oliver to preserve all her devices and execute a release for the digital forensics expert's access. The Court should also authorize Defendants to reopen Ms. Oliver's deposition for examination relating to any documents that are recovered.

Second, Meow Wolf requests with regard to emails that are not recovered by the digital forensics expert:

- an order precluding Ms. Oliver from putting on evidence (including testimony) that she did not receive a paper contract from Meow Wolf in May 2015, and an adverse inference that Ms. Oliver did in fact receive a paper contract from Meow Wolf in May 2015;

- an order precluding Ms. Oliver from putting on evidence (including testimony) that she did not receive or read Vince Kadlubek's March 17, 2017 email to her and its attached written contract, and an adverse inference that Ms. Oliver did in fact receive and read the email and attached written contract;

- an order precluding Ms. Oliver from putting on evidence (including testimony) that she was a core member of Meow Wolf, and an adverse inference that Ms. Oliver was not a core member of Meow Wolf;

- an adverse inference that Ms. Oliver granted a permission for Meow Wolf to use images of her artwork in HoER for promotion of HoER and Meow Wolf;

- an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to Ms. Oliver with respect to all of Ms. Oliver's claims;

Fourth, if the majority of the deleted emails cannot be recovered, then there is no way to right this wrong and allow Meow Wolf to fairly defend this action. As a consequence, Meow Wolf requests dismissal of plaintiff's claims for copyright infringement, breach of contract, intentional and negligent misrepresentation, and unjust enrichment.

Meow Wolf further requests an order awarding Meow Wolf its attorneys' fees and costs associated with investigating Ms. Oliver's spoliation and with this Motion, and all other relief the Court deems appropriate.

## **CONCLUSION**

Accordingly, Meow Wolf and Vince Kadlubek respectfully request that the Court grant their Motion for Sanctions and order the requested sanctions.

Dated: May 21, 2021

Respectfully submitted,

BARDACKE ALLISON LLP

By: */s/ Benjamin Allison*
    Benjamin Allison
    Breanna Contreras
    Victor Grafe III
    P.O. Box 1808
    141 E. Palace Avenue
    Santa Fe, NM  87504-1808
    505-995-8000
    ben@bardackeallison.com
    breanna@bardackeallison.com
    victor@bardackeallison.com

    *Counsel for Defendants Meow Wolf, Inc.*
    *and Vince Kadlubek*

**CERTIFICATE OF SERVICE**

I, Benjamin Allison, hereby certify that I caused a true and correct copy of the foregoing *Defendants' Meow Wolf, Inc. and Vince Kadlubek's Motion for Sanctions Due to Plaintiff Lauren Oliver's Spoliation of Evidence* to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON LLP

By:     */s/ Benjamin Allison*
         Benjamin Allison