# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,

    Plaintiff,

v.                                                             Civ. No. 20-237 KK/SCY

MEOW WOLF, INC. *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on: (1) Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 77) ("Motion"), filed February 22, 2021; and, (2) the Court's Order to Show Cause (Doc. 104), filed April 22, 2021. Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, the Court FINDS that Plaintiff's Motion is well taken in part and should be GRANTED IN PART and DENIED IN PART. Plaintiff may file the proposed amended complaint attached to her Motion as Exhibit 1 except that the filed amended complaint must exclude her proposed conversion claims based on unauthorized and injurious use of her works.[1] The Court further FINDS that Plaintiff's Response to Court's Order to Show Cause re: Motion for Leave to File Amended Complaint (Doc. 109) ("Show-Cause Response"), filed April 28, 2021, adequately addresses the Court's concerns and the Order to Show Cause should be QUASHED.

## I. Factual Background and Procedural History

In her Complaint for Violation and Threatened Violation of the Visual Artists Rights Act, Copyright Infringement, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing,

---

[1] Also, the filed amended complaint must be double spaced in compliance with Local Rule 10. *See* D.N.M.LR-Civ. 10.1 ("Except for footnotes and quotations, the text of all documents must be double spaced.").

Unjust Enrichment, Conversion, Misrepresentation, and Constructive Trust (Doc. 1) ("Complaint"), Plaintiff Lauren Adele Oliver alleges the following. In or about 2006, Plaintiff first sketched "the Space Owl," an original "owl-like alien . . . with horns and a face visor." (Doc. 1 at 3.) She developed, created, and exhibited versions of this character through at least 2015, placing the Space Owl at the center of a project entitled "Ice Station Quellette" ("ISQ"). (*Id.* at 3-4.) Plaintiff holds registered copyrights for the Space Owl and ISQ. (*Id.* at 11.)

Defendant Meow Wolf, Inc. ("MWI") is a Delaware corporation formed in November 2016. (Doc. 1 at 2; Doc. 37-4; Doc. 59 at 2 & n.2.) Defendant Vince Kadlubek was at relevant times a director and/or officer of Defendant MWI. (Doc. 1 at 2.) Before Defendant MWI's incorporation, "Meow Wolf" was an "artists' collective" that acted through Defendant Kadlubek and other representatives. (*See id.* at 3-6.)

In early 2015, Meow Wolf representatives asked Plaintiff to install ISQ at a permanent installation called the "House of Eternal Return" ("HoER"). (*Id.* at 4.) "In exchange for [Plaintiff's] timely installation of ISQ at [the] HoER without initial compensation," these representatives, including Defendant Kadlubek, "offered [Plaintiff] membership in the Meow Wolf artists' collective and a right to receive a share of Meow Wolf's revenue." (*Id.* at 5, 17.) Plaintiff accepted this offer and spent months and "considerable personal resources" designing and installing versions of ISQ and the Space Owl at the HoER. (*Id.* at 6.)

The HoER opened in March 2016. (*Id.* at 12.) It was "a monumental success, generating tens-of-millions in revenue in its first four years." (*Id.* at 11.) As a result, Defendant MWI grew into "an artistic enterprise . . . valued at hundreds of millions of dollars," with "huge profit margins" and "hundreds of employees." (*Id.* at 6, 11.) The Space Owl, in particular, became a "fan

2

favorite" and an "iconic element" of the HoER, appearing in numerous social media posts and press articles. (*Id.* at 12.)

In 2017 or 2018, Defendants began to call artists' compensation a "[b]onus [p]rogram" rather than a revenue share. (*Id.* at 6.) Also, in 2018, Plaintiff discovered that Defendants were "making money from the ISQ without compensating or crediting [her]," *e.g.*, by including images of her work in books sold in the HoER gift shop. (*Id.* at 7, 12-13.) Around April 2018, Plaintiff "decided the parties needed to formalize their agreement and relationship." (*Id.* at 7.) When negotiations failed to produce a formal agreement by June 2018, Plaintiff asked Defendant MWI to "stop using the Space Owl until their relationship had been formalized." (*Id.*) Nevertheless, in December 2018, Plaintiff learned that Defendant MWI had used the Space Owl in a documentary. (*Id.* at 8.)

In June 2019, Plaintiff met with Defendant Kadlubek. (*Id.*) Until that meeting, Plaintiff had "trusted that Defendants would at some point negotiate a reasonable method of compensation" for her work at the HoER. (*Id.* at 14.) At the meeting, however, Defendant Kadlubek offered Plaintiff a "cruel ultimatum," *i.e.*, either "sell [Defendant MWI] all rights to the Space Owl for a nominal sum and end the relationship or remove ISQ from [the] HoER without additional compensation and end the relationship." (*Id.* at 8-9, 14.) After the meeting, Plaintiff continued to try to "negotiate a fair resolution" but Defendants' position did not change. (*Id.* at 9.) Meanwhile, Defendant MWI "repeatedly threatened [Plaintiff] with the removal of ISQ without her permission." (*Id.* at 10.) "Because of the way it is constructed, removal of the installation would require its destruction." (*Id.*)

A "significant portion" of Defendant MWI's success and value is due to ISQ and the Space Owl. (*Id.* at 15.) However, to date, Plaintiff has received only $2,000 from Defendants for her

work at the HoER, which does "not even cover the personal funds she . . . expended for the installation." (*Id.* at 8, 15.)

Plaintiff filed her Complaint against Defendants MWI and Kadlubek and fifty Doe Defendants on March 16, 2020. (*Id.* at 1-2.) In the Complaint, Plaintiff asserts claims for copyright infringement, violation of the Visual Artists Rights Act ("VARA"), breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, intentional misrepresentation, negligent misrepresentation, and constructive trust. (*Id.* at 15-21.) Based on these claims, she seeks injunctive relief, compensatory, punitive, and statutory damages, equitable relief including disgorgement of unjust enrichment and conveyance of an ownership interest in "the Meow Wolf artists' collective," and attorney's fees and costs. (*Id.* at 22-24.)

On August 3, 2020, Defendants filed a motion to dismiss Plaintiff's Complaint in part, (Doc. 32), which the Court granted in part and denied in part on November 25, 2020. (Doc. 59.) Specifically, the Court dismissed Plaintiff's "Sixth Claim for Relief (Conversion against All Defendants)" without prejudice and denied the motion in all other respects. (*Id.* at 41.) The Court allowed Plaintiff until December 28, 2020 to file an amended complaint. (*Id.*; Doc. 104 at 1 & n.1.)

The deadline for expert depositions in this matter expires on May 30, 2021. (Doc. 86.) All other discovery was due no later than May 7, 2021.[2] (*Id.*; Doc. 53.) However, on April 21, 2021, Plaintiff filed an opposed Motion to Extend Rule 16(b) Scheduling Order Deadlines, in which she asks the Court to extend the discovery deadline to June 29, 2021. (Doc. 99 at 1.) This motion is still pending. Also pending are Defendant MWI's production of documents pursuant to the Court's May 17, 2021 Order Granting in Part and Denying in Part Plaintiff's Motion to Compel (Doc.

---

[2] Specifically, non-expert deposition discovery was due by April 30, 2021 and written discovery was due by May 7, 2021. (Docs. 53, 86.)

128), and two motions regarding discovery disputes: (1) Defendant MWI's Motion for Protective Order (Doc. 100); and, (2) Plaintiff's [Second] Motion to Compel Discovery from Defendant Meow Wolf, Inc.[3] (Doc. 122.) As a result of the pending motions, some discovery may be exchanged after the deadlines currently in place have expired.[4]

Plaintiff filed her Motion seeking leave to amend her Complaint on February 22, 2021. (Doc. 77.) Defendants MWI and Kadlubek responded in opposition to the Motion on March 15, 2021, and Plaintiff replied in support of it on March 29, 2021. (Docs. 82, 90.) On April 22, 2021, the Court ordered Plaintiff to show cause why it should not deny the Motion based on Plaintiff's failure to comply with the Court's December 28, 2020 deadline for amending the Complaint. (Doc. 104 at 2.) Plaintiff timely filed her Show-Cause Response on April 28, 2021; and, with the Court's leave, Defendant MWI filed a reply in opposition to the Show-Cause Response on May 7, 2021. (Docs. 109, 115, 121.)

## II. Analysis

In her Motion, Plaintiff seeks leave to amend her original Complaint to: (1) add promissory estoppel claims against all Defendants; (2) assert revised conversion claims against all Defendants following the Court's dismissal of the conversion claims asserted in her original Complaint; and, (3) add supporting factual allegations. (Doc. 77 at 1.) Federal Rule of Civil Procedure 15 provides that, absent circumstances not applicable here, "a party may amend its pleading only with the

---

[3] Defendant MWI's motion for protective order concerns two depositions Plaintiff seeks to take, and Plaintiff's second motion to compel concerns Defendant MWI's response and objections to one of Plaintiff's requests for production. (Docs. 100, 122.)

[4] In addition, on May 21, 2021, Defendants filed a motion for sanctions due to Plaintiff's alleged spoliation of evidence. (Doc. 132.) Though nominally not a motion to compel discovery, this motion may also result in the exchange of additional discovery after the deadlines currently in place have expired. (*See, e.g., id.* at 21 (seeking appointment of digital forensics expert to recover deleted e-mails and leave to depose Plaintiff regarding any e-mails the expert recovers).)

opposing party's written consent or the court's leave."[5] Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is within the trial court's discretion. *Bradley v. Val-Mejias*, 379 F.3d 892, 900-01 (10th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The court should freely give leave when justice so requires," and should be mindful that Rule 15 is intended to provide litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Fed. R. Civ. P. 15(a)(2); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Nevertheless, courts may deny leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005).

Defendants argue that the Court should deny Plaintiff leave to amend her Complaint on the grounds of undue delay, undue prejudice, and futility of amendment. (Doc. 82.) The Court will consider each of these grounds in turn.

### A.     *Plaintiff has adequately explained her delay in seeking leave to amend.*

Defendants first argue that the Court should deny Plaintiff leave to amend because she unduly delayed in filing her Motion. (Doc. 82 at 3-7.) Under Rule 15(a), "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (citations omitted); *see also Minter*, 451 F.3d at 1206 (denial of leave to amend is appropriate when movant has no adequate explanation for delay).

---

[5] A party may amend its pleading "once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Here, as previously noted, Defendants filed a motion to dismiss under Rule 12(b)(6) on August 3, 2020. (Doc. 32.) Thus, the time for Plaintiff to amend her Complaint as a matter of course has long since passed.

> Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial.

*Minter*, 451 F.3d at 1206 (quotation marks, citations, and brackets omitted).

In addition to satisfying Rule 15(a), a party seeking leave to amend after a scheduling order deadline expires must demonstrate good cause for seeking to modify the deadline under Federal Rule of Civil Procedure 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). To show good cause under Rule 16(b)(4), the party must show that the deadline could not be met despite its diligent efforts. *Id.* "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.*

In her Show-Cause Response, Plaintiff indicates that she filed her Motion after the Court's December 28, 2020 deadline with the goal of promoting judicial economy. (Doc. 109.) Specifically, Plaintiff asserts that, as of December 28, 2020, she had requested documents that she believes will justify amendments to her Complaint in addition to those she is presently seeking, but Defendants had not produced them. (*Id.* at 8.) At the time, "Plaintiff believed the parties were meeting-and-conferring in good-faith toward an eventual production" and "it did not make sense to file a motion to amend" before Defendants produced the requested documents. (*Id.*) According to Plaintiff, she filed the present Motion promptly along with a motion to compel when it became clear that Defendants would not produce the documents voluntarily, "in an attempt to ensure the operative complaint at least reflect[s] the facts" Plaintiff currently knows. (*Id.* at 3-5.)

More prudently and correctly, Plaintiff should have filed a motion for an extension of time when she realized she would not receive key documents from Defendants in time to incorporate them into her proposed amended complaint by December 28, 2020. Nevertheless, the Court

7

acknowledges Plaintiff's efforts to avoid amending her Complaint piecemeal, and finds that Plaintiff has shown good cause for modification of the Court's deadline and adequately explained her delay in moving to amend. *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240; *Frank*, 3 F.3d at 1365–66. Moreover, at this juncture, she has not made the Complaint "a moving target," nor has she tried to "salvage a lost case by untimely suggestion of new theories of recovery," "present theories seriatim in an effort to avoid dismissal," or "knowingly delay raising an issue until the eve of trial." *Minter*, 451 F.3d at 1206 (quotation marks and brackets omitted). On the contrary, this is the first amendment Plaintiff has sought; her original Complaint largely survived Defendants' motion to dismiss; and, the Court has not yet set a trial in this matter.

Defendants argue that Plaintiff nevertheless unduly delayed in seeking leave to amend because her proposed amendments are based on facts she knew or should have known when she filed her original Complaint. (Doc. 82 at 1, 3-7); *see Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, 278 F.R.D. 628, 633 (D.N.M. 2011) "[W]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."). However, the detailed and thorough nature of the original Complaint shows that Plaintiff has not been trying to sandbag Defendants by withholding factual allegations or legal claims for strategic purposes. (*See generally* Doc. 1.) Rather, it seems plain that Plaintiff originally omitted the allegations and claims she now seeks to add due to the factual and legal complexity of the case and her inability to predict, at the outset, how Defendants would defend against it. In this regard, the Court recalls that Rule 15 is intended to provide litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter*, 451 F.3d at 1204.

Defendants also argue that Plaintiff was unduly dilatory because she waited until close to the end of discovery to file her Motion. (Doc. 82 at 5.) This argument does not survive a careful examination of the relevant procedural history. When discovery opened in October 2020, the parties stipulated to fairly stringent discovery limitations pending the Court's ruling on Defendants' motion to dismiss. (Doc. 48 at 17-18; Doc. 54 at 1.) Unrestricted discovery did not begin until late November 2020. When Plaintiff filed her Motion about three months later, over two months of discovery remained. (Docs. 53, 77.) Moreover, discovery has since been extended, (Doc. 86); Plaintiff has filed a motion to extend it further, (Doc. 99); and, the parties have two discovery motions pending. (Docs. 100, 122.) For all of the above reasons, the Court in its discretion declines to deny Plaintiff's Motion based on undue delay.

B.     *Allowing Plaintiff to amend her Complaint will not unduly prejudice Defendants.*

Defendants next argue that the Court should deny Plaintiff's Motion because "this late amendment" would "unduly prejudice[]" them. (Doc. 82 at 7-8.) The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207.

> Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment. Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues.

*Id.* at 1208 (citation and quotation marks omitted).

Defendants argue that they will suffer unfair prejudice if the Court permits Plaintiff to amend her Complaint because they will have insufficient time to conduct discovery regarding the proposed amendments. (Doc. 82 at 7-8.) This argument lacks merit for two reasons. First, Plaintiff's original Complaint and her proposed amendments arise out of the same subject matter

9

and the proposed amendments do not raise significant new factual issues. Thus, Plaintiff's proposed amendments would not alter the scope of discovery prejudicially.

Second, Defendants have known of Plaintiff's intent to amend her Complaint since at least December 9, 2020, have had a redlined version of Plaintiff's proposed amendments since January 4, 2021, and have known the precise contours of the proposed amended complaint since February 22, 2021. (Doc. 61 at 1; Doc. 77 at 8-25; Doc. 77-1 at 4.) Thus, they have had ample time to conduct discovery with the proposed amendments in mind, including at Plaintiff's deposition on March 26, 2021 and April 8, 2021. (Doc. 109 at 7.) Also, Plaintiff has filed a motion to extend discovery that, if granted, would give Defendants until June 29, 2021 to obtain discovery regarding the amendments. (Doc. 99 at 1.) In these circumstances, Plaintiff's proposed amendments will not unfairly affect Defendants' ability to prepare their defenses. *Minter*, 451 F.3d at 1208. The Court therefore declines to deny Plaintiff's Motion based on undue prejudice.

### C. *Plaintiff's proposed promissory estoppel claims are not futile, but her proposed conversion claims are futile in part.*

Finally, Defendants argue that the Court should deny Plaintiff's Motion because her proposed promissory estoppel and conversion claims are futile. (Doc. 82 at 8-11.) A pleading is futile if, "as amended, [it] would be subject to dismissal." *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 580 (D.N.M. 2010) (citing *Bradley*, 379 F.3d at 901). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999); *see also Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla. 2011) ("In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6).") (brackets omitted). "The burden of showing futility rests with the defendants who assert this ground in opposing the plaintiff's leave to amend."

*Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 953 F. Supp. 2d 1176, 1181 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. In determining whether a complaint states a plausible claim, courts "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,] do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

**1. Defendants have not shown that Plaintiff's proposed promissory estoppel claims are futile.**

To state a claim for promissory estoppel under New Mexico law, a plaintiff must allege that: (1) the promisor made "[a]n actual promise" which "in fact induced the promisee's action or forbearance"; (2) "[t]he promisee's reliance on the promise" was "reasonable"; (3) "[t]he promisee's action or forbearance . . . amounted to a substantial change in position"; (4) "[t]he promisee's action or forbearance" was "actually foreseen or reasonably foreseeable to the promisor when making the promise"; and, (5) "enforcement of the promise is required to prevent injustice." *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 20, 121 N.M. 622, 628, 916 P.2d 822,

11

828; *Beggs v. City of Portales*, 2007-NMCA-125, ¶ 31, 142 N.M. 505, 514, 167 P.3d 953, 962, *rev'd on other grounds*, 2009-NMSC-023, ¶ 23, 146 N.M. 372, 378, 210 P.3d 798, 804.

In support of her proposed promissory estoppel claims, Plaintiff alleges the following. In exchange for her work at the HoER, Defendants repeatedly promised Plaintiff membership in the Meow Wolf artists' collective and an annual revenue share in proportion to the collective's success. (Doc. 77 at 17.) Plaintiff installed ISQ and the Space Owl at the HoER in reliance on these promises. (*Id.*) Her reliance on Defendants' promises was reasonable given her "long-time association with Meow Wolf and its other members, the prominent location of her work within [the] HoER, and representations of other early Meow Wolf members," as well as her past professional experiences. (*Id.* at 11, 17, 21.) Plaintiff's "investment of labor, money, and artwork" at the HoER "amounted to a substantial change in position," and Defendants "foresaw, or should have foreseen, and intended that, their promises" would induce Plaintiff to act as she did. (*Id.* at 21.) "[E]nforcement of Defendants' promises to [Plaintiff] is required to prevent injustice." (*Id.*)

Defendants argue that Plaintiff's proposed promissory estoppel claims are futile because the promises she alleges are too vague to support her claims. (Doc. 82 at 11.) In so arguing, Defendants rely on the Court's prior ruling that Plaintiff cannot "recover the value of the ownership interest and revenue share she claims she was promised" on her breach of contract claims "unless she is able to allege and prove more and different facts than those alleged in her present Complaint," because "the Complaint indicates that the parties never agreed on the specific terms that would govern the promised ownership interest and revenue share." (Doc. 59 at 14; *see* Doc. 82 at 11.)

Defendants' argument fails for two reasons. First, Plaintiff includes more specific allegations regarding the context and content of Defendants' promises in her proposed amended

12

complaint than she did in her original Complaint. (*Compare* Doc. 1 *with* Doc. 77 at 8-25.) For example, Plaintiff describes in more detail when and where Defendants made these promises, and alleges that Defendants promised to calculate and distribute her "share of revenue" annually "based on how much revenue the venture generated each year," without mention of a cap. (Doc. 77 at 17.)

Second, Defendants cite to no legal authority regarding how specific a promise must be to support a claim for promissory estoppel, as opposed to a breach of contract claim. (*See generally* Doc. 82.) The Court declines to do Defendants' research for them and finds that, for purposes of Plaintiff's Motion, Defendants have forfeited the point. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (brackets omitted).

Defendants do cite to authority for the proposition that "a subjective understanding of a promise cannot be a basis for a promissory estoppel claim." (Doc. 82 at 11); *see Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1021 (10th Cir. 2002) ("[A] claimant's subjective understanding of the [promisor's] statements cannot, without more, support a promissory estoppel claim.") (applying Utah law); *Shield v. Monarch Properties, Inc.*, No. 04CV0858 PK/DJS, 2005 WL 8163615, at *2 (D.N.M. Sept. 30, 2005) ("Plaintiff's subjective understanding is insufficient to support a promissory estoppel claim.") (citing *Lantec, Inc.*, 306 F.3d at 1020-21). However, Plaintiff does not rely solely on allegations about her subjective understanding to support her proposed promissory estoppel claims. Rather, she also alleges that Defendants made actual promises to her. (*See, e.g.*, Doc. 77 at 10-11, 17.) Defendants have therefore failed to show that

Plaintiff's proposed promissory estoppel claims are futile, *Martin Marietta Materials, Inc.*, 953 F. Supp. 2d at 1181, and the Court will permit Plaintiff to amend her Complaint to add these claims.

2.  **Plaintiff's proposed revised conversion claims are futile in part.**

Under New Mexico law, "[c]onversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Hollow Spirits, LLC v. Corson Distilling Sys., Inc.*, No. CV 18-257 MV/JFR, 2020 WL 1963188, at *13 (D.N.M. Mar. 9, 2020), *report and recommendation adopted,* No. CV 18-257 MV/JFR, 2020 WL 1954152 (D.N.M. Apr. 23, 2020); *Sec. Pac. Fin. Servs., a Div. of Bank of Am., FSB v. Signfilled Corp.*, 1998-NMCA-046, ¶ 15, 125 N.M. 38, 43, 956 P.2d 837, 842.

In its November 25, 2020 Memorandum Opinion and Order, the Court dismissed Plaintiff's original conversion claims because these claims were based on interference with Plaintiff's ownership interest in the Meow Wolf collective, which she did not plausibly allege she possessed. (Doc. 59 at 23-25.) However, the Court dismissed these claims without prejudice to Plaintiff's ability to amend her complaint to add revised conversion claims conforming to the legal standards discussed in its Order. (*Id.*) Thus, in her proposed amended complaint, Plaintiff asserts conversion claims alleging that "Defendants have wrongfully possessed and exercised dominion and control over ISQ and the Space Owl," and have engaged in "unauthorized and injurious use" of these works. (Doc. 77 at 21-22.) Plaintiff adds that she "is not asserting conversion of [her] copyrights." (*Id.*)

Defendants contend that Plaintiff's proposed revised conversion claims are futile. (Doc. 82 at 8-10.) In support of this contention, Defendants first argue that these claims are subject to dismissal because the factual allegations in Plaintiff's proposed amended complaint "negate"

them. (*Id.* at 9.) Specifically, Defendants point out that, "[a]ccepting plaintiff's facts as true, she willingly placed Space Owl and ISQ at Meow Wolf and then continually demanded that [D]efendants retain possession of [them]." (*Id.*)

In so arguing, however, Defendants fail to acknowledge or address Plaintiff's allegations that Defendants deliberately induced her to install ISQ and the Space Owl at the HoER—and to install them in such a way that she could not remove them intact—by making false statements about how they intended to compensate her. (*See, e.g.*, Doc. 77 at 10-11, 13-14, 16-17, 22-23.) In other words, Plaintiff alleges that Defendants intentionally obtained permanent possession of her personal property by lying to her. On their face, these allegations appear to state a plausible claim for conversion based on "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights." *Ortiz v. N.M. Dep't of Cultural Affs.*, No. CV 16-1396 JB/JHR, 2018 WL 318461, at *4 (D.N.M. Jan. 5, 2018), *report and recommendation adopted*, No. CV 16-1396 JB/JHR, 2018 WL 691644 (D.N.M. Jan. 31, 2018).

Moreover, Defendants have failed to cite to any legal principle or authority that would bar Plaintiff from pursuing conversion claims on this basis. (*See* Doc. 82 at 8-10.) The Court again declines to do Defendants' research for them and finds that, for purposes of Plaintiff's Motion, Defendants have forfeited the point. *Phillips*, 244 F.3d at 800 n.10. In short, Defendants have failed to show that Plaintiff's proposed revised conversion claims based on Defendants' alleged unlawful exercise of dominion and control over ISQ and the Space Owl are futile. The Court will therefore grant Plaintiff leave to amend her Complaint to add these claims.

Plaintiff's specific factual allegations also appear to support her proposed conversion claims based on Defendants' "unauthorized and injurious use of" ISQ and the Space Owl.[6] *Hollow Spirits, LLC*, 2020 WL 1963188 at *13. However, the Court finds that these claims are futile because, as Defendants next argue, federal copyright law would preempt them. (Doc. 82 at 9-10.) Federal copyright law provides that

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether . . . published or unpublished, are governed exclusively by this title. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

"The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a [s]tate that are equivalent to copyright and that extend to works coming within the scope of the [f]ederal copyright law." *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 698 (10th Cir. 2012) (quoting *Ehat v. Tanner,* 780 F.2d 876, 879 (10th Cir. 1985)). Thus,

> a state-law claim is preempted if (1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.

*R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146 (10th Cir. 2009) (quotation marks omitted).

---

[6] In her proposed amended complaint, Plaintiff alleges that Defendants continued to use her work after she expressly asked them to stop. (Doc. 77 at 12.) Plaintiff also alleges injuries attributable to this unauthorized use, including "loss of opportunities to realize value from ISQ and the Space Owl." (*Id.* at 16.) Thus, she has plausibly alleged that "Defendants' past and continued public display and use" of ISQ and the Space Owl "constitute[] conversion" based on unauthorized and injurious use. (Doc. 90 at 7 (emphasis omitted)); *Iqbal*, 556 U.S. at 678 (claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Applying *R.W. Beck*'s two-prong test, the Court concludes that federal copyright law would preempt Plaintiff's proposed revised conversion claims based on unauthorized and injurious use of her works. First, accepting Plaintiff's factual allegations as true, the versions of ISQ and the Space Owl installed at the HoER are works "within the scope of the subject matter of copyright" under 17 U.S.C. §§ 102 and 103. *R.W. Beck*, 577 F.3d at 1146. Under Section 102, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated," including "sculptural works." 17 U.S.C. § 102(a). Under Section 103, "[t]he subject matter of copyright . . . includes compilations and derivative works." 17 U.S.C. § 103(a).

In both of her complaints, Plaintiff alleges that ISQ and the Space Owl "are works of visual art" of which she is the sole author that "encompass multiple elements of . . . works registered with the U.S. Copyright Office." (Doc. 1 at 11; Doc. 77 at 14 (same).) The complaints describe and depict the versions of ISQ and the Space Owl at the HoER as sculptural works. (*See, e.g.,* Doc. 1 at 6 (describing Space Owl as "13-f[ee]t-tall" and "towering"); Doc. 1-3 at 2 (depicting Space Owl); Doc. 1-4 at 1 (same); Doc. 1-5 at 1 (same).) In short, Plaintiff has plainly alleged that the versions of ISQ and the Space Owl at the HoER are original works of authorship fixed in a tangible medium of expression from which they can be perceived, or compilations or derivate works. 17 U.S.C. §§ 102(a), 103(a). *R.W. Beck*'s first prong is therefore satisfied.[7] 577 F.3d at 1146.

Turning to *R.W. Beck*'s second prong, the rights Plaintiff seeks to protect via her proposed conversion claims based on unauthorized and injurious use are "equivalent to . . . exclusive rights

---

[7] Notably, the fact that some "portions" of ISQ and the Space Owl "may consist of uncopyrightable material does not take the works as a whole outside the subject matter protected by the Act." *R.W. Beck*, 577 F.3d at 1146–47 (ellipses and brackets omitted). As the Tenth Circuit has explained, "[w]ere this not so, states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal statutory standards." *Id.*

within the scope of federal copyright as set out in 17 U.S.C. § 106." 577 F.3d at 1146. Section 106 confers on copyright owners the exclusive rights to "reproduce the copyrighted work," "prepare derivative works based upon the copyrighted work," "distribute copies . . . of the copyrighted work to the public by sale . . . [,] rental, lease, or lending," and "display the copyrighted work publicly." 17 U.S.C. § 106. Plaintiff's proposed conversion claims based on unauthorized and injurious use rely on state common law rights equivalent to the federal rights to display, copy, and distribute copyrighted works. Specifically, in these proposed conversion claims, Plaintiff challenges Defendants' "public display" of her works, as well as their "use" of the works in books for sale, "cross-branding promotions," a collection of visual art, and a documentary.[8] (Doc. 1 at 7-8, 13; Doc. 77 at 11, 15-16.) Thus, *R.W. Beck*'s second prong is also satisfied.[9] 577 F.3d at 1146; 17 U.S.C. § 106.

Moreover, in similar circumstances, the Tenth Circuit and other federal courts have found that federal copyright law preempts state law conversion claims. *See, e.g., Ehat*, 780 F.2d at 878 (affirming finding that copyright law preempted conversion claim "to recover for damage flowing from [the] reproduction and distribution" of the plaintiff's notes, because "[s]uch reproduction interferes with an intangible literary or artistic property right equivalent to copyright"); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501–02 (7th Cir. 2011) (affirming finding of preemption where

---

[8] In her reply, Plaintiff argues that she is also challenging Defendants' "use" of the works in "SEC filings and investor packages." (Doc. 90 at 7.) However, neither complaint refers to SEC filings or investor packages. (*See generally* Doc. 1; Doc. 77 at 8-25.)

[9] In this regard, it is important that Plaintiff's proposed conversion claims based on unauthorized and injurious use allege interference with Plaintiff's intellectual property rights, and not interference with her possession of or access to the tangible physical property. *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 502 (7th Cir. 2011) (noting that preempted conversion claim "focused on the defendants' unauthorized publishing, not possession, of the protected work"); *Architects Collective v. Gardner Tanenbaum Grp., L.L.C.*, No. CIV-08-1354-D, 2010 WL 2721401, at *7 (W.D. Okla. July 6, 2010) ("A claim alleging conversion is preempted if it is based on the alleged conversion of intellectual property; conversion of tangible property is not preempted.") (citing *Ehat*, 780 F.2d at 877–78); *Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 15, 289 P.3d 1255, 1260 ("[R]ights to exclusive ownership of tangible property are not equivalent to the rights protected by the Copyright Act.").

conversion claim "concerned the misappropriation of [the plaintiffs'] work through publication, which is equivalent to the right to control publication under the Copyright Act"); *Architects Collective v. Gardner Tanenbaum Grp., L.L.C.*, No. CIV-08-1354-D, 2010 WL 2721401, at *7 (W.D. Okla. July 6, 2010) ("Where a conversion claim is based on the defendant's unauthorized possession of copyrighted works and their subsequent copying and use," claim is preempted "by the Copyright Act's prohibition against unauthorized reproduction and distribution of the copyrighted works[.]").

Plaintiff argues that her proposed conversion claims are "not preempted by federal copyright law" because "the display portion of Plaintiff's copyright claims are pled in the alternative." (Doc. 90 at 7.) In so arguing, Plaintiff appears to misunderstand the nature of preemption under 17 U.S.C. § 301(a). Section 301 does not allow a plaintiff to choose between a federal copyright claim and an equivalent state law claim. Rather, as noted above, it "preempt[s] *and abolish[es]*" state law rights "that are equivalent to copyright and that extend to works coming within the scope of the [f]ederal copyright law." *BC Tech., Inc.*, 464 F. App'x at 698 (emphasis added). That copyright claims are pled in the alternative, or indeed unsuccessfully or not at all, is beside the point. *See Ehat*, 780 F.2d at 878 (material "f[ell] within the subject matter of copyright" even though it "could not be copyrighted"). For these reasons, the Court finds that Plaintiff's proposed revised conversion claims based on unauthorized and injurious use would be subject to dismissal based on federal copyright law preemption and are therefore futile. The Court will deny Plaintiff leave to amend her Complaint to add these claims. *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. at 580.

### III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 77) is GRANTED IN PART and DENIED IN PART. By **Tuesday, June 1, 2021**, Plaintiff may file the proposed amended complaint attached to her Motion as Exhibit 1 except that the filed amended complaint must exclude her proposed revised conversion claims based on unauthorized and injurious use of her works; and,

2. The Court's April 22, 2021 Order to Show Cause (Doc. 104) is hereby QUASHED.

IT IS SO ORDERED.

_____<br>
KIRTAN KHALSA<br>
UNITED STATES MAGISTRATE JUDGE<br>
Presiding by Consent