IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,
an individual,

    Plaintiff,

vs.                                                    Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

    Defendants.

**DEFENDANTS MEOW WOLF, INC. AND VINCE
KADLUBEK'S RESPONSE TO PLAINTIFF'S
MOTION TO PERMIT EXPERT WITNESS DISCLOSURE**

    Defendants Meow Wolf, Inc. and Vince Kadlubek, through their undersigned counsel, respectfully submit the following response to Plaintiff Lauren Oliver's Motion to Permit Expert Witness Disclosure.

## INTRODUCTION

    Plaintiff wishes to engage a new damages expert, Frederick R. Kuhns, for apparently three reasons: to rebut the rebuttal report of defendants' expert, Fernando Torres, to develop new opinions on claims plaintiff asserted in her original Complaint or based on the same facts asserted in her Complaint, and because she is dissatisfied with the qualifications of her first damages expert, Marianne DeMario. (Doc. 126, Motion, at ¶ f.) Defendants have already at great expense engaged experts based on plaintiff's selection of experts. Plaintiff seeks to justify moving the goalposts at this late date by pointing to a pitch deck plaintiff has known about for many months and alleged since the outset of this case, and pointing to the amended claims plaintiff has been planning for many months. Judge Khalsa has held defendants will not be

1

prejudiced by allowing new claims because plaintiff told defendants she would seek to amend long ago[1]—so likewise plaintiff will not be prejudiced by using her existing damages expert since plaintiff has known about her amended claims for even longer. Moreover, plaintiff has not presented a proposed report so the Court can evaluate the new opinions and whether any reasons support yet another major amendment to the Court's scheduling order.

The pitch deck plaintiff claims is newly discovered is not news to plaintiff. She attached it to a motion filed with the Court back in February 2021, before disclosing her current damages expert. And plaintiff has known since filing her original Complaint a year before that she asserts claims against Meow Wolf based on allegations that "Meow Wolf has presented ISQ and the Space Owl to investors and other third parties as Meow Wolf's intellectual property." (Complaint, ¶ 57.) Two years before that, in 2018, she began writing about potential claims against Meow Wolf for copyright infringement based on Meow Wolf's use of plaintiff's work, Space Owl, in promotional materials, a catalog, and a coloring book.

In the parties' initial joint status report filed in July 2020, Ms. Oliver stated: "Defendants utilized Plaintiff's artwork to obtain investment totaling more than $150 million dollars and realized many millions of dollars in revenue . . . at least in part, due to the popularity and recognition of Plaintiff's work." (Doc. 23, at 2.) In November 2020, plaintiff listed in discovery answers more than a dozen instances of copyright infringement, including "any image of, or showing of, Plaintiff's work shown to investors, press, as part of business development, or to other third-parties for the benefit of Defendants, including in-person visits." (*See* Objections and Responses to Defendant Vince Kadlubek's First Set of Interrogatories to Plaintiff Lauren Oliver, attached hereto as **Exhibit 1**, at 29.) In February 2021, before her deadline to disclose her expert

---

[1] *See* Doc. 135, May 24, 2021 Memorandum Opinion and Order, at 9-10.

witnesses, she attached to a motion a Meow Wolf pitch deck for an exhibition in Austin, Texas that did not come to fruition. (Doc. 73, at ¶ 6.) The pitch deck contained an image of plaintiff's Space Owl among dozens of images and graphics.[2] Plaintiff did not discover new evidence requiring a need for a copyright damages expert, nor has she learned of the need over the year since her lawsuit was filed in March 2020. Plaintiff has known of claims for alleged copyright damages since filing this action.

      Plaintiff had ample opportunity to locate and engage the experts of her choice, and she chose Marianne L. DeMario to opine on her alleged damages. Plaintiff disclosed Ms. DeMario as her expert on March 5, 2021, the deadline set in the Court's October 14, 2020 Scheduling Order.[3] (Doc. 53.) In reliance on this disclosure, Meow Wolf engaged its expert, Fernando Torres, to rebut the opinions of Ms. DeMario. Now, after having seen defendant's expert report, plaintiff seeks a new expert to take another bite at the apple more than two months after her time to disclose experts. Ms. Oliver had a year to find and develop her expert witnesses. Her amended claims are based on the same set of operative facts alleged in her Complaint, and she has known of her amended legal claims based on these facts long before choosing and disclosing her current damages expert. This is a classic case of moving the goalposts, seeking to make Meow Wolf defend a new case after it committed based on plaintiff's expert disclosure.

      Courts have held this should not be allowed. In *Myers v. Rogers Trucking Co.*, the plaintiff sought leave to file expert disclosures after the deadline imposed by the Court, and argued new facts had come to light necessitating the post-deadline disclosure of an expert. *Myers*

---

[2] Meow Wolf's production of tens of thousands of pages in discovery did not produce this pitch deck because Meow Wolf does not have the technological capability of doing a "reverse image search" of its servers for Space Owl, and no aspect of the pitch referred to plaintiff or her work.
[3] While plaintiff has sought an extension of deadlines set forth in the scheduling order (Doc. 99), she did not seek an extension of the expert disclosure deadline, nor could she since it had long passed when she filed her motion for extension on April 21.

*v. Rogers Trucking Co.*, 2008 U.S. Dist. LEXIS 142965, *12, No. CIV 07-833 JCH/ACT (D.N.M. Oct. 8, 2008). Even though trial was not set for seven more months and had been extended by agreement of the parties, the Court still ruled that plaintiff did not show good cause for the extension since the plaintiff "was aware of the potential need for an expert since well before discovery closed." *Id.* (rejecting plaintiff's request for supplemental expert disclosure because despite plaintiff's representations that new facts came to light, the plaintiff was aware of facts months before that would have alerted plaintiff to the need for an expert).

Plaintiff included allegations about copyright damages claims in her March 2020 Complaint, the July 2020 joint status report, in November 2020 discovery responses, and in February 2021 filings with the Court. She knew about the claims since mid-2018 when she sought information from Meow Wolf concerning its sales of a coloring book featuring an image of the Space Owl. (*See* Doc. 132-3 (reflecting Ms. Oliver's request for information concerning numbers of coloring books sold in June 2018, more than two years before she filed suit for copyright infringement against Meow Wolf).) Plaintiff made the intentional decision not to disclose a copyright damages expert. She had full knowledge that her case alleged uses of Space Owl images in various forms by Meow Wolf, and obviously decided the few uses that existed either had been allowed by plaintiff or had minimal damages that were not worth engaging an expert to assess. Under these circumstances, given the facts known to her for years, she should not, months after the deadline has passed to disclose her experts, be allowed to relitigate the case. Meow Wolf has relied for months on plaintiff's theory of the case to investigate and develop Meow Wolf's defenses to that theory. Plaintiff can show no good cause for the Court to reopen the expert disclosure period, and plaintiff makes no argument that her knowledge of these facts long before her expert witness disclosure deadline can be overlooked.

## ARGUMENT

Rule 26(a) requires a party to disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). A party must make this disclosure "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Where a party seeks to make expert disclosures outside of the time provided by the court in its scheduling order, the Court applies the good cause standard under Federal Rule of Civil Procedure 6. Rule 6 states that "when an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." *Id*. Excusable negligent "requires both a demonstration of good faith by the parties seeking the enlargement and [] it must appear that there was a reasonable basis for not complying within the specified period." *Lamendola v. Bd. of Cty. Comm'rs*, No. 18-163 KBM/SCY, 2020 U.S. Dist. LEXIS 104868 at *4-5 (D.N.M. June 16, 2020). While the court considers several factors in determining whether a party's neglect to comply with a deadline is excusable, "[t]he reason for delay is an important, if not the most important, factor in the analysis." *Id.* at *5 (factors include "(1) the danger of the unfair prejudice to the opposing party; (2) the length of the delay caused by the neglect and its impact on judicial proceedings; (3) the reason for the delay, and whether it was in the reasonable control of the moving party, and (4) the existence of good faith on the part of the moving party.").

## I
## PLAINTIFF HAD FULL KNOWLEDGE OF THE NEED FOR A COPYRIGHT DAMAGES EXPERT BEFORE HER DISCLOSURE DEADLINE

Plaintiff offers Mr. Kuhns as an expert for purposes other than rebuttal. Doc. 126, ¶ g. Plaintiff seeks to use Mr. Kuhns to analyze issues such as "the value to Defendants that the unauthorized use of Oliver's work represents to their brand and venture as a whole, as well as a

5

reasonable royalty and/or value associated with the use itself." (*Id.*, ¶ d.) Plaintiff claims this valuation "is relevant to the calculation of damages under Plaintiff's misrepresentation, unjust enrichment, copyright, and proposed promissory estoppel claims." (*Id.*) But each of these claims, and all of the facts underlying both the original complaint and plaintiff's proposed amended complaint adding the claim for promissory estoppel, were known to her since the case's inception in March 2020 (*see generally* March 16, 2020 Compl.; Doc. 135, at 8-10 (ruling that the parties have known the precise confetours" of plaintiff's complaint and claims, and knew of facts underlying her claims).) Nonetheless, plaintiff's requested disclosure comes more than two months after plaintiff's expert disclosure deadline and two weeks after the close of discovery—and it comes without any proposed report from Mr. Kuhns or statement of the actual opinions to be expressed by Mr. Kuhns. Timely expert disclosures are mandatory under Rule 26, and plaintiff makes no credible argument that she did not have the facts available to her that necessitate a new disclosure sufficient to satisfy the good cause standard of Rule 6.

      While Rule 26(a)(2)(E) authorizes a party to supplement a Rule 26(a)(2)(B) expert report if the party learns that in some material respect the information previously disclosed was incomplete or incorrect, it would be improper to allow a party to produce a supplementary report where no "new information was discovered which required that the original report be supplemented." *BNSF Ry. Co. v. Lafarge Southwest, Inc.*, 2008 U.S. Dist. Lexis 108420, *13, Civil No. 06-1076 MCA/LFG (D.N.M. Aug. 29, 2008) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) for the proposition that where party sought to supplement an expert's opinions based on allegedly new information that was not genuinely new, such supplementation would be improper).

In *Myers v. Rogers Trucking Co.*, the plaintiff, like Ms. Oliver, claimed the discovery of new evidence necessitated a new expert—even though Myers had knowledge of it long beforehand. *See Myers*, 2008 U.S. Dist. LEXIS 142965 at *6-9; Doc. 126, ¶ b. Myer's motion was denied because he "was aware of the potential need for an expert since well before discovery closed," and granting the motion would be inconsistent with the goal of moving cases "economically and expeditiously through the federal system," even where trial was not set for another 9 months and both parties consented to the extension of deadlines in the case. *Id.* at *9, *12 (applying the good cause standard under Fed. R. Civ. P. 6(b)(1)(B) to preclude the untimely expert disclosures in the pretrial phase).

Similarly, in *RTC v. Gregory*, 1995 U.S. Dist. LEXIS 22499, No. CIV 94-52 (D.N.M. Dec. 13, 1995) (unpublished), Tenth Circuit Judge Paul J. Kelly, sitting by designation, rejected an argument by RTC to file supplements intended to "deepen" and "strengthen" its own expert's earlier report. Judge Kelly wrote:

> Fed. R. Civ. P. 26(a)(2)(B) requires that an expert witness report "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor" to facilitate discovery. Although Fed. R. Civ. P. 26(c) requires a party to "supplement or correct" disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report . . . from the outset.

(emphasis added). *See Coleman v. BNSF Ry. Co.*, 2008 LEXIS 108420, Civ. No. 06-1076 MCA/LFG, *13-14 (D.N.M. Aug. 29, 2008) (unpublished) (discussing RTC reasoning and striking new expert opinions contained in a later report).

In *Coleman*, this District Court rejected counsel's argument requesting a second never before disclosed expert and found that while Rule 26 allows supplementation of expert reports in some instances, in that case, the expert was not "correcting earlier misinformation." *Id.* Rather, the

7

expert was offering an "entirely new and previously undisclosed basis for the opinion." *Id.* at *14. "Allowing a new basis for an opinion well after disclosure deadlines could serve to encourage a party to file an incomplete 'preliminary report,' and at its leisure, even after discovery, file a comprehensive 'final report.' The party who was entitled to know the expert's opinion and the basis for the opinion would . . . 'be sandbagged.' The Court's case management plan would be thwarted and the goals of the Civil Justice Reform Act would not be met." *Id.*, at *15. The *Coleman* court refused to allow a supplemental report to be filed the day prior to the close of discovery and two months following the deadline for disclosure of experts and production of expert reports. Like *Coleman*, plaintiff here seeks to file a supplemental report after the close of discovery and more than two months after the deadline for disclosure of experts.

### A. Plaintiff Knew of the Existence of Pitch Decks Before Her Deadline to Disclose Expert Reports, And Even Alleged Their Existence in Her Original Complaint

Plaintiff tries to argue the discovery of the existence of "pitch decks" is the reason for her delay in disclosing an expert. In doing so she hopes that this court will allow an expert to opine broadly on *all* copyright damages, and damages related to "Plaintiff's misrepresentation, unjust enrichment, . . . and proposed promissory estoppel claims." (Doc. 126 ¶ d.) Plaintiff has always known of the need for an expert to establish damages related to these claims because all of them stem from the same facts known to plaintiff since the inception of her lawsuit—and all but one of these claims were alleged in her original Complaint.

As plaintiff has known from the beginning of this action, proving copyright damages even from a coloring book requires an expert to determine with reasonable probability what amount of the book's profits, if any, is attributable to the claimed infringement, or what amount of revenue plaintiff lost because of the alleged infringement. *See* 4 Nimmer on Copyright § 14.02

(2021). In the joint status report filed at the outset of this action in July 2020, Ms. Oliver stated: "Defendants utilized Plaintiff's artwork to obtain investment totaling more than $150 million dollars and realized many millions of dollars in revenue . . . at least in part, due to the popularity and recognition of Plaintiff's work" (Doc. 23, at 2) and attached to a court filing in February 2021 a pitch deck with an image of Space Owl. Plaintiff knew quite well about these claims before developing her expert disclosures in March 2021. The same is true of unjust enrichment and her misrepresentation claims, both of which were in the original Complaint. The pitch deck is a pretext; it has been alleged since the beginning and has been in plaintiff's possession since before her initial expert disclosures.

Each of the instances set forth below reflect plaintiff's knowledge of Meow Wolf's alleged uses of her work with investors sufficient to apprise her of the need to engage an expert related to "the unauthorized use of Oliver's work [to] represent[] their brand and venture as a whole, as well as a reasonable royalty and/or value associated with the use itself" (Motion, 126, at ¶ d), and *all of them* occurred prior to plaintiff's deadline to disclose her experts:

- March 2020 – Plaintiff's Complaint alleges "Meow Wolf has presented ISQ and the Space Owl to investors and other third parties as Meow Wolf's intellectual property." (Doc. 1, ¶ 57.)

- March 2020 – Plaintiff's Complaint also alleges "Defendants have consistently exploited . . . ISQ and the Space Owl across multiple platforms to the Defendant's benefit in promoting their brand and building their enterprise." (Doc. 1, ¶ 55.)

- July 2020 – Plaintiff 's contentions in the parties' joint status report provide: "Defendants utilized Plaintiff's artwork to obtain investment totaling more than $150 million dollars and realized many millions of dollars in revenue . . . at least in part, due to the popularity and recognition of Plaintiff's work." (Doc. 23, at 2.)

- September 2020 – Plaintiff's contentions in the parties' amended joint status report refer to the same contentions. (Doc. 48, at 3.)

- November 2020 – Plaintiff provides in discovery responses multiple alleged instances of unauthorized use of her work allegedly financially benefiting Meow Wolf (Ex. 1, at 28-29), including:
    - Use of "any image of, or showing of, Plaintiff's work to investors, press, as part of business development, or to other third-parties for the benefit of Defendants, including in-person visits." (*Id.*)
    - The deal with the Rooster Teeth marketing company in Texas to allow them to use the Space Owl character for online content, which progressed far enough for them to have developed a character voice.
    - Defendants' "placement of a Red Bull logo on Plaintiff's Space Owl. . . . 'Red Bull is an energy drink sold by Red Bull GmbH, an Austrian company [with] the highest market share of any energy drink in the world, with 7.5 billion cans sold in a year.' Using Plaintiff's art in this setting implied endorsement of the Red Bull drink product, paid or otherwise . . . ." (*Id.*, at 30)
    - Virtual reality piece for SXSW, an annual 10-day conference with more than 100,000 attendees annually (*Id.*, at 28)
- February 2021 – Plaintiff attaches a Meow Wolf pitch deck for an exhibition in Austin, Texas that was never built (Doc. 73, at ¶ 6.)

Meow Wolf understood it had permission from plaintiff for these uses, but that fact is disputed. What is not disputed is that plaintiff made serious and detailed allegations against Meow Wolf related to alleged unauthorized uses by Meow Wolf of plaintiff's Space Owl—including in allegations about Meow Wolf's partnership with large corporations such as Red Bull where she focuses on the billions of cans of Red Bull sold every year and an allegation that using Space Owl in that setting implied endorsement of the Red Bull drink product. (Ex. 1, at 29.) Plaintiff knew—many months before her expert disclosure deadline—of the need to "opin[e] about how the use of a particular work affects brand and company value" and that such opinion "requires specialized knowledge, aspects of which is not currently held by Plaintiff's currently-disclosed damages expert, Marianne DeMario." (Doc. 126, at ¶ f.) She nonetheless chose to engage Ms. DeMario, and at no point describes why she could not have disclosed a damages expert with the

requisite knowledge Ms. DeMario apparently did not possess to opine on the damages she claimed in her complaint and discovery that she was entitled to receive.

If plaintiff had felt the pitch deck and other uses of plaintiff's work in connection with promotional materials and in collaborations with third parties were critical in her damages analysis, she had the information and materials necessary throughout the case to seek an expert related to those damages. Instead she waited months after the deadline to disclose her witness, and proffers him without any substantive opinion or report.

Plaintiff's knowledge is significantly more than the plaintiff in *Myers*, where the court denied a similar request on the grounds that he "was aware of *some* of the issues for which he now seeks expert testimony." *Myers*, 2008 U.S. Dist. LEXIS 142965 at *9. Here, Ms. Oliver has had actual knowledge of the pitch decks and other materials Meow Wolf used for months prior to the deadline and it was clear from the outset of this case that expert opinions on copyright damages would be necessary. Plaintiff's knowledge places this delay solely within her control. To have this knowledge and decline to submit an expert report on it is not excusable delay.

Granting plaintiff's motion will significantly impact these proceedings. If the court grants this motion, Mr. Kuhns will need time to develop an opinion and report, and defendants will need time to digest that report, find an appropriate new rebuttal expert, and analyze and rebut the new opinions. Months will pass. Both new experts will have to be deposed. *Daubert* motions may then have to be prepared and filed. Defendants have relied on the orderly progression of this litigation in the preparation of numerous motions, reports, settlement discussions, and depositions. Plaintiff's motion attempts to force defendants to incur substantial new costs.

As the Court recognized in *Franklin v. United States*, allowing the type of supplementation asked by the plaintiff here simply because she wants another opportunity to request a different theory of damages:

> Circumvents the full disclosure requirement implicit in Rule 26 and would significantly interfere with the Court's ability to set and enforce case management deadlines. New and strengthened expert reports, as occurred here, would be filed outside the case management deadlines with no opportunity for discovery. Permitting these supplemental reports would require reopening discovery for Franklin's supplemental opinions, and then allowing additional time for USA to supplement its own reports to rebut Franklin's new supplements. In fairness, the Court would have to add more time for Franklin [to] take depositions of USA's expert on the supplemental report. This would result in no finality because new reports and opinions would warrant further consultation with one's own experts and require new rounds of depositions. This entire process would hinder rather than facilitate resolution of the case.

2013 U.S. Dist. LEXIS 191344, *11-12.

The impact of plaintiff's delay is heightened by the failure to attach, as required by the rule, a written report or summary of Mr. Kuhns' opinions. Fed. R. Civ. P. Rule 26(a)(2)(B); 26(a)(2)(C). The lack of a report, at this late stage, causes even more delay. Circuit Judge Kelly, sitting by designation, has rejected these kinds of disruptions when a party sought only to *supplement* an expert report, not to produce an entirely new expert. *See RTC v. Gregory*, D.N.M. No. CIV 94-0052, 1995 U.S. Dist. LEXIS 22499 (D.N.M. Dec. 13, 1995) (denying a motion to supplement a report because 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness report (indeed, the lawsuit from the outset)"). Here Ms. Oliver's disruptions are much more substantial.

The unfair advantage given to the plaintiff by benefiting from defendant's expert reports and forcing defendants to incur substantial additional costs, all because of plaintiff's failure to

follow the Court's schedule are at odds with the very purpose of Rule 26. Mandatory disclosures and scheduling orders were created with the goal of moving cases "economically and expeditiously through the federal system." *Myers*, 2008 U.S. Dist. LEXIS 142965 at *12.

### B. Plaintiff Fails to Demonstrate Good Cause for the Scheduling Modification Because the Facts and Claims on which she Asserts Expert Testimony Is Needed Were Known All Along

On May 26, 2021, the Court has stayed all deadlines which have not "yet expired." Doc. 140. But plaintiff's expert disclosure deadline expired months before this stay. (*See* Doc. 53.) Since the deadline which plaintiff seeks to avoid expired prior to the stay, plaintiff must demonstrate good cause for this modification. *Myers*, 2008 U.S. Dist. LEXIS 142965, at *9 (applying the good cause standard under Rule 6 of the Federal Rules of Civil Procedure for a consideration of whether to allow an untimely supplemental expert report). "Good cause requires a greater showing than excusable neglect. Specifically, good cause requires that the movant show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Myers*, 2008 U.S. Dist. LEXIS 142965 at *14.

Plaintiff was given explicit notice of the requirement to disclose "all expert witnesses" in the October 10, 2020 scheduling order. *See* Doc 53. This is now the second time plaintiff has failed to request a modification to the scheduling order and instead filed a substantive and untimely motion which would effectively modifies the scheduling order. *See* Doc. 77; Doc. 126.

Plaintiff's only justification for the current modification is the discovery of pitch decks about which plaintiff knew long ago, as set out above. (Mot. at ¶ b.) Even if these pitch decks had been discovered after the disclosure deadline, which they were not, it would still not justify the failure to find an expert for these damages initially because plaintiff repeatedly and throughout the litigation has referred to Meow Wolf's alleged use of Space Owl to attract

13

investors to the company, and knew she needed an expert to opine on damages related to her claims for misrepresentation, copyright infringement, and unjust enrichment. *See e.g. Lamendola*, 2020 U.S. Dist. LEXIS 104868 at *11-12 (holding plaintiff failed to demonstrate diligence even when plaintiff argued the experts were critical to the case and where a trial date had not been set).

The failure to file an accompanying expert report with this motion further demonstrates plaintiff's lack of diligence, and either requires a second decision by the Court after the report is prepared, or sandbags Meow Wolf and the Court by seeking a decision without revealing the substance of the new report. Expert reports are not filed with the Court but only served on parties, so only Meow Wolf is in a position to compare the new report to the old and inform the Court of the comparison. Either way, the time, expense, and re-doing of work will be extensive, as set out above. Defendants should have been afforded the opportunity to review plaintiff's expert reports when defendants' rebuttal reports were prepared. Plaintiff's attempted modification of the scheduling order lacks good cause and should be denied.

## II
## PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE MR. KUHNS IS NOT A PROPER SURREBUTTAL EXPERT

Even if plaintiff only offered Mr. Kuhns to rebut the report of defendants' expert Fernando Torres, it would still be inappropriate. Plaintiff contends Mr. Torres offered opinions regarding the "appropriate valuation of Plaintiff's claims," (Doc. 126, Ex. A, ¶ 1), but review of Mr. Torres's report reflects he did no such thing. (Torres Expert Report, filed under seal as **Exhibit 2** (hereinafter "Torres Expert Rep.".) Mr. Torres's report was limited to rebutting and challenging Ms. Demario's damages calculations (*id.*, at p. 8-35), and offered no independent

14

valuation of plaintiff's claims. Mr. Torres' report is accurately titled "expert rebuttal report." (*Id.*) Plaintiff's motion can only be understood as offering a surrebuttal expert.

"Generally surrebuttal evidence is permissible only where a party in rebuttal introduced subject matter not previously raised . . . ." *FTC v. Innovative Designs, Inc.,* No. 2:16-cv001669-NBF, 2018 U.S. Dist. LEXIS 125809 at *9 (W.D. Pa. July 27, 2018) (citing *Ries v. CSX Transp., Inc.*, 2000 U.S. Dist. LEXIS 4763, *12 (E.D. Pa. 2000) (disallowing sur-rebuttal testimony where no new issues were raised in rebuttal)). Mr. Torres report has raised no new issues or subjects. His entire report is dedicated to demonstrating how Ms. Demario's calculations are unreliable and based on the wrong facts. For example, Ms. Demario made no calculations related to copyright damages and as a result Mr. Torres offered no opinion on copyright damages. (Torres Expert Rep., Ex. 2 at p. 33.) Plaintiff now apparently sees weaknesses in its strategy and wishes to change course and present different claims for damages. Plaintiff has had her expert, defendants have had their rebuttal, and no new issues have been raised. Therefore, Mr. Kuhns is not a proper surrebuttal expert. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 193 F.2d 162, 167 (1st Cir. 1951) (affirming a denial of a surrebuttal copyright expert on the grounds that the party should have anticipated the evidence offered in rebuttal). Accordingly, plaintiff's motion for a surrebuttal expert should be denied.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff Lauren Oliver's Motion to Permit Supplemental Expert Witness Disclosure, and for such other and further relief as this Court shall deem just and proper.

Dated: May 28, 2021

                                                   Respectfully submitted,

                                                   BARDACKE ALLISON LLP

                                                 */s/ Breanna Contreras*
                                               Benjamin Allison
                                               Breanna Contreras
                                               P.O. Box 1808
                                               141 East Palace Avenue
                                               Santa Fe, New Mexico 87504-1808
                                               (505) 995-8000
                                               ben@bardackeallison.com
                                               breanna@bardackeallison.com

                                               *Attorneys for Defendants Meow Wolf, Inc.*
                                               *and Vince Kadlubeck*

## CERTIFICATE OF SERVICE

    I, Breanna Contreras, hereby certify that I caused a true and correct copy of the foregoing filing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

                                                        */s/ Breanna Contreras*
                                                        Breanna Contreras