IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,

        Plaintiff,

vs.                                      CIVIL NO. 1:20-cv-00237-KK-SCY

MEOW WOLF, INC., ET AL.,

        Defendant.

## JOINT STATUS REPORT PER COURT ORDER

Pursuant to the Court's order dated May 26, 2021 (D.E. 140), Plaintiff Lauren Adele Oliver ("Plaintiff") and Defendants Meow Wolf, Inc. and Vince Kadlubek ("Defendants") hereby submit a joint status report as follows:

## MOTIONS PENDING BEFORE THE COURT

| | **Pleading** | **Status/Deadlines** |
|---|---|---|
| 1. | Plaintiff's Motion to Extend Rule 16(b) Scheduling Order Deadlines (Doc. 99); Response in Opposition to Motion to Extend Rule 16(b) Scheduling Order Deadlines (Doc. 117); Reply (Doc. 133) | Fully briefed. Plaintiff may request supplemental briefing depending on outcome of this effort. |
| 2. | Defendant's Motion for Protective Order (Doc. 100); Plaintiff's Response (Doc 116); Defendant's Reply (Doc. 131) | Fully briefed and awaiting decision |
| 3. | Defendants Meow Wolf, Inc. and Vince Kadlubek's Motion for Sanctions Due to Plaintiff Lauren Oliver's Spoliation of Evidence (Doc. 132); Plaintiff's Response to Defendants Meow Wolf, Inc. and Vince Kadlubek's Motion for Sanctions (Doc. 170) | Meow Wolf Reply due June 30, 2021 |
| 4. | Plaintiff's Motion to Permit Supplemental Expert Witness Disclosures (Doc. 126); Defendants' Response to Plaintiff's Motion (Doc. 145); Plaintiff's Reply (Doc. 158) | Fully briefed and awaiting decision |

| 5. | Plaintiff's Motion to Compel Meow Wolf's Production of Pitch Decks (Doc. 122); Stipulation to hold Plaintiff's Motion to Compel in Abeyance (Doc. 134) | Parties disagree about history of this motion and reasons it was brought when it was. Parties continue to meet-and-confer in hopes this issue will be resolved without intervention by the Court. |

**PROPOSED SCOPE OF ADDITIONAL FACT DISCOVERY; POTENTIAL MOTIONS**

1. By Plaintiff

    a. Depositions of Meow Wolf, Inc., Matt King, Golda Blaise, Caity Kennedy, and Cary Cluett. The Rule 30(b)(6) deposition may reduce the total number of depositions needed by Plaintiff.

    b. To the extent not encompassed by 30(b)(6) deposition of Meow Wolf, Inc., documents and/or testimony sufficient to establish comprehensiveness of production and distribution to third parties of "pitch deck" materials produced on June 4, 2021

    c. Reasonable and limited discovery related to any additional documents and information defendants provide in response to Plaintiff's outstanding discovery requests to Meow Wolf, Inc. (Set 2) and Vince Kadlubek (Set 1), which requests are subject to an ongoing meet-and-confer effort.

    d. Production by Defendants of the following:

        i. Articles of Organization and Operating Agreements for Meow Wolf, LLC and VCMSE Art City, LLC, Minutes of any meetings of those entities, and any agreements of those entities related to the right to do business as "Meow Wolf," including the right to use the name "Meow Wolf."

        ii. Articles of incorporation of Meow Wolf, Inc., documents sufficient to indicate how Meow Wolf, Inc. either merged with, or obtained the assets

    of, Meow Wolf, LLC and VCMSE Art City, LLC, any minutes of meetings of the Meow Wolf, Inc. board containing information regarding the same through December 31, 2017, and any minutes of Meow Wolf, Inc. containing non-privileged discussion of Plaintiff, Ice Station Quellette, or Space Owl.

  iii. Plaintiff notes that incomplete revenue information was produced by Defendants and, given the lack of a license to show Plaintiff's artwork, ongoing showings of it violate her copyright, and Defendants' revenue is directly relevant to Plaintiff's copyright claim and proof of damages. Defendants will need to supplement revenue information consistent with the Court's prior order regarding that production.

  iv. Production of Documents and responses to interrogatories of Plaintiff to Meow Wolf, Inc. (Set 2), and Vince Kadlubek (Set 1), which requests are subject to an ongoing meet-and-confer effort.

e. Potential motions

  i. Motion to Compel re: Plaintiff's discovery to Meow Wolf, Inc. (Set 2) and Vince Kadlubek (Set 1).

  ii. Motion to supplement expert witness disclosure to add expert re: removability of ISQ.

  iii. Motion to Add Counts for Reverse Passing Off (Lanham Act Section 43(a), 15 U.S.C. §1125(a)); State Unfair Trade Practices Violations (Reverse Passing Off) under New Mexico's Unfair Practices Act (NM Stat § 57-12-1 (2019), et seq. ("UPA")); and Trade Dress Infringement

(Lanham Act Section 43(a), 15 U.S.C. § 1125(a)) based on recent production of "pitch deck" materials.

**f. Summary of Plaintiff's Position:**

It is Plaintiff's position that Defendants have consistently refused to produce relevant evidence until ordered to do so by the Court, and even then have not produced the required material without significant additional effort on behalf of Plaintiff's counsel. Defendants are now pushing for discovery to be closed in order to benefit from their litigation strategy.

The documents produced by Defendants on June 16, 2021, serve as a helpful example. At deposition, Meow Wolf principals testified that contracts "identical" to the one to which they now claim Plaintiff is bound were obtained from 30 to 40 artists at a May 6, 2015 meeting. Caity Kennedy signed a declaration for Defendants stating, "Many participating artists attended the May 6, 2015 meeting. We gave these artists their paper contracts for them to sign at the meeting or take home to consider." In addition, Ms. Kennedy declared, "After the meeting, I worked very hard to deliver the remaining contracts to artists who had not been at the meeting." Without formally producing it in response to applicable document requests, Defendants attached a document to a third-party deposition showing 113 participants in what has been termed a "Revenue Share Program" or "Bonus Program" by defendants – i.e. there were 113 people who would have had a "similar compensation model" to Plaintiff under Defendants own theory (which theory Plaintiff vehemently disputes). Yet, in response to the Court's order that Defendants produce all contracts prior to March 16, 2016 with a "similar compensation model," Defendants produced only 18 "contracts." Of those, only 3 appear to be properly executed by the "Meow Wolf" counter-party, VCMSE Art City, LLC (three others have what appear to be signatures of Vince Kadlubek or Caity Kennedy, but not on the provided signature line). Further, only two had any date associated with the artists' signature, and both of those were

4

PRIOR to the May 6, 2015 meeting that supposedly was held. Either Defendants have not been truthful, or dozens of contracts they claim reflect the one to which Oliver is bound were lost or destroyed.

Meanwhile, Defendants have only recently (June 4, 2021) produced "pitch decks" incorporating Oliver's trade-marked plush toy. Defendants knew that Plaintiff had discovered the Pitch Decks in February 2021, and only made a passing reference in a surreply brief that they were searching for those materials. There remain numerous unknown but important questions that stem from the recent production, such as: (1) how were they used? (2) why did they prominently feature Ms. Oliver's Space Owl, (3) to whom were the pitch decks shown? (4) were the "pitches" successful? (5) why were representations of the Space Owl used without permission from Ms. Oliver?

In 2015, Plaintiff knew Meow Wolf as a "collective." Defendants called themselves a "collective" while making representations to Plaintiff that she was part of that collective and that she would receive a revenue share to incentivize her investment of labor, money, and valuable art in House of Eternal Return. They continue to call themselves a collective today. Defendants have conceded that Meow Wolf was a collective prior to 2011. They testified all of the equity and right to do business of that Meow Wolf collective passed initially to Meow Wolf, LLC. They also testified that Meow Wolf LLC had a protective operating agreement that required approvals from various categories of persons for substantive actions. Yet Defendants continue to refuse to produce the operating agreement for Meow Wolf, LLC.

Defendants also testified that in 2014 they got "verbal" approval from a certain category of stakeholder under the operating agreement to dissolve Meow Wolf LLC and form VCMSE Art City, LLC, which then became the sole holder of all "equity" and right to do business as "Meow Wolf." However, there is evidence Meow Wolf, LLC continued to do business through

2015, and conclusive evidence that Meow Wolf, LLC was not dissolved until 2017.  Thus, the production of the requested corporate documents is imperative to Plaintiff's case as 1) they may well show VCMSE Art City, LLC (which name Plaintiff did not know until filing this lawsuit), did not have the right to do business as Meow Wolf, or 2) enter the "contract" to which they claim Plaintiff is bound in the first instance. This goes directly to Plaintiff's good faith and fair dealing, misrepresentation, and promissory estoppel claims.  The information also goes to the question of Plaintiff's reliance on Defendants' representations: Everything Defendants expressed to Plaintiff reflected that they remained a "collective" when it came to how artists would "participate in the success their creativity brought forth."

This case has hundreds of potential witnesses, and many thousands of potentially relevant documents. Plaintiff has made concerted and reasonable efforts to conduct limited discovery. It is telling that Defendants have only just produced what are some of the most critical documents in this action.  Aside from the company-formation/operation documents noted above, there also remain a number of additional highly relevant documents the Defendants have yet to produce, including press releases and communications from Mr. Kadlubek to artists showing Defendants represented they would maintain "all their intellectual property," before presenting them with a contract containing a work-for-hire provision directly contrary to that assurance.

Plaintiff did (and continues to do) her best to obtain important discovery. The remaining tasks are limited in scope and not unduly burdensome.

Given the number of outstanding issues, and Defendants attempts confine the case to their theory alone, Plaintiff believes the most efficient way to move forward is with a free and broad discussion of those issues between the parties and the Court.  Plaintiff therefore respectfully requests hearing on the matter to explain the discovery adduced to date, and the limited amount that remains to be done.

2. By Defendant

   a. <u>Limited Written Discovery on new claims in Amended Complaint</u>: Allowance of plaintiff's amended complaint has put new fact issues into the case, including the issue of reliance in the promissory estoppel claim. Defendants should be allowed to propound a limited set of written discovery to cover the new issues in the amended pleading.

   b. <u>Witnesses Disclosed by Plaintiff on the last day of discovery</u>: plaintiff served supplemental disclosures on April 30, 2021, the last day of discovery, listing six new witnesses purported to have information "related to representations, actions, promises, and demands made in exchange by Defendants during 2015 and early 2016 surrounding the opening of House of Eternal Return and thereafter." Plaintiff claims she did not learn these names until a deposition of Benjamin Wright on April 9, but plaintiff should have begun depositions of her witnesses long before the last five weeks of discovery, and should now be precluded from calling these individuals as witnesses since defendants had no opportunity to depose them. To the extent they are not excluded, defendants should be allowed to depose them.

   c. <u>Anticipated Filings by Defendants</u>

      i. Amended Answer and Counterclaim for Declaratory Judgment concerning the parties' contract rights and obligations

      ii. Motions for summary judgment

      iii. Motion to dismiss plaintiff's proposed new Lanham Act and Unfair Practices Act claims as legally deficient

      iv. Motions challenging plaintiff's experts on Daubert grounds

   v. Motion for the Court to Seek Advice from the Register of Copyrights concerning whether, if the Register knew of inaccuracies contained in Lauren Oliver's applications for registration of her copyrights, the Register would have refused registration

   vi. Motion in limine to prevent plaintiff testifying about her medical history with cancer because plaintiff's counsel instructed plaintiff not to answer questions about plaintiff's cancer in deposition. If plaintiff is allowed to testify about her medical history, plaintiff should provide a supplemental deposition at her expense to answer questions on her medical history.

   vii. Other dispositive motions and motions in limine

  d. **Summary of Defendants' Position <u>Concerning Plaintiff's Proposed Additional Discovery</u>:**

  Plaintiff's narrative of discovery obstruction by defendants is egregiously untrue. Defendants have worked extremely hard to produce documents responsive to every document request from plaintiff, both early in the case and late in the case, and have been clear about any documents that are not relevant or discoverable so that any disputes the parties cannot resolve can be decided by the Court. Some of defendants' document objections have been upheld by the Court. Defendants fully responded to a request early in the case for "All documents concerning Oliver," and are currently working with massive document requests plaintiff served at the end of the case that dictate electronic search terms to be used which are resulting in extensive duplication of documents already produced. Defendants engaged in nearly around-the-clock deposition discovery at the end of the discovery period due to plaintiff's failure to begin depositions earlier.

  The suggestion that the recent production of artist contracts was incomplete is untrue. Defendants made a thorough search for similarly situated artist contracts and produced the 18 resulting contracts showing other artists' capped revenue sharing stipends. Plaintiff's wish for more such contracts has somehow been projected into the false suggestion that the document production was not complete and timely.

Defendants wish to amend their answer as of right under Rule 15(a) to assert a counterclaim for a declaratory judgment as to the parties' contract obligations. Plaintiff's complaint alleges a contract exists between herself and Meow Wolf, but carefully avoids mentioning the written offer Meow Wolf made to her setting out terms. Defendants agree there is a contract between Meow Wolf and plaintiff, but disagree with plaintiff on what the contract terms are. Plaintiff's counsel has complained about Meow Wolf defending her contract claim by pointing out what the actual contract terms are, so defendants seek an affirmative declaration as to the terms of the contract that plaintiff has alleged from the inception of her case. Defendants' position on the contract terms is well known to plaintiff and the claim involves no new issues or facts, simply an avenue for the Court to declare the contract terms that are already in issue.

Plaintiff blames much of her requested new discovery and resulting delay on a manufactured theory that defendants hid the existence of pitch decks containing a decorative image of Space Owl (among many other images from the House of Eternal Return), and the recent production of these slide decks changes the case. In fact, plaintiff has known about and had a pitch deck since February, well before the deadline for fact discovery. Defense counsel immediately informed plaintiff that defense counsel did not have the technology to do image searching to find images of Space Owl that were not associated with any words. When plaintiff inquired about pitch decks in a deposition and requested a search for other pitch decks, defendants immediately did so, representing to the Court that it was searching for and producing such documents (Doc. 121, at 7). Plaintiff filed a motion to compel, without conferring with defense counsel and apparently without reading Doc. 121. Plaintiff's counsel acknowledged they did not meet or confer with defendants on this, and put their motion in abeyance. Plaintiff continued its narrative of discovery obstruction.

Plaintiff claims that Meow Wolf continues to refuse to produce the operating agreement for Meow Wolf, LLC, but plaintiff did not seek this operating agreement in any discovery request to date, despite having many months to do so. Even had plaintiff timely requested this and other corporate formation documents, none would be relevant to plaintiff's claims. A plaintiffs' contract with a company does not make relevant an inquisition into the founders of the company, the owners of the company, or its history of corporate entities or succession. Plaintiff Oliver testified she had no participation in Meow Wolf between 2010–2015 except to attend its shows as a member of the community. Thus, records of Meow Wolf's corporate status in the years before her agreement with Meow Wolf to install her work in Meow Wolf's House of Eternal Return has no bearing on her claims. Plaintiff's claim that corporate formation documents are relevant because Meow Wolf was referred to as a collective—a term for many types of groups—posits that a collective equals company ownership, when Plaintiff Oliver had no involvement as a member or owner of any Meow Wolf company.

While plaintiff claims to have made efforts to conduct "limited discovery," a cursory review of the requests she actually made of Meow Wolf demonstrate anything but "limited discovery," including a request by her for "all documents . . . to, from, or by any officer, director, member, partner, employee, agent, or representative of Meow Wolf" that mentions the word "intellectual property" (whether or not the document referred to Lauren Oliver or her ISQ work). She also claims without any facts (or any prior communication with defense counsel) that Meow Wolf's production pursuant to the Court's May 17, 2021 Order (Doc. 128) was "incomplete." Meow Wolf produced complete revenue information, and all documents it was required to produce under the Court's Order. It has withheld none.

At the end of the discovery period plaintiff served new document requests dictating specific search terms to be used, resulting in massive duplication of the document searching

defendants have already done. Many of the requests are overbroad and unduly burdensome, including new requests for all communications containing the words "intellectual property" or "copyright." Counsel are meeting and conferring at present on these issues.

Plaintiff's request for more discovery and more experts is delaying the progress of this case toward trial, seeking discovery and claims further and further away from what she has pled, such as founding corporate documents from before Ms. Oliver was contracted, and information about Meow Wolf's participation with the Paycheck Protection Program even though plaintiff was never an employee, much less in 2020 when Meow Wolf received funding under PPP. The nine month discovery period completed has been extremely thorough and expensive, and reopening general discovery for another 60 days would impose massive and unnecessary additional expense and would further delay decision on the merits. Plaintiff is seeking to relitigate certain areas of the case, seeking to add a new expert months late to opine on issues she pled at the inception of her case in March 2020, threatening to file a new motion for leave to amend to assert legally deficient claims, and claiming her experts do not have sufficient information for their reports so that she can delay having her experts finalize their reports and be deposed.

    i. <u>Plaintiff's Proposed Additional Depositions</u>: Defendants have worked tirelessly to accommodate 9 depositions for plaintiff in the last 5 weeks of discovery, and all reasonable efforts were made to take the depositions plaintiff wanted. Plaintiff chose to focus her depositions on exploring theories not directly related to her claims. Defendants offered a corporate 30(b)(6) deposition limited to issues in the case (and not on extraneous subject matter proposed by Plaintiff (see Doc 100-3)) if a compromise could be reached, but the parties were not able to agree. Plaintiff has had nine months to take

depositions, and the only deposition which should be allowed is a deposition of Cary Cluett, who was disclosed as a non-retained expert.

ii. <u>Plaintiff's Proposed Document Requests</u>: Plaintiff seeks disclosure of irrelevant corporate formation and organizational documents not related to any claim in this case, including documents about the 2011 and 2014 formation of companies that occurred long before the acts alleged by plaintiff in her claims against Meow Wolf.

iii. <u>Production of Revenue and Contract documents</u>: Meow Wolf has produced all documents subject to the Court's May 17, 2021 Order (Doc. 128) granting in part and denying in part plaintiff's motion to compel.

## PROPOSED SCHEDULE

1. **Plaintiff's Position:** Plaintiff respectfully suggests that, after considering the remaining issues in the case and issuing an accompanying order, the Court should allow an additional 60 days for fact discovery, 30 days for expert reports, 21 days for rebuttal reports, 30 days for expert depositions, and 30 days for expert-related motions to be filed—with all days running from the date of issuance of the Court's order.

2. **Defendants' position:** Plaintiff has indicated that her experts wish to supplement their expert reports to incorporate Meow Wolf's profits. Meow Wolf disclosed this information on June 16, 2021 in accordance with the Court's May 17, 2021 Order (Doc. 128). Because plaintiff's experts now have this information, defendants propose the following schedule for expert witnesses disclosed within the deadline for expert witness disclosures:

    a. July 16, 2021—Supplemental Expert Witness Disclosures by Plaintiff based only on new information disclosed by Meow Wolf on June 16, 2021
    b. August 16, 2021—Supplemental Rebuttal Reports by Defendant
    c. September 15, 2021—Deadline for all parties to conduct expert witness depositions

      d. October 30, 2021—Deadline for *Daubert* Motions to be filed

No deadline related to expert reports, expert depositions, or *Daubert* Motions need be extended beyond as proposed by defendants above because plaintiff has the information she needs for her experts to supplement their reports and for their depositions to be had. Defendants respectfully propose that 60 days be granted for limited discovery consistent with defendants' proposals herein, and that deadlines be set for motions relating to non-expert discovery, motions relating to expert discovery, pretrial motions, and proposed pretrial orders following the end of the 60 days for limited fact discovery.

Dated: June 22, 2021

Respectfully submitted,

BARDACKE ALLISON LLP

*/s/Breanna Contreras*
Benjamin Allison
Breanna Contreras
Victor Grafe
P.O. Box 1808
141 East Palace Avenue
Santa Fe, New Mexico 87504-1808
(505) 995-8000
ben@bardackeallison.com
breanna@bardackeallison.com
victor@bardackeallison.com

*Attorneys for Defendants Meow Wolf, Inc. and Vince Kadlubeck*


FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD PA

*/s/ Josh Ewing*
*(approved via email 6/22/2021)*
VINCENT J. WARD
JOSH B. EWING
20 First Plaza, Ste. 700
Albuquerque, NM 87102
(505) 842-9960
(505) 842-0761 facsimile
vjw@fbdlaw.com
jbe@fbdlaw.com

*Counsel for Plaintiff Lauren Adele Oliver*