## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER, an individual,

                                        No. 1:20-CV-00237(KK)(SCY)

          Plaintiff,

    v.

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK, an
individual and officer; and DOES 1-50,

          Defendants.

### DEFENDANTS MEOW WOLF, INC. AND VINCE KADLUBEK'S
### AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Meow Wolf, Inc. ("MWI") and Vince Kadlubek ("Kadlubek" and, with MWI,

"Defendants"), through their undersigned attorneys, answer Plaintiff Lauren Oliver's ("Oliver" or

"Plaintiff") First Amended Complaint as follows:

### JURISDICTION AND VENUE

1.      In response to the allegations in Paragraph 1 of the Complaint, Defendants admit

that this is an action brought under the Copyright Act of 1976, Title 17 U.S.C. §§ 101 *et seq.*,

Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, and state law, but deny that any violation

occurred under these laws.

2.      The allegations set forth in Paragraph 2 of the Complaint contain legal conclusions

to which no response is required.

3.      The allegations set forth in Paragraph 3 of the Complaint contain legalconclusions

to which no response is required.

**THE PARTIES**

4.      Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint.

5.      Defendants admit the allegations set forth in Paragraph 5 of the Complaint.

6.      Paragraph 6 contains a definition of terms to which no response is required. To the extent a response is required, Defendants will adopt the definition included in Paragraph 6.

7.      Defendants admit the allegations set forth in Paragraph 7 of the Complaint.

8.      In response to the allegations set forth in Paragraph 8 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to the existence or identity of the Doe Defendants and deny that Plaintiff's rights were infringed.

9.      In response to the allegations set forth in Paragraph 9 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations with respect to the unidentified Doe defendants. With respect to Kadlubek, Defendants admit that he was an officer of MWI at times relevant to this action.  Defendants deny the remaining allegations, including that Plaintiff's rights were violated.

**GENERAL ALLEGATIONS**

10.      Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint.

11.      Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint.

12.      Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint and refer the Court to the Exhibit referenced therein for proof of its contents.

13.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint.

14.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint.

15.     In response to Paragraph 15 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations regarding an ISQ show at a Santa Fe gallery or Plaintiff's alleged focus. Defendants admit that, in or about 2014, MWI had secured a lease from George R.R. Martin to a bowling alley in Santa Fe and that they were soliciting proposals for HoER.  Defendants deny the remaining allegations.

16.     In response to Paragraph 16 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint.

17.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint.

18.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint.

19.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint.

20.     Paragraph 20 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact.  In

response to Paragraph 20 of the Complaint, Defendants admit that MWI had secured a ten-year lease on the location for HoER.  Defendants deny sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 20 of the Complaint.

21.      Defendants deny the allegations set forth in Paragraph 21 of the Complaint.

3

22.     Defendants deny the allegations set forth in Paragraph 22 of the Complaint, and refer the Court to the documents and website referenced therein for the proof of their contents.

23.     Defendants deny the allegations set forth in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations set forth in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations set forth in Paragraph 25 of the Complaint.

26.     Paragraph 26 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 26of the Complaint, and deny that Defendants made any "offer" to Plaintiff.

27.     Paragraph 27 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 27 of the Complaint.

28.     Paragraph 28 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact.  To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to Oliver's feelings, thoughts or expectations regarding HoER and/or MWI, and deny the remaining allegations set forth in Paragraph 28 of the Complaint.

29.     In response to the allegations set forth in Paragraph 29 of the Complaint, Defendants admit that MWI offered artists a "Bonus Program" but deny the remaining allegations.

30.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, except deny that Defendants

4

infringed Plaintiff's rights in Space Owl and/or ISQ and direct the Court to the items referenced therein for proof of their contents.

31.     In response to the allegations set forth in Paragraph 31 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to Oliver's feelings, thoughts or expectations regarding HoER and/or MWI.  Defendants admit that in approximately 2018, MWI presented Oliver with a draft agreement regarding MW's use of Space Owl, but Oliver rejected the draft agreement, and refer the Court to the draft agreement for proof of its contents.

32.     In response to the allegations set forth in Paragraph 32 of the Complaint, Defendants deny sufficient knowledge or information to form a belief as to Oliver's feelings, thoughts or expectations regarding HoER and/or MWI.  Defendants admit that in approximately 2018, MWI presented Oliver with a draft agreement regarding MW's use of Space Owl, but Oliver rejected the draft agreement, and refer the Court to the draft agreement for proof of its contents.

33.     In response to the allegations set forth in Paragraph 33 of the Complaint, Defendants admit that, in or about June 2018, Oliver asked MWI not to further use Space Owlin merchandising, but deny the remaining allegations.

34.     Defendants deny sufficient knowledge or information to form a belief as to thetruth of the allegations set forth in Paragraph 34 of the Complaint, except deny the allegationsregarding MWI's alleged conduct.

35.      Paragraph 35 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint.

36.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint, except admit that, in approximately 2019, MWI received an investment of venture capital.

37.     Paragraph 37 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants admit that representatives of MWI met with Oliver in or about 2019 in an effort to settle the dispute between them. Defendants deny the remaining allegations set forth in Paragraph 37 of the Complaint.

38.     In response to the allegations set forth in Paragraph 38 of the Complaint, Defendants admit that Oliver received and accepted at least $2,000 from MWI for the installation and use of Space Owl and/or ISQ. Defendants deny sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 38 of the Complaint.

39.     Paragraph 39 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint, and refer the Court to the actions identified therein for proof of their contents.

40.     Defendants deny the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint.

42.     Paragraph 42 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations set forth in Paragraph 43 of the Complaint.

44.     The allegations set forth in Paragraph 44 of the Complaint involve settlement negotiations between the parties, which are shielded from disclosure.  To the extent a responseis required, Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendants deny sufficient knowledge or information to form a belief as to thetruth of the allegations set forth in Paragraph 45 of the Complaint, and refer the Court to the Exhibits referenced therein for proof of their contents.

46.     In response to Paragraph 46 of the Complaint Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations regarding Oliver's feelings, thoughts or expectations regarding HoER and/or MWI, and deny the remaining allegations set forth in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations set forth in Paragraph 47 of the Complaint.

## SPECIFIC ALLEGATIONS

48.     Defendants deny sufficient knowledge or information to form a belief as to thetruth of the allegations set forth in Paragraph 48 of the Complaint, and refer the Court to the copyright registrations referenced therein for proof of their contents.

49.     Defendants deny specific knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

51.     The allegations set forth in Paragraph 51 contain legal conclusions to which no response is required.

52.     The allegations set forth in Paragraph 52 of the Complaint contain legalconclusions to which no response is required.

53.     The allegations set forth in Paragraph 53 of the Complaint contain legalconclusions to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 53 of the Complaint.

54.     Paragraph 54 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact.

55.     In response to Paragraph 55 of the Complaint, Defendants admit that, in approximately 2019, MWI received an investment of venture capital.  Defendants deny the remaining allegations set forth in Paragraph 55 of the Complaint.

56.     Paragraph 56 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants admit that HoER has been featured in press and in social media posts and refer the Court to those documents for proof of their contents, and deny the remaining allegations set forth in Paragraph 56 of the Complaint.

57.     Defendants deny the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendants deny the allegations set forth in Paragraph 58 of the Complaint, and refer the Court to the Exhibits referenced therein for proof of its contents.

59.     Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

60.     In response to Paragraph 60 of the Complaint, Defendants admit that a publication included HoER as #25 in a list entitled "The 100 Works of Art That Defined theDecade," and refer the Court to the list for proof of its contents.

61.     Paragraph 61 of the Complaint contains legal conclusions to which no responseis required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62.     Paragraph 62 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 62 of the Complaint.

63.     Defendants deny the allegations set forth in Paragraph 63 of the Complaint, and refer the Court to the Exhibits referenced therein for proof of their contents.

64.     Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent that a response is required Defendant denies all allegations set forth in Paragraph 64 of the Complaint.

65.     Defendants deny the allegations set forth in Paragraph 65 of the Complaint, and refer the Court to the Exhibit referenced therein for proof of its contents.

66.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

69.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 69 of the Complaint, except deny the allegations in Paragraph 69 related to MWI's conduct.

70.     The allegations set forth in Paragraph 70 of the Complaint involve settlement negotiations between the parties, which are shielded from disclosure.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations set forth in Paragraph 71 of the Complaint, and refer the Court to the Exhibit referenced therein for proof of its contents.

72.     Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

73.     In response to Paragraph 73 of the Complaint, Defendants admit that Oliver received and accepted $2,000 from MWI for the installation and use of Space Owl and/or ISQ and deny all other allegations and inferences of Paragraph 73, including the suggestion that Oliver was not offered any more than $2000.

74.     In response to Paragraph 74 of the Complaint, Defendants admit that Oliver agreed to receive a contingent stipend in the Artist Revenue Sharing Program (ABP) which comprised part of her agreement with Meow Wolf for the installation of Space Owl and/or ISQ, and deny all remaining allegations.

75.     In response to Paragraph 75 of the Complaint, Defendants admit that meetings with participating artists took place at which the ABP was described, and deny any remaining allegations.

76.     In response to Paragraph 76, Defendants admit that capped artist payments under the ABP were based in part on how much revenue Meow Wolf generated each year that the artist remained in the program and had not yet reached his or her cap, and deny the remaining allegations.

77.     Paragraph 77 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 77 of the Complaint.

78.     Paragraph 78 of the Complaint contains statements of opinion, belief and/or non-factual conclusions or characterizations, which Defendants cannot admit or deny as fact. Defendants deny that Oliver installed ISQ on time and to professional standards without substantial help, and deny any remaining allegations of Paragraph 78.

79.     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement against All Defendants)**

80.     Defendants repeat and reallege their responses set forth in Paragraph 1-79 as iffully set forth herein.

81.     The allegations set forth in Paragraph 81 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny knowledge or information to form a belief as to the truth of the allegationsset forth in Paragraph 81 of the Complaint.

82.     Defendants deny the allegations set forth in Paragraph 82.

83.     Defendants deny the allegations set forth in Paragraph 83.

84.     Defendants deny the allegations set forth in Paragraph 84.

85.     Defendants deny the allegations set forth in Paragraph 85.

86.     Defendants deny the allegations set forth in Paragraph 86.

87.     Defendants deny the allegations set forth in Paragraph 87.

88.     Defendants deny the allegations set forth in Paragraph 88.

89.     Defendants deny the allegations set forth in Paragraph 89.

90.     Defendants deny the allegations set forth in Paragraph 90.

**SECOND CLAIM FOR RELIEF**
**(Violation and Threatened Violation of VARA against All Defendants)**

91.     Defendants repeat and reallege their responses set forth in Paragraph 1-90 as if fully set forth herein.

92.     The allegations set forth in Paragraph 92 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 92 of the Complaint.

93.      Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.      The allegations set forth in Paragraph 94 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 94 of the Complaint.

95.      Defendants deny the allegations set forth in Paragraph 95 of the Complaint.

96.      Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

97.      Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 97 of the Complaint.

98.      The allegations set forth in Paragraph 98 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 98 of the Complaint.

99.      The allegations set forth in Paragraph 99 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in Paragraph 99 of the Complaint.

100.     Defendants deny sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 100 of the Complaint, except deny that Plaintiff's rights were violated.

101.     Defendants deny the allegations set forth in Paragraph 101 of the Complaint.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract against All Defendants)

102.     Defendants repeat and reallege their responses set forth in Paragraph 1-101 as if fully set forth herein.

12

103.     Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

104.     Defendants admit there was a contract which Oliver accepted and whereby Oliver installed ISQ and Space Owl, but denies that the terms of the contract are as she alleges.

105.     Defendants deny the allegations set forth in Paragraph 105 of the Complaint.

106.     Defendants deny the allegations set forth in Paragraph 106 of the Complaint.

107.     Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

## FOURTH CLAIM FOR RELIEF
### (Breach of Covenant of Good Faith and Fair Dealing against All Defendants)

108.     Defendants repeat and reallege their responses set forth in Paragraph 1-107 as if fully set forth herein.

109.     Defendants deny the allegations set forth in Paragraph 109 of the Complaint.

110.     Defendants deny the allegations set forth in Paragraph 110 of the Complaint.

111.     Defendants deny the allegations set forth in Paragraph 111 of the Complaint.

112.     Defendants deny the allegations set forth in Paragraph 112 of the Complaint.

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel against All Defendants)

113.     Defendants repeat and reallege their responses set forth in Paragraph 1-112 as if fully set forth herein.

114.     Defendants deny the allegations set forth in Paragraph 114.

115.     Defendants deny the allegations set forth in Paragraph 115.

116.     Defendants deny the allegations set forth in Paragraph 116.

117.     Defendants deny the allegations set forth in Paragraph 117.

**SIXTH CLAIM FOR RELIEF**
**(Unjust Enrichment against All Defendants)**

118.    Defendants repeat and reallege their responses set forth in Paragraph 1-117 as if fully set forth herein.

119.    Defendants deny the allegations set forth in Paragraph 119.

120.    Defendants deny the allegations set forth in Paragraph 120.

121.    Defendants deny the allegations set forth in Paragraph 121.

**SEVENTH CLAIM FOR RELIEF**
**(Conversion against All Defendants)**

122.    Defendants repeat and reallege their responses set forth in Paragraph 1-121 as if fully set forth herein.

123.    Defendants deny the allegations set forth in Paragraph 123.

124.    Defendants deny the allegations set forth in Paragraph 124.

125.    Defendants deny the allegations set forth in Paragraph 125.

126.    Paragraph 126 contains a legal conclusion to which no response is required.

**EIGHTH CLAIM FOR RELIEF**
**(Intentional Misrepresentation against All Defendants)**

127.    Defendants repeat and reallege their responses set forth in Paragraph 1-126 as if fully set forth herein.

128.    Defendants deny the allegations set forth in Paragraph 128.

129.    Defendants deny the allegations set forth in Paragraph 129.

130.    Defendants deny the allegations set forth in Paragraph 130.

131.    Defendants deny the allegations set forth in Paragraph 131.

132.    Defendants deny the allegations set forth in Paragraph 132.

## NINETH CLAIM FOR RELIEF
### (Negligent Misrepresentation against All Defendants)

133.    Defendants repeat and reallege their responses set forth in Paragraph 1-132 as if fully set forth herein.

134.    Defendants deny the allegations set forth in Paragraph 134.

135.    Defendants deny the allegations set forth in Paragraph 135.

136.    Defendants deny the allegations set forth in Paragraph 136.

137.    Defendants deny the allegations set forth in Paragraph 137.

138.    Defendants deny the allegations set forth in Paragraph 138.

## TENTH CLAIM FOR RELIEF
### (Constructive Trust against All Defendants)

139.    Defendants repeat and reallege their responses set forth in Paragraph 1-138 as if fully set forth herein.

140.    Defendants deny the allegations set forth in Paragraph 140.

141.    Defendants deny the allegations set forth in Paragraph 141.

## AFFIRMATIVE DEFENSES

142.    And as for their affirmative defenses, Defendants allege as follows, without assuming anyburden of pleading or proof that would otherwise rest with Plaintiff, and without waiving and hereby expressly reserving the right to assert any and all additional affirmative defenses at such time and to such extent as discovery and factual developments establish a basis therefore:

## FIRST AFFIRMATIVE DEFENSE

143.    Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

144.    Plaintiff's claims are barred, in whole or in part, because she failed to mitigate her alleged damages.

## THIRD AFFIRMATIVE DEFENSE

145.    Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## FOURTH AFFIRMATIVE DEFENSE

146.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches and/orunclean hands.

## FIFTH AFFIRMATIVE DEFENSE

147.    Plaintiff's claims are barred, in whole or in part, because Defendants had an express orimplied license to use Plaintiff's work and they did not exceed the scope of the license.

## SIXTH AFFIRMATIVE DEFENSE

148.    Upon information and belief, to the extent any copyright registrations are asserted by Plaintiff as covering the work at issue, Defendants allege that some or all of such copyrights may be invalid and/or unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

149.    Plaintiffs' claim is barred, in whole or in part, because Defendants did not willfully infringe any intellectual property or other rights owned by Plaintiff.  Defendants have acted ingood faith without any intention of injuring Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

150.    Plaintiffs' claim is barred, in whole or in part, by the "Fair Use Doctrine" pursuant toSection 107 of the Copyright Act, 17 U.S.C. §107.

16

**NINTH AFFIRMATIVE DEFENSE**

151.    Plaintiff has sustained no injury or damage as a result of any act or conduct of Defendants.

**TENTH AFFIRMATIVE DEFENSE**

152.    Plaintiff's claims are barred, in whole or in part, by the Statute of Frauds.

**ELEVENTH AFFIRMATIVE DEFENSE**

153.    Plaintiff's claims for copyright infringement are barred, in whole or in part, because plaintiff knowingly submitted inaccurate information in connection with her copyright applications and therefore her copyright registrations are invalid.

**COUNTERCLAIM**

1.      Defendant Meow Wolf, Inc. ("MWI"), by its undersigned counsel, allege the following in support of its counterclaim against Lauren Oliver ("Oliver," or "Plaintiff"):

**JURISDICTION AND VENUE**

2.      The Court has subject matter jurisdiction over MWI's counterclaim under 28 U.S.C. § 1367(a) because it is so related to Plaintiff's claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this district under 18 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the counterclaim occurred in this district.

**GENERAL ALLEGATIONS**

4.      Meow Wolf began in 2008 as a group of artists working together to build art shows, host music shows, and be a social group. The group sometimes referred to itself as an art collective. No commitment was required to participate, and some artists came and went as their interest and circumstances dictated. Counter-defendant Lauren Oliver participated in one of Meow Wolf's early shows and created some concert posters, then did not participate in Meow Wolf for several years until she was invited to submit a proposal for Meow Wolf's first permanent installation, the House of Eternal Return (HoER). Between 2009 and 2015 Oliver attended Meow Wolf shows as a visitor but did not participate in any shows or attend any Meow Wolf meetings, which were always open to the public.

5.      During the five-plus years she did not participate in Meow Wolf, the collective continued to develop and mount shows and art installations. Certain artists in the group continued to take responsibility for shepherding projects and installations. In 2011 Meow Wolf built its largest installation up to that time, the Due Return, which for the first time generated significant earnings

through suggested donations—more than $100,000. Ms. Oliver visited the Due Return as a member of the public but did not participate in it.

6.      After the Due Return, the first Meow Wolf company was formed, and Meow Wolf went on to create twenty-two immersive exhibits in eight cities, from Las Cruces and San Antonio to Chicago,  Miami, and New York. Ms. Oliver did not participate in these shows.

7.      In 2014 Meow Wolf formed the vision to create a permanent Meow Wolf exhibition in Santa Fe, the House of Eternal Return (HoER), which would pay artists for the art they installed and create living-wage employment for artists on a sizeable scale. After years of intense work in Meow Wolf with little or no pay, the leaders of Meow Wolf believed the company and its vision for a permanent exhibition could attract the investment that would finally make it possible to pay artists, who were so often underpaid or not paid at all.

**The Artist Bonus Program**

8.      Meow Wolf did not have the initial capital to adequately pay the artists who were to contribute art to HoER. Meow Wolf used its initial capital to buy the artists' materials for their installations and in some cases to provide small up-front stipends to HoER artists. Meow Wolf created a deferred compensation program initially informally referred to as the artist revenue sharing program, and formally named Artist Bonus Program (ABP), which would compensate artists from Meow Wolf's profits if HoER was successful.

9.      The ABP earmarked $1 million in future profits to pay to the artists who created installations and art in HoER. The 113 artists in the program were each given an individual cap on their share of the ABP based on the scope and amount of work they were to build. In each year that HoER revnue passed a set cost number, 11% of profits would flow into the ABP to pay artists. Investors were paid in a similar manner except that only 9% of profits went into a pool to repay

investors. Once an artist's cap was reached, that artist would drop out of the ABP pool and the remaining artists would be paid until each artist had received her set share stipend.

10.     Each artist's cap was contingent on that artist delivering the work contracted for in a satisfactory manner, and artists were encouraged to build their work to a high standard so that it would stand up to heavy traffic and last for the ten-year life of HoER's lease. HoER was a project of massive scope and complexity—30,000 square feet of interactive maximalist structures, technology, story, lighting, and sounds. Meow Wolf told artists that an assessment would be made after HoER was built and an artist's cap would be adjusted if he or she underperformed or overperformed. Some artists finished their own projects and went on to help others. Many volunteers who had been offered no ABP participation stipend showed up and contributed so much that Meow Wolf gave them an ABP stipend after the build was over. After HoER was built, a total of 113 artists were included in the ABP, and the aggregate of all artists' caps in the ABP was over $1,000,000.

11.     Unlike the early days of the Meow Wolf collective where artists were asked to contribute toward rent and other expenses, artists who installed art in HoER were not asked to contribute toward rent for the building, construction costs to renovate the building, utilities, operations, project management, legal costs and the many other costs of the project. Artists did not even have to buy their own materials; Meow Wolf bought each artist the materials they needed through a budget worked out between each artist and Meow Wolf, although many artists also contributed unanticipated lesser materials and costs. The co-founders borrowed money from friends and family members, took out lines of credit from Home Depot to buy materials, personally guaranteed a 6-figure bank loan and a $3 million building lease, and worked around the clock to manage hundreds of construction workers, artists, volunteers, building inspectors, technology, sound, and lighting experts, and get investors to make HoER a reality.

12.    After many delays, sleepless nights and long hours, the project was finally completed

and HoER opened in March 2016. A year later, Meow Wolf met its revenue goals under the ABP

and made its first payments to artists.

**Lauren Oliver's Contract**

13.    Meow Wolf founders saw Oliver's work in a show in Santa Fe and asked her to make

a proposal to install her work in HoER. Plaintiff's proposal was based on the same art, the Space

Owl and its surrounding story and context, Ice Station Quellette ("ISQ"). In that show Oliver's Space

Owl was priced at $6000 but did not sell; she later dismantled it. Meow Wolf accepted Oliver's ISQ

proposal.

14.    In April 2015, nearly a year before HoER opened, Meow Wolf, through its CEO Mr.

Kadlubek, made a contract offer to Lauren Oliver. The offer was in an email with the subject line

"Meow Terms," and started with "Writing to you today to talk about the contractual terms of your

involvement in the Meow Wolf project." *See* April 2, 2015 Email from Kadlubek to Oliver, attached

hereto as **Exhibit A**. The email set out the following terms:

- Lauren Oliver would install ISQ by HoER's projected opening date of September 1, 2015.

- Meow Wolf would pay Oliver an up-front stipend of $1,000 in $250 bi-weekly increments.

- Meow Wolf would pay Oliver a $10,000 "revenue share stipend" from its Artist Revenue Share program.

- Meow Wolf would buy the materials Oliver needed to construct ISQ.

- Meow Wolf would own ISQ as tangible property and Lauren Oliver would own the intellectual property rights in ISQ.

15.    Lauren Oliver responded, "Hey. Awesome. Good luck tonight." *Id.* Over  the   next

year Oliver installed ISQ as called for under the contract terms and with the help of others. Oliver

never objected to the terms set out in the "Meow Terms" email or counteroffered or asked to change them.

16.     Mr. Kadlubek's email said details of the ABP would be discussed in person, and a formal contract would be sent to Oliver. A few weeks later a meeting was set with artists to hand out printed contracts in person and explain and discuss them. Ms. Oliver and all artists were urged to attend. It is not known if Oliver did attend.

17.     Meow Wolf principal Caity Kennedy oversaw Oliver's work along with that of a group of other artists, and Ms. Kennedy worked to ensure that all artists in her group received their contracts, whether they had attended the contract meeting or not. The contract contained a sheet explaining the ABP and providing each artist's ABP cap.

18.     At no point during construction of HoER and installation of ISQ did Oliver write or say to Mr. Kadlubek or anyone else that the $10,000 ABP stipend was not agreeable, or ask to change that cap. Up to that point Oliver had not sold any work of art for more than $1000.

19.     During the construction of HoER, delays forced Meow Wolf to push back HoER's opening. Oliver and all other artists agreed to the change in timeline.

20.     Meow Wolf also asked Oliver if she would agree to change the timing of her up-front $1000 stipend from bi-weekly to a lump-sum payment closer to the opening of HoER. Plaintiff agreed and, when the stipend was paid, she directed it to be paid to the artist who was assisting her without charge, Cary Cluett.

21.     Oliver lacked the skill or experience to make ISQ a reality, and Mr. Cluett designed, fabricated, and constructed the physical structures needed for ISQ and Space Owl. Mr. Cluett consistently showed up, solved the problems that building ISQ presented, and executed the work to a professional degree, often without Oliver's presence. He then went on to help construct other areas of HoER. In recognition of Cluett's substantial contribution to ISQ as well as other HoER areas,

22

Meow Wolf gave him a $10,000 participation stipend in ABP and adjusted Oliver's participation stipend down to $7,000 in light of her not delivering ISQ by herself and frequently not being present or responsive.

22.     In March 2017, Meow Wolf made its first payments to artists under the ABP, including to Plaintiff. Oliver's first payment was for $2,000. Meow Wolf personnel had to repeatedly follow up with Oliver to ensure she had received her check, explain that it was separate from the checks she received from selling her merchandise in the Meow Wolf gift shop, reissue the check, and respond to Oliver's requests for assurance that she had received everything she was entitled to under the ABP. Oliver accepted and cashed the $2000 ABP check.

23.     Oliver was selling ISQ merchandise in HoER's gift shop under a consignment arrangement. Oliver exchanged many emails with the gift shop to receive checks, re-stock her merchandise, and discuss possible new items to sell.

24.     After Oliver received her initial $2,000 ABP payment, she did not write to Meow Wolf objecting to this compensation under the ABP or asking where was her unlimited share of HoER revenue.

25.     Oliver received and cashed more than $20,000 worth of checks received from Meow Wolf from sales of consigned products at HoER's gift shop between 2016, when HoER opened, and 2019. Oliver received her first check for sales of consigned goods from Meow Wolf in April 2016, a month after HoER opened. Each check Meow Wolf issued to Lauren Oliver was issued from Meow Wolf's corporate bank account.

26.     It was well known by all who were involved in the HoER build, including to Oliver, that Meow Wolf operated as a for-profit business well before HoER opened. Local and international newspapers reported on Meow Wolf's status as a company, and then-CEO Vince Kadlubek regularly

updated artists concerning new investors in the company and asked artists and others whether they knew of other people who may want to invest in the company.

27.     Although HoER's success was widely reported in newspapers and was common knowledge not only in the Meow Wolf community but in the public, at no point in Oliver's correspondence with Meow Wolf in 2017, 2018, or 2019 did she write and ask where her unlimited share of Meow Wolf's revenue was or how Meow Wolf was calculating it.

28.     In 2018 MWI attempted to make a second payment of $2,750 to Plaintiff under the ABP. Plaintiff did not respond to emails about this, but eventually said she was going through tragedy in her family with the loss of her mother and then her brother, and asked for space to deal with her family. Meow Wolf personnel told her to take her time.

29.     In 2019 Meow Wolf rolled Oliver's 2018 payment into her 2019 ABP payment and attempted to pay Oliver her entire remaining balance of $5,000. Meow Wolf had predicted it would take five years to pay out all artist payments under the ABP, but Meow Wolf's unexpected success allowed it to finish paying out the entire ABP program to artists earlier than projected.

30.     In the 2019 ABP payment, Meow Wolf included an intellectual property assignment in the terms artists had to sign to receive their checks. Meow Wolf's agreement with most HoER artists, unlike its agreement with Oliver, was for Meow Wolf to own the intellectual property rights in the art, and the provision was intended as a fail-safe to ensure that Meow Wolf received the IP. Oliver knew that Meow Wolf was not trying to buy her ISQ copyright for the $5,000 balance of her ABP payment, however. She knew this because one month before, Meow Wolf had met with Oliver and Oliver's lawyer Jesse Boyd and made a proposal to purchase Oliver's copyright to ISQ. Meow Wolf's opening offer was $35,000. Oliver could have told Meow Wolf to remove the IP assignment since her agreement was to keep her IP, and reissue the ABP check. She did not do so.

31.     For the three years between when Oliver was initially contacted until she sought to renegotiate her agreement with MWI, she never asked about receiving a share in MWI or profits under an ownership interest. Despite the media surrounding HoER, in the same period Plaintiff never demanded payment pursuant to an ownership interest in Meow Wolf or in proportion to ISQ's individual popularity.

32.     Counter-defendant Oliver brought this action alleging the existence and breach of a contract between MWI and Oliver for installation of ISQ in exchange for payment, but alleges there was no cap on her participation in ABP and Oliver was entitled to an unspecified share of HoER profits for an unknown time, to be paid on an unknown date. Oliver has alleged no particular amount or percentage of her alleged profit share, and has alleged no way of calculating such amount of percentage. Moreover, Oliver has complained that Meow Wolf should not try to defend itself against this contract claim by proving the actual terms of the contract between the parties. Consequently a dispute has arisen about the contract rights and obligations of the parties.

**COUNT I**
**DECLARATORY JUDGMENT**

33.     MWI repeats and realleges all preceding paragraphs as if fully set forth herein.

34.     A dispute has arisen concerning the respective rights of Plaintiff and MWI as they relate to ISQ and what payment is due to Oliver under the terms of the parties' contract. Counter-plaintiff MWI and Counter-defendant Oliver formed a contract in which Oliver was entitled to a $10,000 stipend from the ABP if conditions precedent were met. Oliver claims she is owed an unspecified share in MWI's profits. Plaintiff also claims entitlement to the same based on an alleged promise of membership in a "collective" ownership of MWI.

35.     Plaintiff has brought this lawsuit alleging the existence of a contract with MWI and its breach of its contract with her by failing to continue to pay her consonant with her understanding of the parties' agreement.

36.     Plaintiff refuses to acknowledge that the contract the parties had only created an obligation on MWI to pay Plaintiff a limited amount, based on HoER's total revenue, irrespective of ISQ's popularity. Plaintiff also refuses to acknowledge that the parties' contract did not create any sort of ownership interest in MWI based on participation in a "collective."

37.     As a result of the parties' dispute, it is necessary for the Court to declare the rights and legal relations of the parties with regard to MWIs obligation to pay Plaintiff under their contract.

38.     MWI's rights, status and legal relations are affected by this controversy with sufficient immediacy and reality to warrant issuance of a declaratory judgment.

39.     By reason of the foregoing, MWI is entitled to declaratory judgment determining the rights and obligations of the parties.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request a judgment dismissing Plaintiff's Complaint and/or that the Court enter judgment in their favor and against Plaintiff on all claims asserted in this action, along with an award of costs, disbursements and reasonable attorneys' fees, in addition to other such relief as this Court deems just and proper. Defendants further pray for judgment on their counterclaim as follows:

A.     For a declaration from the Court that:

(1)     MWI and Plaintiff entered into a contract whereby Plaintiff was entitled to a specified amount of money—$10,000 —detailed by Kadlubek's April 2nd email;

26

(2)      Plaintiff was not entitled to an unlimited share in MWI's revenue based on the success of her own project, ISQ, or otherwise entitled to amounts of money beyond that specified by Kadlubek's April 2nd email;

(3)      That Plaintiff was not offered an ownership interest in MWI based on her alleged membership in MWI's "collective";

B.      For judgment against Plaintiff on this declaratory judgment counterclaim; and

C.      For such further relief as the Court deems just and proper.

Dated: July 6, 2021

Respectfully submitted,

BARDACKE ALLISON LLP

 /s/ Breanna Contreras
Benjamin Allison
Breanna Contreras
Victor Grafe
P.O. Box 1808
141 East Palace Avenue
Santa Fe, New Mexico 87504-1808
(505) 995-8000
ben@bardackeallison.com
breanna@bardackeallison.com
victor@bardackeallison.com

*Attorneys for Defendants Meow Wolf, Inc.
and Vince Kadlubeck*

**CERTIFICATE OF SERVICE**

I, Breanna Contreras, hereby certify that I caused a true and correct copy of the foregoing filing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

*/s/ Breanna Contreras*
Breanna Contreras