IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,
an individual,

    Plaintiff,

v.                                          Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

    Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR REFERRAL OF REGISTRATION QUESTIONS UNDER 17 U.S.C. §411(B)(2) TO THE REGISTER OF COPYRIGHTS**

    Plaintiff, Lauren Adele Oliver ("Plaintiff" or "Oliver"), through her undersigned counsel, hereby submits her Opposition to Defendants' Motion For Referral of Registration Questions Under 17 U.S.C. §411(b)(2) to the Register of Copyrights ("Motion"). *See* Dkt. No. 236.

**I.    INTRODUCTION**

    A 10th Circuit court recently warned that ***a motion under 17 U.S.C. §411(b)(2) is a mechanism for "abuse because it allows infringers to delay proceedings by simply alleging technical violations of the underlying copyright registrations."*** *Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc.*, 304 F. Supp. 3d 1051, 1055 (D. Kan. 2018). Defendants' Motion is exactly that, but they take it a step further. Indeed, it is Defendants' Motion – not Plaintiff's copyright application – that is filled with misstatements and outright untruths. Further, Defendants do not cite to a single case from the 10th Circuit, much less the *Energy Intelligence* case.

After a complete review of both the relevant facts surrounding Plaintiff's copyright application and 10th Circuit case law, it is evident that the Court must deny Defendants' Motion. A review of the facts reveals that Plaintiff communicated with the Copyright Office throughout the course of the application process and was forthcoming regarding all dates and events. Likewise, a review of the 10th Circuit case law reveals that there are in fact two prongs to the test under 17 U.S.C. §411(b)(2): (1) a misstatement of fact in the application *and* (2) that the misrepresentation was knowingly included on the application. *Energy Intelligence Group,* 304 F.Supp. 3d at 1055-1056. Plaintiff did not provide false information to the Copyright Office. However, even if the Court decides there may have been a discrepancy within an application, it certainly does not rise to level of intent required for the Court to grant Defendants' Motion. The Court should deny the Motion in its entirety.

## II.   LEGAL STANDARD

Pursuant to 17 U.S.C. §411(b)(2), "the party seeking invalidation of the copyright must first establish the preconditions to invalidity – (1) that the application contained a misstatement of fact and (2) that the misrepresentation was knowingly included on the application." *Energy Intelligence Group,* 304 F.Supp. 3d at 1055-1056. This method "appropriately balances the Copyright Office's statutory right to weigh in on the materiality of a knowing misrepresentation … against the district court's inherent power to control its own docket and to prevent abuse in its proceedings." *Id.,* at 1056.

Further, the "plain language of the statute … requires the inaccurate information to be 'included on the application … with knowledge that it was inaccurate.'" *Energy Intelligence Group,* 304 F.Supp. 3d at 1063, quoting 17 U.S.C. §411(b). The intent requirement is "also supported by the Register of Copyrights [which] create[d] a new procedure…that requires courts

to seek the advice of the Copyright Office on issues that may involve fraud on the Copyright Office." *Id.*, quoting U.S. Copyright Office, Annual Report of the Register of Copyrights, at 9 (2009); *see also, McNeese v. Access Midstream Partners, L.P.,* CIV-14-503-D, 2017 WL 972156, at *6 (W.D. Okla. Mar. 10, 2017), citing 17 U.S.C. §411(b) ("Inaccuracies in a certificate of registration ordinarily do not affect its validity unless (1) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (2) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.").

### III.    PLAINTIFF DID NOT PROVIDE FALSE INFORMATION TO THE COPYRIGHT OFFICE

#### A.    The TXu Application Contains the Correct Completion Date

On June 24, 2018, Plaintiff submitted her TXu application for a copyright to the United States Copyright Office, titled Ice Station Quellette. *See* Declaration of Cody R. LeJeune in Support of Plaintiff's Opposition to Defendants' Motion For Referral of Registration Questions Under 17 U.S.C. §411(b)(2) ("LeJeune Decl."), Ex. A. Plaintiff filed the TXu application on her own, without the assistance of an attorney. *See* Declaration of Lauren Adele Oliver in Support of Plaintiff's Opposition to Defendants' Motion For Referral of Registration Questions Under 17 U.S.C. §411(b)(2) ("Oliver Decl."), ¶2. Plaintiff filed the copyright application as an unpublished collection of work and listed 2015 as the completion date. *See* Dkt. No. 236-1, at 2.

After receiving the TXu application, the Copyright Office emailed Plaintiff on September 17, 2018 to inquire regarding the completion date. *See* LeJeune Decl., Ex. B, at 3. After several back-and-forth emails with the Copyright Office, Plaintiff provided a timeline of events concerning her collection, stating "I am so apologetic about the confusion." Id. at 1. After reviewing Plaintiff's timeline of events, the Copyright Office guided Plaintiff that 2017 was the

correct year of completion and asked for Plaintiff's "authorization to correct the record to give 2017 as the year of completion so that we can proceed with the registration." Id. Plaintiff responded giving the Copyright Office authority to amend her application to make 2017 the completion date. *See* LeJeune Decl., Ex. C, at 1. As confirmed by the public catalog on the Copyright Office's website, the TXu completion date is listed as 2017, based on the guidance from the Copyright Office. *See* LeJeune Decl., Ex. D.

Apparently turning a blind eye to the Copyright Office's public catalog and the documents detailed above that were produced in this litigation, Defendants claim that Plaintiff provided an incorrect completion date in the TXu application. *See* Motion, at 4-5. Though Plaintiff initially listed 2015 as the completion date for the unpublished collection, both the Copyright Office's public catalog and Plaintiff's correspondence with the Copyright Office clearly show that the completion date was changed to 2017 after Plaintiff received guidance from the Copyright Office. Thus, the Copyright Office was aware that Plaintiff initially listed 2015 as the completion date, extensively communicated with Plaintiff regarding the timeline of events surrounding the application, and corrected the completion date to 2017. Accordingly, Plaintiff correctly provided a completion date of 2017 to the Copyright Office for the TXu application.

**B.     Plaintiff Correctly Represented to the Copyright Office that her TXu Application was an Unpublished Collection**

Next, Defendants allege that Plaintiff misstated that the Ice Station Quellette was an unpublished collection and that the Copyright Office would have refused registration if known. Defendants' argument is flawed for numerous reasons.

First, Plaintiff provided a detailed timeline of events in email correspondence with the Copyright Office on December 21, 2018. *See* LeJeune Decl., Ex. B, at 3. Plaintiff's timeline is set forth below:

> Here's a timeline of the space owl appearances, with attached images.
>
> Fall 2012:
> The space owl character debuts at a group art show in Santa Fe.
>
> Summer 2015:
> The Ice Station makes its debut as a comprehensive art project at a gallery in Santa Fe.
>
> Fall 2015:
> The Ice Station has a second show in Santa Fe; space owl appears as small sculptures and in printed material.
>
> March 2016:
> The Ice Station room, featuring the tall furry space owl sculpture and the art in the portholes, is completed for the opening of the Meow Wolf exhibit in Santa Fe.
>
> December 2016:
> I complete the design and creation of the small furry space owl.
>
> January 2017 to present:
> Updating the language on the website, and sometimes photos.
>
> There have also been stickers and magnets and prints featuring different iterations of the owl and other Ice Station images during this entire period. These are on the web site -- did I furnish the web site address?
>
> Again, I am so apologetic about the confusion. Please advise. Thank you.

Thus, the Copyright Office was aware that Plaintiff was presenting an unpublished collection in her TXu application.

Second, the Copyright Act requires that the unpublished collection consist of "essentially all new collective works or all new issues that have not been published before." *Energy Intelligence Group,* 304 F.Supp. 3d at 1061, quoting 37 C.F.R. § 202.3(b)(9)(ii). Importantly, however, **"[t]his refers to the work as a whole, not the individual components within the collective work or issue**." *Id.*

Defendants claim that Plaintiff knowingly lied to the Copyright Office when she represented that the collective works were not published. However, when Plaintiff filed the TXu application, the collection – as a whole – had not been published. Thus, Plaintiff did not misstate any facts and was in fact truthful to the Copyright Office when she stated that the collection had

not been published. Accordingly, Plaintiff's TXu application was truthful and did not misstate any facts.

  **C.**  **Plaintiff's VA Application Does Not Contain Any Misstatements**

Defendants lastly claim that Plaintiff's VA Registration contains a misstatement because she did not design a bench shown in the exhibit. This argument from Defendants too falls flat for numerous reasons.

First, the Copyright Act does not protect a useful article, which is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Star Athletica, L.L.C. v. Varsity Brand, Inc.,* 137 S. Ct. 1002, 1008 (2017). And the design of a useful article can be protected only if that design "incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id*. As seen from the pictures depicting the bench, there are no design aspects that exist independently of the utilitarian aspects of the bench. *See* Dkt. No. 236-3, at 6.

Plaintiff's statement that the bench was copyrighted in her deposition is a red herring. Plaintiff is not a copyright attorney. As set forth above, the bench is not eligible for copyright protection. In fact, Plaintiff did not have knowledge whether the bench was copyrighted. *See* Oliver Decl. ¶3. Plaintiff simply meant that any sculptural design elements of the bench were attributable to Katherine Lee. *Id*.

Second, even if Plaintiff failed to identify the bench as a preexisting material, the Compendium of Copyright law provides an exception that "when an applicant fails to identify preexisting material…the examiner may still accept the application if the scope of the claim is clearly identified by the deposit copies." *Energy Intelligence Group,* 304 F.Supp. 3d at 1060.

Here, Plaintiff provided the basis of claim as the photograph, 2-D artwork, sculpture and text. *See* LeJeune Decl., Ex. E. Accordingly, Plaintiff never intended to deceive the Copyright Office regarding the origin of the bench.

### IV. PLAINTIFF DID NOT INTEND TO DECEIVE OR DEFRAUD THE COPYRIGHT OFFICE

Plaintiff did not misstate any facts to the Copyright Office. Further, Plaintiff certainly did not knowingly misstate anything in her copyright applications. The 2nd prong of the test under 17 U.S.C. §411(b)(2) requires that any misstatement of fact be made knowingly. *Energy Intelligence Group,* 304 F.Supp. 3d at 1055. In fact, Defendants must show that Plaintiff "intended to defraud the Copyright Office." *Id* at 1063. The Court in *Energy Intelligence* reiterated that this requirement "is supported by the plain language of the statute, which requires the inaccurate information to be 'included on the application…with knowledge that it was inaccurate.'" *Id,* quoting 17 U.S.C. §411(b). Further, *Energy Intelligence* explains that the requirement is "also supported by the Register of Copyrights [which] create[d] a new procedure…that requires courts to seek the advice of the Copyright Office on issues that my involve fraud on the Copyright Office." *Id*., quoting U.S. Copyright Office, Annual Report of the Register of Copyrights, at 9 (2009).

As shown in Plaintiff's email correspondence with the Copyright Office, Plaintiff was extremely forthcoming and provided the Copyright Office with a detailed timeline of events surrounding her collection. *See* LeJeune Decl., Ex. A-C; Oliver Decl., ¶4-5. In fact, the Copyright Office was aware of all dates associated with the TXu application based on the timeline provided by Plaintiff. *Id*. This included both the completion dates and the publication dates for the TXu application. Further, Plaintiff took the advice of the Copyright Office when she confirmed that the completion date for the TXu application was 2017.

As set forth above, the only "discrepancy" set forth by Defendants regarding the VA application is that it included photographs of a bench, which cannot receive copyright protection. Regardless, Plaintiff also did not intend to defraud the Copyright Office in her VA application. Plaintiff provided the basis of claim as the photograph, 2-D artwork, sculpture and text. *See* LeJeune Decl., Ex. E. Indeed, as Defendants' Motion states, Plaintiff testified during her deposition that "I didn't realize I did that, and I think that was probably a slip." Motion, at 8. In other words, Plaintiff did not knowingly provide the bench to the Copyright Office, but instead included the bench unknowingly and accidentally. Oliver Decl., ¶3-5. Accordingly, Plaintiff never intended to deceive the Copyright Office regarding the origin of the bench

## V.   CONCLUSION

For the reasons stated herein, the Court should summarily deny Defendants' Motion.

Dated: November 18, 2021                     LEJEUNE LAW, PC

By: */s/ Cody R. LeJeune*
CODY R. LEJEUNE
2801 Camino Del Rio S, #200A
San Diego, California 92108
(985) 713-4964
cody@lejeunelawfirm.com


FREEDMAN BOYD HOLLANDER
GOLDBER URIAS & WARD PA

VINCENT J. WARD
20 First Plaza, Ste. 700
Albuquerque, New Mexico 87102
(505) 842-9960
(505) 842-0761 facsimile
vjw@fbdlaw.com

                ERICKSEN ARBUTHNOT

                JESSE A. BOYD
                2300 Clayton Road, Suite 350
                Concord, California 94520
                (510) 832-7770
                (510) 832-0102 facsimile
                jboyd@ericksenarbuthnot.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing filing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

November 18, 2021                                    /s/Cody R. LeJeune