## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,

      Plaintiff,

v.                                                            Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
Corporation; VINCE KADLUBEK,
An individual and officer; and
DOES 1-50,

      Defendants.

### PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT DISMISSING CLAIMS AGAINST DEFENDANT VINCE KADLUBEK

### INTRODUCTION

Plaintiff Lauren Oliver ("Plaintiff") hereby responds to Defendant Vince Kadlubek's ("Defendant Kadlubek" or "Kadlubek") motion for summary judgment as to Plaintiff's claims against him (Doc. 348).  To the extent Defendant Kadlubek was acting on behalf of an LLC, that principal was not disclosed, and therefore he is liable on any contract or any promises purportedly made on its behalf.  In addition, he personally participated in, or committed, tortious conduct, making him liable therefor notwithstanding any status as an officer, member, or shareholder.  As explained below, questions of fact abound as to all of Plaintiff's claims against Kadlubek, his motion is without merit, and it should be denied.

### RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND ASSOCIATED ADDITIONAL MATERIAL FACTS

**Kadlubek Statement of Fact 1.**     On October 21, 2014, Art City was formed as a New Mexico limited liability company doing business as "Meow Wolf." Doc. 212-4, at 3 (Art City's

certificate of organization was filed on October 21, 2014); Doc. 298-11, at 2 (Art City operating agreement providing "d.b.a. Meow Wolf"). "The purposes for which the Company is formed are (a) to open and operate arts centers in Santa Fe, New Mexico and possibly other locations . . . ." Doc. 298-11, at 2.

**Plaintiff's Response to Fact 1:**  Disputed in part and requiring clarification and context. VCMSE Art City, LLC obtained a certificate of organization dated October 17, 2014.  *See* Exhibit 1 hereto.  On the certificate, "VCMSE Art City LLC" (hereinafter "VCMSE" or "Art City") does not include a "d.b.a." and there is no reference to "Meow Wolf."  *Id*.  Despite requests, which are subject to a pending motion to compel, Defendants have not produced the referenced "Articles of Organization," thus, it is unknown if "Meow Wolf" is referenced therein. Aside from "d.b.a. Meow Wolf," the term "Meow Wolf" does not appear in the referenced operating agreement.  *See* Doc. 298-2.

**Plaintiff's Additional Fact A:**  The "VCMSE" in VCMSE Art City, LLC is an acronym made up of the first initials of the first names of Vince Kadlubek, Caity Kennedy, Matt King, Sean Di Ianni, and Emily Montoya.  Deposition of Sean Di Ianni, Mar. 18, 2022, 58:19-22, attached hereto as Exhibit 2.

**Plaintiff's Additional Fact B:**  At the time of VCMSE's formation, another entity, Meow Wolf LLC was in existence.  *See See* Search Information for "Meow Wolf" entities available at https://portal.sos.state.nm.us/ (Meow Wolf LLC formed in 2011); Doc 298-3 (Meow Wolf LLC dissolution 2017).

**Plaintiff's Additional Fact C**:  In filings related to Meow Wolf LLC's dissolution, Defendant Kadlubek represented himself as the "sole member" of Meow Wolf LLC.  *See* Doc. 298-3.

**Plaintiff's Additional Fact D**:  Meow Wolf LLC obtained a business license on August 11, 2015 as "Meow Wolf LLC d.b.a. Meow Wolf LLC," *see* Exhibit 3 hereto, and entered a contract with the City of Santa Fe in November of 2015.  *See* Doc. 298-2.

**Plaintiff's Additional Fact E**:  VCMSE Art City, LLC has never applied for or received a business license with the City of Santa Fe.  *See* Doc. 352-1 at Exhibit 2 (p. 14-16 of document).

**<u>Kadlubek Statement of Fact 2:</u>**  Mr. Kadlubek was CEO of Art City and had authority to and did contract with Ms. Oliver on behalf of Art City. Doc. 298-11, at 5 (designating Mr. Kadlubek CEO of Art City).

**Plaintiff's Response to Fact 2:**  Disputed.  In no communication or other document received by Plaintiff prior to the opening of House of Eternal Return was the name "VCMSE Art City, LLC" mentioned.  Defendant Kadlubek did not contract with Plaintiff "on behalf of Art City."  *See e.g.* *See* Doc. 352-1 at Exhibit 2 (p. 14-16 of document) (VCMSE never obtained a City of Santa Fe business license); Deposition of Jared Nicholson, Doc. 298-17 at 138:5-139:14 (Kadlubek presenting VCMSE Art City, LLC to Nicholson as an entity that "just covers invoices every once in a while… like an old hat that sometimes… Meow Wolf people put on to pay an invoice").

**Plaintiff's Additional Fact F**:  The April 2, 2015 "Meow Terms" email relied upon by Defendant Kadlubek does not mention "VCMSE Art City, LLC" or "CEO;" it is signed only "vince."  *See* Doc. 278-1.

**Plaintiff's Additional Fact G**:  Defendant Kadlubek cannot present any document showing that Oliver was informed about the existence or nature of VCMSE prior to opening.  *See* Rule 30(b)(6) Deposition of Meow Wolf, Inc., Nov. 22, 2021 ("MWI Dep."), 153:14-154:18, attached hereto as Exhibit 4.

**Plaintiff's Additional Fact H**:  Plaintiff believed she was dealing with members of the Meow Wolf Collective, of which she was led to believe she was a member.  *See* Doc. 298-18.

**<u>Kadlubek Statement of Fact 3:</u>** Art City asked Ms. Oliver to submit an art proposal for HoER, which she did. Oliver Interrogatory Answers, Doc. 278-4, at 21 ("In early 2015, Caity Kennedy reached out and asked Plaintiff to submit a proposal, which Plaintiff ultimately did); Doc. 297, at 11 (acknowledging Caity Kennedy was acting on behalf of Art City).

**Plaintiff's Response to Fact 3:**  Disputed.  VCMSE did not ask Plaintiff to submit a proposal.  Caity Kennedy asked her to as an apparent member of what Plaintiff believed to be the Meow Wolf Collective.  Again, Plaintiff did not know of VCMSE's existence until after HoER opened in March of 2016.  *See* Plaintiff's Additional Facts G, H.

**Plaintiff's Additional Fact I**: "Meow Wolf" was reasonably understood by Plaintiff and the community at large to be an artist collective, not an LLC owned by a few people.  *See e.g.* Doc. 288-10 (City of Santa Fe Resolution referring to "Meow Wolf" as a "grass roots artist collective"); T.S. Last, Art Collective Gets $60,000 Allocation from City of Santa Fe, ALBUQUERQUE JOURNAL, Nov. 11, 2015, attached hereto as Exhibit 5; Deposition of Marisa Frantz, Feb. 15, 2022 ("Frantz Dep."), at 49:7-50-25, attached hereto as Exhibit 6;

**<u>Kadlubek Statement of Fact 4:</u>**  On behalf of Art City, Mr. Kadlubek sent Ms. Oliver an email "about the contractual terms for your involvement in the Meow Wolf project," offering to buy her materials, pay her a $1000 initial stipend, and a $10,000 revenue share stipend in exchange for her installing her work in HoER. Doc. 278-1 (emphasis added); Doc. 297, at 8, 15 (acknowledging the offer was for $10,000). See Doc. 278-5, at 251:25-252:9, 212:21-25, 192:5-10; Doc. 330-6, at 584:2–19.

**Plaintiff's Response to Fact 4:**  Disputed.  The email in question did not include any reference to an LLC, much less VCMSE Art City, LLC.  *See* Doc. 278-1. At the same time, Defendant Kadlubek was continuing to operate Meow Wolf LLC, apparently as its "sole member." Plaintiff's Additional Fact C.

**Plaintiff's Additional Fact J**:  The email contains a glaring typo, ambiguous language, and a reference to a formal contract, which led Plaintiff to disregard it.  *See* Doc. 278-1; *see e.g.* Deposition of Lauren Oliver, Mar. 26, 2021 ("Oliver Dep.") at 241:25-243:15, attached hereto as Exhibit 7.

**Plaintiff's Additional Fact K**:  The email references a separate "contract" which Plaintiff requested on April 22, 2015, but never received.  *See* Doc. 170-12.

**Kadlubek Statement of Fact 5:**  The performance requested of Ms. Oliver was that she install her artwork in time for HoER's opening, which she did. Doc. 278-4, at 19 ("Upon completion of installation of ISQ at HoER, Plaintiff had fulfilled her obligations under the parties' contract.").

**Plaintiff's Response to Fact 5:**  Disputed.  "Performance" is not referenced in the email, and the scope of the "project(s)" is not defined.  *See* Doc. 278-1.

**Plaintiff's Additional Fact L**:  At the time of the Meow Terms email, neither Plaintiff nor the Defendants understood how extraordinary the investment of time and labor would be for Plaintiff and the other artists to install their work.  *See* Deposition of Sean Di Ianni, Apr. 14, 2021, at 81:16-83:13, attached hereto as Exhibit 8.

**Kadlubek Statement of Fact 6:** Ms. Oliver attended large group meetings with other artists working on HoER, called "All Shrimps" meetings, where Mr. Kadlubek discussed how artists like Ms. Oliver would be paid their revenue share if HoER was profitable. Doc. 278-4, at 11 ("Plaintiff could not be assured of any payment if the venture was not a success, but if it were,

she would proportionally share in that success through a share of revenue and membership in the collective"); Doc. 278-5, 234:6–10 (A. "[T]he promise or offer that I heard was in the late summer and fall [of 2015], and this was conveyed verbally at meetings with everybody."). Lauren Oliver Deposition, attached as Exhibit A, at 524:20–25 (Q. "So did you go to All Shrimps meetings in 2015?" A. "The All Shrimps were the meetings I went to.").

**Plaintiff's Response to Fact 6:**  Plaintiff attended group meetings, but not all of them.  The revenue share was not stated in the meetings with reference to a particular individual's identified revenue share, rather it was a promise of a share of revenue to which the artists, as members of the Meow Wolf Collective, would be entitled and which would be proportional with the success of the venture.  *See e.g.* Oliver Dep. at 121:6-122:6, 281:9-282:8, Exhibit 7 hereto; Deposition of Liberty Yablon, Feb. 28, 2022 ("Yablon Dep."), at 97:13-19, 105:2-17, 202:15-24, 320:3-321:12, attached hereto as Exhibit 9.

**<u>Kadlubek Statement of Fact 7:</u>**  There was no representation in those meetings about whether the artist revenue share would be capped or uncapped. Ex. A, at 609:1–20. And there was no specific promise regarding a percentage of revenue, ownership, equity, stock, or shares of ownership in a limited liability company. Doc. 297, at 9; Doc. 278-5, at 45:7-15 ("Q. Ms. Oliver, did anyone ever promise you a specific percentage or amount of stock options in Meow Wolf? … [A]. No."); Doc. 278-5, at 46:22-25 ("Q. … Did anyone ever promise you a specific percentage or amount of equity in Meow Wolf? A. No."); Doc. 278-5, at 48:12-14 ("Q. … Did anyone promise you shares of stock in Meow Wolf? A. No specific shares of stock."); Doc. 278-5, at 48:15–20 ("Q. Did anyone promise you shares of ownership in an L.L.C. in Meow Wolf?" "A. No.").

**Plaintiff's Response to Fact 7:**  The share of revenue promised in meetings was presented with an implication that it was an actual share not a particular capped amount or coming from a capped fund.  *See e.g.* Yablon Dep. at 320:3-321:12, Exhibit 9 hereto; Deposition of Kate Lesta, Oct. 8, 2020 ("Lesta Dep."), 41:11-17, attached hereto as Exhibit 12.

**Plaintiff's Additional Fact M**: Defendant Kadlubek's representations in the meetings led to a reasonable understanding that the members of the Meow Wolf Collective would share in ownership.  *See e.g.* Deposition of Blake Cahill, Feb. 4, 2022 ("Cahill Dep."), 81:11-21, 82:10-17, 132:17-133:21, attached hereto as Exhibit 10.

**Plaintiff's Additional Fact N**:  Defendant Kadlubek's statements, and among others, those of Caity Kennedy, led to a reasonable understanding that the promised share of revenue would be fair.  *See e.g.* Yablon Dep.at 37:16-20, Exhibit 9 hereto.

**Kadlubek Statement of Fact 8:**  Art City contracted with artists who, like Ms. Oliver, worked on constructing exhibits within HoER. See, e.g., Liberty Yablon Revenue-Based Bonus Payment Agreement, attached as Exhibit B.

**Plaintiff's Response to Fact 8:**  Defendants have regularly referenced "112 artists."  The example of a "contract" attached as Exhibit B to Kadlubek's motion is one of only 18 produced in this litigation, of which, only 6 are fully executed; thus, there is no evidence supporting pre-opening contracts with 94 or the 112.  Indeed, this has been acknowledged by Caity Kennedy. *See* Email exchange between Caity Kennedy and Brian Hart, Jun. 3-4, 2016, attached hereto as Exhibit 11.

**Plaintiff's Additional Fact O**:  Defendants, including Defendant Kadlubek, were actively avoiding contracts with artists during installation at HoER, and precluding General Manager Kate Lesta from making contracts with artists, which was part of her role.  Lesta Dep. at 74:9-

75:4, 162:17-163:13, attached hereto as Exhibit 12 ("I was told that the terms were going to change, that it was too uncertain, that we just didn't know what was going to happen, and that we should not put anything in writing because the terms were going to change." "So I wasn't allowed to make contracts at the time when I asked to.").

**Plaintiff's Additional Fact P**: Defendant Kadlubek was actively concealing the identity of VCMSE from participating artists, business partners, and the City of Santa Fe.  *See e.g.* Deposition of Jared Nicholson, Doc. 298-17 at 138:5-139:14; City of Santa Fe Business License, Exhibit 3 hereto; Doc. 288-10 (City of Santa Fe Resolution referring to "Meow Wolf" as a "grass roots artist collective"); Doc. 298-2 (November 2015 Contract between City of Santa Fe and Meow Wolf LLC).

**Plaintiff's Additional Fact Q**:  Had Defendant Kadlubek been transparent about VCMSE's purported role in HoER, and its ownership structure, the project would not have obtained the support of the volunteers, donors, City, and community at large that it did.  *See e.g.* Frantz.Dep. 49:7-50-25, Exhibit 6 hereto; Cahill Dep. at 146:6-11, Exhibit 10 hereto.

**<u>Kadlubek Statement of Fact 9:</u>**  Ms. Oliver accepted payment of her $1,000 stipend, budgeted her materials which Art City bought, and Ms. Oliver accepted payment of $2,000 toward her $10,000 revenue share balance. See Doc. 278, at 8 and Doc. 297, at 16 (acknowledging receipt of $1,000 and not disputing that she directed the money to Cary Cluett); Doc. 330-6, at 584:2–19 (acknowledging payment of materials); Doc. 330-7, at 1 (acknowledging of $2,000 payment toward revenue share).

**Plaintiff's Response to Fact 9:**  $1,000 was presented to Plaintiff as a "labor budget," not a personal stipend, which "labor budget" she suggested be paid to Cary Cluett because he had contributed considerable labor as her fabrication volunteer. *See* Oliver Dep. at 182:9-188:10,

Exhibit 7 hereto.  Plaintiff did not "accept" $2,000 "toward her $10,000 revenue share balance." The referenced money was labeled "artist liability payment," and was combined with proceeds of gift-shop sales, which left her confused about what it was.  *See e.g.* Doc. 330-7.  Assuming *arguendo* the $2,000 "payment" relates to some revenue share, it would be the share promised to Plaintiff at meetings.  *See* Plaintiff's Additional Facts J, K, and L.  It should also be noted that the June 3, 2019 "cruel ultimatum" meeting referenced in Plaintiff's Amended Complaint was called very shortly after Plaintiff deposited the check that contained the $2,000 "artist liability payment," from which one can reasonably infer that Defendants' considered it a "gotcha."

**Plaintiff's Additional Fact R**:  To the extent the "payment" relates to the Artist Bonus Program ("ABP") as Defendant MWI has asserted in its Counterclaim, at time of the "payment" Defendants had set Plaintiff's "bonus" at $7,000 without Plaintiff's knowledge.  *See* Defendant MWI's Counterclaim, Doc. 183 at ¶21.  In addition, all such "bonus payments" under the ABP were at the "absolute discretion" of Meow Wolf, Inc., and "not considered compensation…"  *See* Doc. 298-25.

**Kadlubek Statement of Fact 10:**  Art City merged into MWI on December 30, 2016. Doc. 212-4, at 3.

**Plaintiff's Additional Fact S**:  When it was created in 2011, after the Meow Wolf Collective's "Due Return" project, Defendants' claim Meow Wolf LLC acquired all equity in the Meow Wolf Collective, aside from the trademark, which was registered in an individual, David Loughridge. *See e.g.* MWI Dep. at 130:22-131:3.

**Plaintiff's Additional Fact T**:  Donations related to the Meow Wolf Collective's "Due Return" project (which totaled more than $100,000) were deposited in Meow Wolf LLC's bank account. *See* MWI Dep. at 117:17-22.

**Plaintiff's Additional Fact U**: Throughout 2015, Meow Wolf LLC continued to do business, enter contracts, and promise to pay HoER contractors.  *See* City of Santa Fe Business License, Exhibit 3 hereto; Doc. 298-2 (November 2015 Contract between City of Santa Fe and Meow Wolf LLC), Letter from Sean Di Ianni, September 14, 2015, attached hereto as Exhibit 13.

**Plaintiff's Additional Fact V**:  At the time of the VCMSE/MWI merger, Meow Wolf LLC still existed, and Defendants have produced no evidence that MWI merged with or obtained any assets of Meow Wolf LLC.  *See* Doc. 298-3; Pending Motion to Compel, Doc. 243.

**Kadlubek Statement of Fact 11:**  Mr. Kadlubek has not been CEO of MWI during the duration of this lawsuit.30(b)(6) Deposition of MWI, attached as Exhibit C, at 179:23–25 (Q. "[w]hen did you stepdown as CEO of Meow Wolf?" A. "November 2019.").

**Plaintiff's Response to Fact 11:** Plaintiff does not have sufficient information dispute Defendant Kadlubek's testimony as presented, but reserves the right to do so should contrary information arise.

**Kadlubek Statement of Fact 12:**  ISQ inside of HoER is appropriately attributed to Ms. Oliver. Ex. A, at 538:21–539:6 (Q. "I believe in the Ice Station room you have a little badge with your website on it, right? A. "Yes, I do." Q. "Did you design that and install it?" A. "I designed it, yeah" Q. "Okay, so that's the way you wanted it in the ISQ room I assume; right?" A. "Yeah, that seems to be the most that it would be, you know, the – yes, that was fine with me.")

**Plaintiff's Response to Fact 12:**  ISQ is not appropriately attributed to Plaintiff.  While infringing Plaintiff's copyrights, Defendants regularly pasted "Meow Wolf" on top of reproductions of her Space Owl in media and promotional materials.  *See* Doc. 78, p. 42; Email exchange between Lauren Oliver and Vince Kadlubek, Feb. 26, 2016 (Kadlubek falsely indicating "respect" for Oliver's statement to him that her work "can't… be under a different

name… [and she] need[ed] to keep all [her] material under the Ice Station Quellette umbrella, particularly because it deals with a narrative and characters and titles, etc."), attached hereto as Exhibit 14.  Recently, Plaintiff discovered that the ISQ credits page on their website was changed to incorporate a new infringing reproduction of Plaintiff's work along with a "Todos 7" narrative, in direct violation of Plaintiff's expressed limitations on the use of her work.  *See* Ice Station page on Meow Wolf, Inc. website, available at https://credits.meowwolf.com/house-of-eternal-return/portals-bermuda/ice-station, last visited April 27, 2022.

## INDEPENDENT ADDITIONAL MATERIAL FACTS

**Plaintiff's Additional Fact W**:  Defendant Kadlubek knew Plaintiff did not have an "understanding" about her "relationship" with "Meow Wolf" and whether she was "on board with where the payments are going…"  Deposition of Vince Kadlubek, Apr. 16, 2021, 220:21-221:18, attached hereto as Exhibit 15.

**Plaintiff's Additional Fact X**:  Payments under the ABP are not compensation for labor put into, or art installed at, HoER.  *See* Doc. 298-25; Lesta Dep. at 89:4-90:20, Exhibit 12 hereto.

**Plaintiff's Additional Fact Y**:  Defendant Kadlubek personally and primarily participated in the wrongful acts alleged by Plaintiff.  *See e.g.* Oliver Dep. at 121:6-122:6, 281:9-282:8, Exhibit 7 hereto; Yablon Dep. at 97:13-19, 105:2-17, 202:15-24, 320:3-321:12, Exhibit 9 hereto; Lesta Dep. at 74:9-75:4, 162:17-163:13, Exhibit 12 hereto; *see also* Tom Tom Foundation, Video Entitled Meow Wolf Founder Vince Kadlubek – CREATIVITY: Building Outside the Box, at minute 11:00-12:54, available at https://www.youtube.com/watch?v=ilKlPODzdko, last visited 4/27/22 (speaking about his experiences in the leadup to HoER, "It was at Creative Startups

where I realized all of my scamming and shoplifting and hustling, and, like – I always kind of thought of myself as a criminal, but actually I was an entrepreneur.").

**Plaintiff's Additional Fact Z**:  Defendant Kadlubek participated in and endorsed the use of volunteers at HoER despite Defendants' claim that HoER was produced and owned by for-profit VCMSE, and despite U.S. Department of Labor Guidance indicating the utilization of volunteer labor by for-profit companies is a violation of the Fair Labor Standards Act.  *See* MWI Dep. at 157:1-17; *See generally e.g. Rhea Lana, Inc. v. United States Dep't of Labor*, 271 F.Supp.3d 284 (D.D.C. 2017) (noting the Department's interpretation of FLSA as "prohibiting private, for-profit companies from using unpaid volunteers," and granting summary judgment to the Department with regard to its determination that "consignor/volunteers" who performed labor at a consignment business for no pay while their items were on consignment were "employees" subject to FLSA.).

## ARGUMENT

### I.  Legal Standard

Summary judgment is allowed under Rule 56 "when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."  *E.g. Duran v. United Tactical Sys.*, 2022 U.S. Dist. LEXIS 27726, at *10 (D.N.M. Feb. 16, 2022).  "When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Chavez v. Qwest, Inc.*, 483 F. Supp. 2d 1103, 1107 (D.N.M. 2007).  "The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact."  *Id.*

**II.  Defendant Kadlubek is Personally Liable in Contract, Quasi-Contract, and Tort**

Defendant Kadlubek asserts that he is not "personally liable" for the debts, obligations and liabilities" of an LLC of which he is a member.  However, he fails to point out that the rule only applies to cases of vicarious liability where the agent of the entity has not participated in the actionable conduct.  *See Harvey v. Thi of N.M.*, 2015 U.S. Dist. LEXIS 182695, at *8 (D.N.M. Mar. 31, 2015).  To wit:

> "[i]t is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries resulting therefrom."

*Brophy v. Ament*, 2008 U.S. Dist. LEXIS 95879 at *20 (D.N.M. 2008), *quoting Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958); *accord* NMSA 1978 § 53-19-13 ("Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable."); *Harvey*, 2015 U.S. Dist. LEXIS 182695, at *8 (noting "New Mexico holds that:  Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and *regardless of whether the corporation is also liable*." (emphasis in original)); *Kaveny v. MDA Enters.*, 2005-NMCA-118, ¶¶ 18-25; *Stinson v. Berry*, 1997-NMCA-76, ¶18 (directors engaging in tortious conduct may be held liable, even if they are acting within the scope of corporate duties).  In addition, "an agent who enters a contract for an undisclosed principal or a partially disclosed principal will be liable as a party to the contract."  *Farmers All. Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1175 (D.N.M. 2006) (citations and quotations omitted).  Finally, where contract and quasi-contract claims are plead in the alternative, "until a jury determines whether there was or was not a binding contract between the parties, it would be

premature to dismiss the… quasi-contract claims" on summary judgment.  *E.g. Becker v. HSA/Wexford Bancgroup, L.L.C.*, 157 F.Supp.2d 1243, 1253 (D. Utah 2001).

**A.    Defendant Kadlubek is liable for any contracts entered and promises made, as the purported principal was not disclosed.**

Contrary to Defendant Kadlubek's assertion, Plaintiff absolutely did not contract with VCMSE.  Indeed, had she known she was dealing with a for-profit LLC named after its "founders," and that the company would claim all control and equity in any success that flowed from her labor and art, she would not have participated in the venture.  *See* Doc. 298-18 at ¶14.

"It is hard to imagine a contract term more essential than the identity of the parties."  *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010).  "To constitute a valid contract, the minds of the parties must have met on the identity of the persons with whom they are dealing. Everyone has a right to select and determine with whom he will contract and another cannot be thrust upon him without his consent. It is immaterial whether the offerer had special reasons for contracting with the offeree rather than with someone else."  *Polhamus v. Roberts*, 1946-NMSC-033, ¶ 20.  "Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent…"  *Arkansas Valley Smelting Co. v. Belden Co.*, 127 U.S. 379, 387 (1888); *see also e.g. Rexa, Inc. v. Chester*, 2020 U.S. Dist. LEXIS 165615, at *40 (N.D. Ill. Sep. 10, 2020) (quoting same language in another case).  All of this is because "[y]ou have the right to benefit you anticipate from the character, credit and substance of the party with whom you contract."  *Id.* (citation and quotation omitted).

There is ample evidence that Defendant Kadlubek knew the name VCMSE Art City, LLC might raise questions, and avoided using it with people who might ask them.  *See e.g.* Deposition of Jared Nicholson, Doc. 298-17 at 138:5-139:14; Plaintiff's Additional Facts A, Q.  At the very

minimum, Kadlubek's actions can reasonably lead to such an inference.  Indeed, it belies logic

that the City of Santa Fe would have supported "Meow Wolf" as they did, that people would

have donated money and materials, or that hundreds of people would have volunteered their

labor if it became known that the organization was not the "grass roots artist collective"

Defendant Kadlubek advanced.  It is also reasonable to infer Kadlubek understood that if the

artists, volunteers, and community knew the "character, credit and substance" of the entity that

would claim all equity in "Meow Wolf" the project would not have obtained the buy-in it did.

*See Arkansas Valley Smelting Co.*, 127 U.S. at 387.

Importantly, in none of the communications Defendant Kadlubek had with Plaintiff prior

to the opening of HoER is VCMSE Art City, LLC named.  Indeed, the Meow Terms email upon

which Defendants' case apparently relies concludes simply:

Thanks! Excited to work with you!

vince

Doc. 278-1.  To the extent "Meow Wolf" is mentioned, it would be reasonable to infer it was in

reference to the Meow Wolf Collective with which Plaintiff believed she was dealing.  To the

extent Defendant Kadlubek argues "Meow Wolf" refers to VCMSE's "d.b.a.," it will be of no

help as

[t]he law requires that the true identity of the principal [be] explicitly disclosed…
disclosure of an agency is not complete for the purposes of relieving the agent
from personal liability unless it embraces the name of the principal.  *Nor is it
sufficient if the agent merely uses the trade name of the principal.*

*Janke v. Brooks*, 2012 U.S. Dist. LEXIS 51297, at *16-17 (D. Colo. Apr. 11, 2012) (emphasis

added).

Regardless of which entity Defendant Kadlubek asserts he was representing, he is

personally liable on any contracts that may have been created as he failed to "explicitly" disclose

its "true identity."[1]  *See id.*  Defendant Kadlubek's motion should be denied as to Plaintiff's

contract claim.

**B.      Kadlubek is also liable on Plaintiff's promissory estoppel and unjust enrichment claims**

Defendant Kadlubek's argument that Plaintiff's "quasi-contractual" claims fail is based

entirely on the extension of his argument that New Mexico's Limited Liability Statute shields

him from liability because he was purportedly acting as an officer of an LLC.  The argument

ignores the portion of NMSA 1978 § 53-19-13 that states "[n]othing in this section shall be

construed to immunize any person from liability for the consequences of his own acts or

omissions for which he otherwise may be liable."  As shown by the clear authority stated herein,

under New Mexico law, Defendant Kadlubek is personally liable in contract and in tort.  The

case cited by Kadlubek to support the idea that quasi-contractual claims against an individual

acting on behalf of a corporation should be dismissed along with a contract claim is

distinguishable in that the individual defendant's principal in that case was fully known to the

plaintiff at the time of the alleged promises, and there was no tort claim involved.  *See generally*

*Shelvin-Sandy v. Ath. Specialties, LLC*, 2020 U.S. Dist. LEXIS 147495 (N.D. Ill. 2020).  Other

reported cases involving agent/principal issues and the participation of corporate officers in

tortious activity hold to the contrary.  *See e.g. Shentel Indus. LLC v. Adin Dental Implant Sys.*,

493 F.Supp.3d 64, 137 (E.D.N.Y. 2020) (denying summary judgment as to liability of corporate

officer individually as to unjust enrichment and promissory estoppel claims).

---

[1] This is especially true since there is not sufficient evidence to establish MWI acquired any contract with Plaintiff through its merger with VCMSE, acquisition of assets from Meow Wolf LLC, or otherwise.  *See generally* Plaintiff's Response and proposed Surreply to Defendant's Motion for Partial Summary Judgment.  Docs. 297, 298, Doc. 352-1.  Given documents recently obtained through IPRA requests, Plaintiff may dismiss her contract claim against MWI.

16

Putting aside that unjust enrichment "'constitutes an independent basis for recovery in a civil law action, analytically and historically distinct from… contract and tort,'" Order on Motion to Dismiss, Doc. 59 at 50-51, in this case, both Plaintiff's claims for unjust enrichment and promissory estoppel are founded in misrepresentations, and thus sound more in tort than in contract.  Regardless, to the extent Defendant Kadlubek is liable for any contracts, it follows that he is also liable in quasi-contract; to the extent Plaintiffs unjust enrichment and promissory estoppel claims sound in tort, he is liable thereon as well.  *See Farmers All. Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1175 (D.N.M. 2006); *Borphy v. Ament*, 2008 U.S. Dist. LEXIS 95879 at *20 (D.N.M. 2008); *see also Becker v. HSA/Wexford Bancgroup, L.L.C.*, 157 F.Supp.2d 1243, 1253 (D. Utah 2001).  Summary judgment as to Plaintiff's unjust enrichment and promissory estoppel claims against Kadlubek should be denied.

**C.  Defendant Kadlubek provides no basis to dismiss Plaintiff's constructive trust claim**

As to Plaintiff's constructive trust claim (or request for relief as the case may be), Defendant Kadlubek merely rehashes the cursory assertion made Defendants Rule 12(b)(6) motion to dismiss, which was previously denied by the Court.  *See* Doc. 59 at 42-44.  It should be denied here as well as Plaintiff has developed sufficient evidence to support it, and Defendant Kadlubek has not presented any facts to preclude it.

**III. FACTS SHOWING DEFENDANT KADLUBEK'S MATERIAL MISREPRESENTATIONS AND CONCEALMENT ABOUND**

As outlined above, "[i]t is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries resulting therefrom." *Borphy v. Ament*, 2008 U.S. Dist. LEXIS 95879 at *20

(D.N.M. 2008) (citations and quotations omitted).  Under New Mexico law, the elements of

fraud are:

> (1) a misrepresentation of fact, (2) either knowledge of the falsity of the
> representation or recklessness on the part of the party making the
> misrepresentation, (3) intent to deceive and to induce reliance on the
> misrepresentation, and (4) detrimental reliance on the misrepresentation.

*Cain v. Champion Window Co.*, 2007-NMCA-085, ¶ 22; *see also Kaveny v. MDA Enters.*, 2005-

NMCA-118 at ¶7.  "New Mexico case law clearly recognizes that a claim for fraud may be

predicated on concealment where there is a duty to disclose." *Azar v. Prudential Ins. Co. of Am.*,

2003-NMCA-062, ¶ 60 (quotation and citation omitted); *Wirth v. Commercial Res., Inc.*, 1981-

NMCA-057, ¶ 12, 96 N.M. 340, 630 P.2d 292 ("An omission as well as an act, may constitute

fraud.").

Here, at times when he knew them to be false, Defendant Kadlubek made clear

representations that "Meow Wolf" was a collective, Plaintiff was a member of that collective,

and with the installation of her art at HoER, she would be entitled to receive a share of revenue

proportional with the success of the venture.  *See e.g.* Plaintiff's Additional Facts H, I.  At the

same time, he hid the fact that an entity called VCMSE Art City, LLC would claim all the equity

in HoER while knowing it would affect Plaintiff's and others' (including the City of Santa Fe's)

willingness to participate.  *See e.g. id.*  Prior to the installation of her work, Defendant Kadlubek

knew Plaintiff did not have an "understanding" about her "relationship" with "Meow Wolf," thus

creating a duty to disclose.  *See e.g.* Plaintiff's Additional Fact W; *Krupiak v. Payton*, 1977-

NMSC-024, ¶ 3 ("A duty to disclose may arise if there is knowledge that the other party to a

contemplated transaction is acting under a mistaken belief.").  Plaintiff reasonably relied on

Kadlubek's representations in devoting months of labor with no up-front payment, a

considerable amount of her own money, and the installation of her flagship Ice Station Quellette

at HoER.  Only after her installation of ISQ was complete did Defendants reveal that membership in the Meow Wolf Collective meant nothing, and the promised share of revenue would never be paid.  *See* Plaintiff's Additional Facts M, N, O, P, W, X.

These facts show Defendant Kadlubek's motion as to Plaintiff's misrepresentation claims to be without merit, as genuine disputes abound.  Moreover, there is more than ample evidence to rebut the contrary facts presented by Defendant Kadlubek in support of his motion.

For example, the "formal written contract" Defendant Kadlubek mentions contained a work-for-hire provision directly contrary to the Meow Terms email upon which Defendant now rest their case.  *Compare* Independent Contractor Agreement (work for hire provision), attached hereto as Exhibit 16, *with* Doc. 278-1 ("It is important to note that you retain all intellectual property rights for your pieces…").  Aside from a vague, rebuttable (*see e.g.* Exhibit 11 hereto) declaration by Caity Kennedy, which in no way establishes Oliver learned of or understood the relevance of VCMSE to the HoER project, Defendant Kadlubek can point to no evidence showing the actual "deal" was different than the collective membership and share of revenue Kadlubek promised in meetings.

Plaintiff's reliance on Kadlubek's representations was reasonable.  Other artists and the general manager of the HoER project, Kate Lesta, have confirmed they had the same understanding.  *See e.g.* Plaintiff's Additional Facts M, N.  That "Meow Wolf" was receiving donations and utilizing volunteers greatly contributed to Plaintiff's comfort that HoER was being built for the benefit of the Meow Wolf Collective, not the owners of some corporate entity called VCMSE Art City, LLC.  *Cf. Rhea Lana, Inc. v. United States Dep't of Labor*, 271 F.Supp.3d 284 (D.D.C. 2017).  Additionally, despite contrary false testimony under oath, Defendant Kadlubek obtained a business license for, and continued to operate throughout the relevant time, a separate

entity called Meow Wolf LLC.  It can be inferred from these actions that Kadlubek knew he had

to keep the existence of VCMSE (and its ownership structure) hidden.  At a minimum, he should

have known the information was material to Plaintiff's (and others') buy-in to the HoER project,

and it was imperative that he ensure all involved had a clear understanding of what they were

devoting their labor, resources, and art to.

Plaintiff will prove Defendant Kadlubek's misrepresentations at trial and his motion for

summary judgment as to her claims based on them should be denied.

## IV. DEFENDANT KADLUBEK PARTICIPATED IN THE INFRINGEMENT OF OLIVER'S COPYRIGHTS AND IS THEREFORE LIABLE

Defendant Kadlubek returns to his assertion that he cannot be held liable for copyright

infringement or threatened violation of VARA ostensibly because he cannot be held vicariously

liable on such claims as a corporate officer.  However, his argument ignores that he personally

participated in the alleged infringing actions.  The limitations on shareholder and officer liability

does not apply where there is "wrongful conduct" by the person asserting the "shield."  *Brophy v.*

*Ament,* 2008 U.S. Dist. LEXIS 93605 (D.N.M. 2008) *16-17.

> The shield provides no protection when a member engages in actionable conduct.
> Liability in those circumstances can arise under both common law and statutory
> rule, and the fact that the member's conduct is in connection with, or even in the
> service of, a [corporate entity] will not negate liability.

*Id.*

Here, it was Kadlubek's wrongful actions that resulted in Defendants having dominion

and control over ISQ, and the resulting infringement of her copyrights through unlicensed public

display.  He was also personally involved in developing, approving, and disseminating infringing

pitch decks containing reproductions of Oliver's work.  He personally presented the ultimatum

threatening the removal of ISQ in violation of VARA.  To the extent damages flow from these

valid claims by Plaintiff, Defendant Kadlubek is liable for them. *E.g. id*. His arguments to the contrary are unavailing, and his motion for summary judgment as to Plaintiff's copyright and VARA claims should also therefore be denied.

## V. CONCLUSION

As outlined above, Defendant Kadlubek has failed to meet his burden on summary judgment, and his motion should be denied.


Date:  April 27, 2022                    Respectfully submitted,

                                         ERICKSEN ARBUTHNOT

                                         By:/s/ Jesse A. Boyd
                                                JESSE A. BOYD
                                                2300 Clayton Road, Suite 350
                                                Concord, CA 94520
                                                (510) 832-7770
                                                (510) 832-0102 facsimile
                                                jboyd@ericksenarbuthnot.com

**Certificate of Service**

I hereby certify that on April 28, 2022 a true and correct copy of the foregoing document and all referenced exhibits was served via CM/ECF on all interested parties.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

*/s/ Jesse A. Boyd*
Jesse A. Boyd