IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,

      Plaintiff,

vs.                                      Civ. No. 20-237 KK/SCY

MEOW WOLF, INC., a Delaware
Corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

      Defendants.

**ORDER GRANTING MOTIONS TO COMPEL**

In this discovery dispute the parties argue over whether Plaintiff Oliver is entitled to records related to the corporate business structure and history of Defendant Meow Wolf. Unable to reach an agreement, Plaintiff filed her "Motion to Compel Production of Documents from Defendant Meow Wolf, Inc." on November 11, 2021 (Doc. 243), and the parties finished briefing the motion on December 23, 2021 (Docs. 261, 271). She likewise filed her "Motion to Compel Production of Documents from Defendant Vince Kadlubek" on January 28, 2022 (Doc. 288), and the parties finished briefing the motion on February 17, 2022 (Docs. 295, 306). The Court grants Plaintiff's motions to compel, as set forth below.

Since its inception, several entities have used the name "Meow Wolf": Meow Wolf, LLC; VCMSE Art City, LLC d/b/a Meow Wolf; and Meow Wolf, Inc.[1] Plaintiff seeks business documents related to those different entities. Specifically, in her motion to compel documents from Defendant Meow Wolf, she seeks VCMSE Holding's governing documents (Request for

---

[1] It also appears that before Meow Wolf, LLC was formed the term "Meow Wolf" was used in connection with several art exhibits, including the 2011 "Due Return" exhibit. Doc. 261 at 1-2.

Production No. 33); Meow Wolf, Inc's governing documents (Request for Production No. 34); all agreements between Meow Wolf, LLC, VCMSE Art City, LLC, VCMSE Holdings, LLC, and Meow Wolf, Inc. related to the business structure and ownership of the "Meow Wolf" venture and the right to do business as "Meow Wolf" including asset purchase agreements, merger agreements, and agreements regarding the establishment and ownership of "Meow Wolf" trademarks and the use or licensing of "Meow Wolf" trademarks (Request for Production No. 35); minutes of all meetings of members or the board of Meow Wolf, LLC, VCMSE Art City, LLC, VCMSE Holdings, LLC, and Meow Wolf, Inc. regarding the business structure and ownership of the "Meow Wolf" venture and the right to do business as "Meow Wolf," including those minutes addressing asset purchase agreements, merger agreements, adoption of governing documents and the establishment and ownership of "Meow Wolf" trademarks and the use or licensing of "Meow Wolf" trademarks (Request for Production No. 36); and all minutes, notes, or written records of meetings of the Meow Wolf collective prior to the formation of Meow Wolf, LLC related to the formation of Meow Wolf, LLC and the establishment and ownership of any "Meow Wolf" trademarks and the use of Meow Wolf trademarks (Request for Production No. 37). In her motion to compel documents from Defendant Vince Kadlubek, she seeks all documents, including communications, containing the term "Meow Wolf LLC" or "Meow Wolf, LLC" in Kadlubek's possession (Request for Production No. 4).

In evaluating Plaintiff's requested information, the Court must balance the relevance of the information against the burden placed on Defendants to produce it. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."). Plaintiff alleges that, based on Defendants' promises and representations, she invested labor, money, and artwork

in the House of Eternal Return ("HoER")[2] believing she was a member of the Meow Wolf collective. "Never was she told that only six members of the supposed collective had concentrated all of its equity into an entity called VCMSE Art City, LLC, much less that she would never share in Meow Wolf's monumental success should it materialize." Doc. 243 at 6. These alleged false and unfulfilled representations give rise to her claims for breach of contract, copyright infringement, violation of VARA, promissory estoppel, unjust enrichment, conversion, and misrepresentation. For their part, Defendants filed a counterclaim, seeking a declaratory judgment regarding the contract for the Artist Bonus Program they assert Plaintiff entered into with Meow Wolf (which Defendants assert means VCMSE Art City, LLC). Plaintiff asserts that the business records she currently seeks are relevant to her claims and her defense to the counterclaim because they will show how Defendants conducted business, the consistency of that conduct with representations made to Plaintiff and to the public, and which entities were in a position to enter a contractual relationship with her. Doc. 243 at 7; Doc. 288 at 12-13.

Looking first at relevance, the Court agrees that the requested documents provide information about which entity existed at the time Plaintiff entered into an agreement with "Meow Wolf." The parties appear to disagree about which "Meow Wolf" entity Plaintiff was dealing with at the time she agreed to provide her artwork (neither side can produce a contract). Resolution of this dispute could affect several claims. First, it could be significant to Plaintiff's contract claim and Defendants' contract counterclaim. Defendants argue that Plaintiff contracted with VCMSE Art City, LLC, which later merged with Meow Wolf, Inc. *See* Doc. 296 at 4. Plaintiff, however, argues that she more likely contracted with Meow Wolf, LLC, which may not

---

[2] According to Meow Wolf's website, the HoER is an "explorable art experience," featuring over 70 rooms of immersive art. Meow Wolf, https://tickets.meowwolf.com/santa-fe/ (last visited May 4, 2022).

have later merged with Meow Wolf, Inc. *See* Doc. 288 at 3 (Plaintiff's assertion that she needs to determine "which of the existing [Meow Wolf] entities had the right to do business as 'Meow Wolf,' and how any assets of those entities were transferred and what members were considered for equity ownership, [which] will be key in determining whether MWI [Meow Wolf, Inc.] can enforce any of the contracts VCMSE Art City, LLC purportedly entered into with Plaintiff"). If it turns out that Plaintiff's agreement was with Meow Wolf, LLC and Meow Wolf, LLC never merged with Meow Wolf, Inc., both the contract claim and contract counterclaim could fail, as Meow Wolf, LLC is not a party to this lawsuit.[3]

Notably, the question of whether a party should be able to obtain discovery related to a contract claim is far different than the standing question Judge Khalsa recently addressed. In denying Plaintiff's motion to dismiss Defendants' contract counterclaim, Judge Khalsa pointed out the inherent contradiction of Plaintiff asserting a contract claim and then arguing that Defendant has no standing to also assert a contract claim. She wrote:

> [t]he contract alleged in both Plaintiff's amended complaint and Defendants' counterclaim is the contract pursuant to which Plaintiff agreed to install [her artwork] in the HoER and Defendant agreed to compensate her. (Doc. 148 at 19-20; Doc. 183 at 21, 26.) The parties simply dispute the nature and amount of the compensation to which the parties agreed. As such, it is patently untenable for Plaintiff to bring a breach of contract claim against Defendant MWI and simultaneously contend that Defendant MWI lacks standing to sue on the contract.

Doc. 325 at 17. Just as the existence of a contract between Plaintiff and Defendants demonstrates a contract between Defendants and Plaintiff, however, the non-existence of a contract between Plaintiff and Defendants demonstrates the non-existence of a contract between Defendants and

---

[3] Plaintiff's breach of contract claim is against all Defendants and so, looking only at Plaintiff's allegations, it is theoretically possible that Plaintiff had no contract with a currently existing Meow Wolf entity but nonetheless had a contract with Defendant Kadlubek.

4

Plaintiff. Discovery that bears on whether *the parties in this case* entered into a contract is thus relevant to both the contract claim and the contract counterclaim.

And, if neither party can ultimately show the existence of a contract, the corporate/ business documents Plaintiff seeks are relevant to her alternate claim of promissory estoppel. Plaintiff alleges that "Meow Wolf representatives, including Kadlubek, offered membership in the 'collective' and an 'artist revenue share' as the key components of compensation for participation." Doc. 148 at ¶ 23. In addition to proving Defendants made such a promise, as Defendants point out, Plaintiff must also prove that her reliance on this promise was reasonable. Doc. 261 at 10-11. Plaintiff's argument is that, leading up to this promise, she knew "Meow Wolf" had its origins as a collective, and that "Meow Wolf representatives, including Kadlubek" held themselves out to be a collective, understood that artists would be more inclined to sign up with a collective than with an LLC of six individuals for whom the LLC was named, and generally referred to themselves as "Meow Wolf" rather than VCMSE Art City. Given the origins of Meow Wolf as an artist collective, Meow Wolf's continued description of itself as an artist collective, and the lack of any disclosure that this was not actually the case, Plaintiff argues, it was reasonable for her to rely on the promise from "Meow Wolf representatives, including Kadlubek" that she would receive an "artist revenue share." *See* Doc. 148 ¶¶ 21-23, 114. Whether "Meow Wolf" was publicly operating as Meow Wolf, LLC at the time of the alleged promise, and whether Meow Wolf, LLC endorsed the idea of a collective, bear on whether it was reasonable for Plaintiff to rely on the alleged promise of an "artist revenue share." Thus, corporate/business documents from before 2015 (when Plaintiff began installing her work in the HoER) are relevant to show the reasonableness of her understanding that Meow Wolf was a collective when she began her art installation.

Relatedly, the documents Plaintiff requests are relevant to her misrepresentation claim, which is premised on the notion that Meow Wolf publicly held itself out as a collective of artists even though it had discreetly converted "Meow Wolf" into an LLC of six individuals (VCMSE Art City, LLC). The structural history and business dealings of entities doing business under the name "Meow Wolf" bear on the truth of such a notion. For example, Plaintiff points out that Defendant Kadlubek testified that Meow Wolf, LLC and VCMSE Art City existed at the same time in 2015 and 2016 but that Meow Wolf, LLC was dormant. Doc. 288 at 9. However, Plaintiff attached an unexecuted 2015 contract with the City of Santa Fe in Meow Wolf, LLC's name. Doc. 243-1. Noting that the contract Plaintiff attached was unexecuted, Defendants submitted an August 2015 email Kadlubek sent to the City in which he informed the City, "By the way, we are VCMSE Art City, dba Meow Wolf." Doc. 295-4. Plaintiff, however, then attached a copy of the final fully-executed contract *between the City and Meow Wolf, LLC*, including Meow Wolf, LLC's business license number, not VCMSE's. Doc. 305 at 5. A signature that appears to be Defendant Kadlubek's appears under the name "Meow Wolf LLC" and nowhere near the signature does the name VCMSE Art City, d/b/a Meow Wolf appear. Doc. 305-2 at 14. Although Defendant Kadlubek's apparent signature is not dated, other signatures on the document are dated no earlier than September 16, 2015. *Id*. This dispute between the parties illustrates the relevance the requested corporate documents have to Plaintiff's misrepresentation claims: was Meow Wolf holding itself out as the "Meow Wolf collective," doing public business as Meow Wolf, LLC, when VCMSE (the closely-held company) was the entity that actually controlled the Meow Wolf venture?[4]

---

[4] Plaintiffs may also seek to use the business records for impeachment purposes regarding Defendant Kadlubek's testimony that Meow Wolf, LLC was dormant at the time it also purportedly entered into the City contract.

That question also speaks to the relevance of Plaintiff's discovery requests for information on the Meow Wolf trademark. Although Defendants are correct that this is not a trademark case, ownership and use of the Meow Wolf trademark is relevant to Plaintiff's misrepresentation claim. Plaintiff is entitled to discovery related to her theory that Meow Wolf, LLC was using the trademark in 2015 so that "Meow Wolf" could hold itself out as a collective and thereby entice artists to work on the promise of an "artist share of revenue", even though "Meow Wolf representatives, including Kadlubek" all the while intended that the spoils of the artists' work would go only to the six members of the closely held LLC, VCMSE Art City.

As Defendant points out, in a prior order regarding a motion to compel, the Court found that Plaintiff's discovery requests for ownership and investment information were not relevant to Plaintiff's breach of contract claim and had little relevance to her other claims. Doc. 128. That holding is not applicable in the present motion because the prior discovery requests were much broader than the current. *Compare* Doc. 128 at 6 (Plaintiff's prior discovery requests seeking information including all persons who have held any ownership interest in Meow Wolf and all documents ever transmitted to any prospective Meow Wolf investor)*, with* Doc. 243-7, 306-10 (discovery request currently at issue seeking only official governing documents, agreements, and minutes regarding the Meow Wolf entities). Further, at the time the Court decided the previous motion to compel, Plaintiff had not yet been granted leave of the Court to file her amended complaint, which includes a promissory estoppel claim, and Defendants had not yet filed their counterclaim.

This leads to the second part of the Court's analysis: proportionality. Defendants argue that the requested documents are not proportional to the needs of the case and "[a]nswering these requests would also impose an undue burden on Meow Wolf because it would require dozens of

7

people to search through all personnel files and emails over the prior decade and a half to determine whether they, or any number of several hundred people who were involved in Meow Wolf since its inception in 2008, wrote or sent communications to Meow Wolf regarding any issues 'related to the formation of Meow Wolf, LLC.'" Doc. 261 at 17. But this argument overstates what information Plaintiff seeks. Plaintiff does not seek all communications of everyone who has ever had anything to do with Meow Wolf that concern the formation of a Meow Wolf entity. Plaintiff's requests are specifically targeted at final legal documents and finally-executed agreements. *See* Doc. 243 at 8 & Doc. 271 at 6-7 (Plaintiff clarifying the scope of her requests). Additionally, her requests for minutes or notes of member and board meetings is limited to only formal minutes or notes related to the right to do business as "Meow Wolf." Doc. 271 at 6. Her requests to Defendant Meow Wolf do not include "drafts, emails, or other informal or unofficial documents." Doc. 271 at 10. Additionally, as to the request made to Defendant Kadlubek, Plaintiff points out that Kadlubek "need only search hard files that were in his possession at the time the request was made" and do electronic searches of his email accounts and his personal devices and storage using only two search terms: Meow Wolf LLC and Meow Wolf, LLC.[5] Doc. 305 at 7. Such requests are proportional to the needs of the case.

    For these reasons, Plaintiff's Motion to Compel Production of Documents from Meow Wolf, Inc. (Doc. 243) and Plaintiff's Motion to Compel Production of Documents from

---

[5] It is not clear how many of the documents for Kadlubek to search are stored electronically or in hard copy form. *See* Doc. 296 at 10 (Defendants' response, asserting that, "While Ms. Oliver may assume all documents are in electronic form, it is quite possible that paper meeting notes, agendas, drafts, and other documents could contain the company name."). If, after beginning to search hard documents responsive to Request for Production No. 4, Defendants believe in good faith that a search of the hard files in Kadlubek's possession would take more than 8 hours, they may request a status conference with the Court to discuss a way to narrow his search of hard files. This limitation does not apply to the electronic searches at issue in Request for Production No. 4.

Defendant Vince Kadlubek (Doc. 288) are GRANTED. Defendants shall respond to the discovery requests within 30 days of the entry of this Order. Each side shall bear its own costs and fees associated with bringing and responding to these motions.

    **IT IS SO ORDERED.**

                                        **STEVEN C. YARBROUGH**
                                        **United States Magistrate Judge**