**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LAUREN ADELE OLIVER,
an individual,

      Plaintiff,

v.                                        Case No. 1:20-CV-00237-KK-SCY

MEOW WOLF, INC., a Delaware
corporation; VINCE KADLUBEK,
an individual and officer; and
DOES 1-50,

      Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

Plaintiff Lauren Oliver ("Plaintiff" or "Oliver") by and through her undersigned counsel hereby responds to *Defendants' Motion to Compel Discovery from Plaintiff* (DE 359) ("Motion").

### I.    INTRODUCTION

Plaintiff went well beyond the requirements of this Court's order pertaining to forensic data and her discovery obligations in making every effort to satisfy Defendants' confusing and unreasonable demands.  Plaintiff provided clear explanations of the searches she made, their compliance with applicable orders and discovery rules, and the results of her efforts both in communications between counsel and discovery responses.  It is clear nothing she has done, or could do (short of immediately acceding to Defendants' unreasonable demands) would have avoided the instant Motion.  As outlined below, the Motion is without merit, untimely, and made with an utter disregard for the meet-and-confer requirements of Local Rule 7.1 and Fed. R. Civ.

P., Rule 37(a)(1).  The Motion should therefore be denied, and Plaintiff awarded her attorneys' fees and costs incurred in preparing this response.

## II.    DEFENDANTS' MOTION IS WITHOUT MERIT

After explaining to Defendants that the effort likely would not produce any significant information beyond that already produced, Plaintiff expended an extraordinary amount of time and effort attempting (apparently unsuccessfully) to mollify Defendants unreasonable, confusing, and harassing demands.  She diligently performed all of the searches required of her, and went well beyond that in attempting to find any and all relevant documents.  This was exhaustively explained to Defendants in communications and formal discovery responses.  Defendants' motion is without merit, as there is no reasonable likelihood that the burdensome searches Defendants demand will identify documents that have not already been produced.

### A.  The Data in Question

Pursuant to the Agreement on Scope of Forensic Analysis and Data Handling (Doc. 359-1) ("Analysis and Handling Agreement"), Plaintiff provided to Business Intelligence Associates ("BIA") two devices for imaging and analysis – one MacBook and one Mac Mini.  BIA was tasked with recovering emails from those devices sent from, received by, ccing or bccing "lauren.oliver@gmail.com dated between April 8, 2013, through June 27, 2018, inclusive."  Doc. 359-1 at ¶ 3-4.  In addition, BIA was permitted to use its "Forensic Email Collector software to extract all emails from the lauren.oliver@gmail.com account dated between April 8, 2013 and June 27, 2018."  *Id*. at ¶11.

In the lead-up to transmission of the data, Defendants and BIA sought general access to Plaintiff's lauren.oliver@gmail.com account, representing a clear invasion of Ms. Oliver's privacy.  It was only after Oliver retained the services of her own forensic consultant (at

considerable expense) that she learned the typical process in a case such as this involved the use of a narrowly-tailored "token" that would permit the Forensic Email Collector to make a focused and secure extraction of only those emails within the relevant date range.  BIA and Defendants also insisted on receiving Plaintiff's password to her Mac Mini (which she provided).  This potentially exposed account passwords, proprietary and personal files, and privileged communications pertaining to this litigation.

After Plaintiff supplied the devices and a token generated by her e-discovery consultant, BIA collected data from the devices and gmail account.  As expected, the data recovered from the devices included very few emails within the relevant time frame.  However, BIA exceeded the scope of the Analysis and Handling Agreement by extracting a number of files from "Unallocated Carved Files" containing email data for which no date could be determined and email files outside the date range provided for in this Court's order (Doc. 205), and the Analysis and Handling Agreement (Doc. 359-1).  In good faith, and in hope of avoiding disputes, Plaintiff did not object to the gathering or transmission of that data or to searching it pursuant to the Analysis and Handling Agreement.

### 1.  MacBook data

No responsive data was discovered on this device.  *See* Doc. 359-2.

### 2.  MacMini data

Five (5) lauren.oliver@gmail.com emails were found within the date range.  612 files containing the email address lauren.oliver@gmail.com were found among unallocated carved files.  *See id.*  The files from unallocated space on the drive did not have date information sufficient for BIA to determine if they fell within the relevant range.  *Id.*

### 3.  Gmails

"1,895 emails were collected using a date range search between April 4, 2013 and June 27, 2018."  *Id*.

### B.  Searches Performed

At the time the data was transmitted to Plaintiff's e-discovery vendor, Ms. Oliver was travelling without access to a computer.  Immediately upon her return, she performed the following searches of the data in compliance with the Analysis and Handling Agreement:

### 1.  Search terms

Plaintiff searched all of the data for the following search terms:

       a.  "Todos 7"

       b.  "House of Eternal Return"

       c.  "HoER"

       d.  "Revenue Share"

       e.  "Artist Bonus"

       f.  "Gift Shop"

       g.  "Meow Wolf"

       h.  "MW"

       i.  "VCMSE"

       j.  "Vince"

       k.  "Kadlubek"

       l.  "Ice Station"

       m.  "ISQ"

       n.  "Space Owl"

o. "Bonus Program"

p. "Collective"

Plaintiff's Second Amended Objections and Responses to Defendant Meow Wolf's Second Set of Requests for Production of Documents or Things to Plaintiff Lauren Oliver, Doc. 359-7; Analysis and Handling Agreement 359-1 at ¶7; Email, Doc. 359-6.

### 2. Name searches

In addition to the above search terms, Plaintiff performed a reasonable search and diligent inquiry, and produced responsive documents, as to the following persons whom she knows and with whom she may have communicated regarding House of Eternal Return from 2014 to January 3, 2022:  Kate Russel, Peter Chapman, Caity Kennedy, Vince Kadlubek (including meta4vdk), Cary Cluett, Tuscany Wenger, Sarah Dallas, Joe Dean (and "Jo Dean"), Gen Hayashida, Christopher Johnson (including vancenicamendo@gmail.com), Billy Joe Miller, Bill Rodgers, Jake Snider, Brian Solomon, Erika Wanamaker, Cole Wilson, Liberty Yablon, Corvas Brinkerhoff, Matt King, Emily Montoya, Sarah Bradley, Sandra Wang, Chris Brodsky, Amy Westphal, Brandon Behning, Geoff Banzoff, Ben Wright, and Benji Geary.  *See* Doc. 359-7.

### C.  Production of Documents

On December 21, 2021, Plaintiff transmitted her production to Defendants.  That production included all responsive documents from the forensic data associated with lauren.oliver@gmail.com.  Those eight (8) email auto-responder "bounce backs," which informed senders she was no longer using the account (and five of which went directly to Mr. Kadlubek), had been previously produced during discovery, but Plaintiff produced them again to avoid dispute and for the convenience of the parties.  *See* Email from Jesse Boyd to Counsel for Defendants, Jan. 3, 2022, attached hereto as Exhibit 1.

BIA found no responsive emails on the MacBook.  Thus, there was no forensic data to produce from that device.  Doc. 359-2.

As to the data extracted from the Mac Mini, all responsive "emails" proved to be snippets of emails mixed with portions of numerous other unrelated (and often personal) emails along with pages of unreadable code.  As such, the actual files were not produced; however, "[a]ll of the responsive emails in the mac mini pre-dated 2013, were located in the lauren.oliver@gmail.com account, and produced."  *See* Email, Exhibit 1 hereto.  Counsel for Defendants was informed of this and directed to the specific bates numbers associated with the emails in question.  *See id.*; Wilson-Boyd Email Exchange, January 5, 2022, attached hereto as Exhibit 2.  A portion of one 40-page file containing referenced Mac Mini emails is attached hereto as Exhibit 8 (personal contact information redacted).  Also attached as Exhibit 9 hereto is the corresponding actual email Plaintiff tracked down and confirmed that it had been part of a prior production.  She performed this cross-referencing task for each of the responsive emails contained in the Mac Mini data.

### D.  Meet-and-Confer

The exchanges between counsel outlined in the communications attached hereto and to Defendants' motion shows it would be nigh impossible to satisfy Defendants.  Given the filings and correspondence in this case, it is reasonable to conclude Defendants' motion is part of an ongoing attempt to distract Plaintiff and her counsel at a crucial point in this litigation, and/or as an attempt to justify the "expense" Defendants incurred in what remains a wild goose chase.  *See* Email from Ben Allison to Jesse Boyd, Apr. 18, 2022, Doc. 359-16.

The correspondence attached to the Motion leaves out multiple significant communications.  First, the Motion references and attaches a January 17, 2022 email, Doc. 359-

12, but fails to provide the prior email that was attached to that message. *See* email exchange between Michael Woods and Jesse Boyd, January 7, 2022, attached hereto as Exhibit 3. During the conversation held on January 7, 2022 referenced in that email it was unclear to Plaintiff's counsel what Defendants expected Plaintiff to do beyond the extraordinary searches she had already made.

After his January 17, 2022 email, Plaintiff did not hear from Defendants on the issue until January 21, 2022, the Friday prior to the motion-to-compel deadline associated with Plaintiff's Second Amended Objections and Responses. *See* Doc. 359-7 (served Jan. 3, 2022); Local Rule 26.6 (21-day deadline). During that phone conversation related to a separate issue, Defendants counsel suggested an extension of the motion-to-compel deadline. As the ball was in Defendants' court, and as Plaintiff had already performed exhaustive searches, did not understand what else Defendants expected her to do, and had more-than complied with her discovery obligations, her counsel declined to extend the deadline. After the call, Counsel for Plaintiff called Ms. Oliver to inform her that, despite her exhaustive efforts, she could expect Defendants to file a motion to compel. When a motion to compel was not filed, Plaintiff and her counsel proceeded on the reasonable belief that Defendants had recognized it was a fruitless endeavor and (finally) put the "dispute" discovery and forensic email issues to rest.

Unfortunately, counsel and Plaintiff were wrong. Despite Plaintiff's clear refusal to extend the motion to compel deadline, Defendants proceeded to act as though the issue remained open with their January 31, 2022 letter. Doc. 359-13. As the Court can see, that letter would have Ms. Oliver search the names of 89 persons, the vast majority of whom Plaintiff does not know and with whom she has no reason to believe she ever communicated. *Id*. Defendants knew Plaintiff had already conducted an exhaustive search as to those persons on the list whom

Plaintiff knew or with whom she may have communicated.  *See e.g.* Doc. 359-7.  In addition to the names, the letter provided lists of dozens of terms beyond the 17 she had already performed searches for pursuant to the agreement of the parties.  As the Court can see, most of the terms in the letter are so broad they would necessarily capture irrelevant emails Plaintiff would then have to sort through.  The letter cannot be, and was not, considered a serious attempt to reach a reasonable outcome – rather, it was a clear attempt to extend a discovery matter that had already been highly burdensome on Plaintiff, in which she had gone well beyond her discovery obligations, and which was now closed.

As to the March 15, 2022 correspondence Defendants cite, it is important to note that Defendants have repeatedly used previously un-produced documents responsive to discovery requests at deposition.  For example, a mere three days prior to Plaintiff's deposition on March 26, 2021, Defendants, for the first time, produced the March 17, 2017 email sent by Vince Kadlubek to the lauren.oliver@gmail.com account.  This document was clearly responsive to Plaintiff's first set of requests for production to Defendant Meow Wolf, Inc. served 8 months prior in July of 2020 (requesting all documents concerning Plaintiff, and "All DOCUMENTS, including, without limitation, COMMUNICATIONS… mentioning 'Lauren,' 'Oliver,'…").  Plaintiff's indication at deposition that she had never seen the email led to her discovery that it had been one of the emails that was deleted when she cleared the inbox of her lauren.oliver@gmail.com account (which, as the Court knows, was the subject of considerable prior briefing).  Had Defendants produced the email as and when they should have, rather than foisting it on her at deposition, she would have had an opportunity to investigate why it was not in her materials, addressed the matter fully and completely during her deposition, and months of

motions practice (including this Motion) and a pointless and highly-invasive forensic process, might have been avoided.

Regardless, Defendants' reference to the Cluett exhibits in the context of the instant motion is a red herring. The two cited images that were attached to Mr. Cluett's deposition have nothing to do with the emails that are the subject of this Motion, were contained in a production folder, and Plaintiff does not know why Defendants could not find them, and regardless, Defendants now have them. In addition, they only help Plaintiff address any (entirely inappropriate) assertion by Defendants that Mr. Cluett was in any way a co-author of Ms. Oliver's work. In no way are they helpful, much less critical, to Defendants' case. The referenced Chapman emails were sent from a personal email account of a Meow Wolf employee who had not been identified by Defendants as a potential source of information, were not produced by Defendants pursuant to their discovery obligations, and regardless, have long-since been produced by Plaintiff. *See* Letter from Jesse Boyd to Ben Allison, July 27, 2021, attached hereto as Exhibit 4.

After Defendants' March 15, 2022 letter, their counsel did not reach out to counsel for Plaintiff again until a phone call on April 18, 2022. Counsel for Plaintiff was surprised to hear Defendants planned to file the instant Motion, as he did not recall Defendants' March 15 letter (which had been sent during an end-of-discovery flurry of depositions) and it had not been raised in any of the multiple phone conversations counsel had had since January 31. Plaintiff's counsel reiterated that, as has always been the case during this litigation, Plaintiff would take any reasonable steps to address Defendants' concerns and avoid having to involve the Court. The email exchange that followed clearly shows Defendants had already drafted the Motion before they reached out to Plaintiff, and were going to file it unless Plaintiff immediately agreed to

perform all of the 100+ searches called for in the January 31, 2022 letter.  Plaintiff's counsel did

not even have time to get his client's input on what she might be willing to do before the Motion

was filed.  *See* Doc. 359-16; Email from Jesse Boyd to Cole Wilson and Ben Allison, Apr. 20,

2022, attached hereto as Exhibit 5.

      **E.  The Motion is without Merit**

         **1.  Defendants cannot reasonably contest that the searches were sufficient**

As repeatedly explained to Defendants, the searches performed by Plaintiff were in full

compliance with the Analysis and Handling Agreement and met all of her discovery obligations.

Defendants' Motion centers around the meaning of the word "dispute."  As explained by

Plaintiff, until her meeting with Mr. Kadlubek and others on June 3, 2019, she did not have a

"dispute" with Defendants.  That Plaintiff was consulting attorneys about a VR piece she went

on to approve, and was attempting to "hammer out an agreement" related to intellectual property

does not represent a "dispute."  *See* Motion at p. 4.  Indeed, in the same timeframe, she was

having pleasant exchanges with Caity Kennedy about the ongoing relationship.  *See* Email

Exchange between Lauren Oliver and Caity Kennedy, April 12-15, 2015, attached hereto as

Exhibit 6. Regardless, and critically, any communication with anyone at any time regarding a

"dispute" with Defendants would necessarily contain one of the dozens of terms and names

Plaintiff has already searched.  It defies logic that a communication about a dispute with "Meow

Wolf" or in relation to the "House of Eternal Return" would not contain a reference to "Meow

Wolf," "MW," "House of Eternal Return," "HoER," "Ice Station," "ISQ," "collective," "Vince,"

"Kadlubek," or one of the other dozens of names and terms she searched.  To the extent

Defendants believe otherwise, Plaintiff's objection with regard to the vagueness of the term

"dispute," and objection with regard to overbreadth to the extent Defendants believe Plaintiff

should have done more, are valid and should be sustained notwithstanding Defendants' failure to file a motion to compel in compliance with Local Rule 26.6.

### 2. Plaintiff fully complied with her discovery obligations

Plaintiff searched the forensic data and all of her accounts for the terms provided by Defendants and agreed by the parties and produced all discoverable documents those searches generated.  To satisfy Defendants incessant demands that she somehow prove the search and production had been sufficient, Plaintiff repeatedly and precisely explained the results of her searches, and served two sets of amended responses to Defendants requests for production, the second of which explicitly and exhaustively explained how searches were conducted and the responsive documents produced.  *See e.g.* Exhibits 1-3 hereto; Doc. 359-7.  This discovery effort was grueling and involved third-parties obtaining access to numerous private and intimate emails that had absolutely no relevance to this case.  If asked, Plaintiff would freely sign a certification under oath that she has complied with all of her discovery obligations.  To wit, Plaintiff notes that in two years of litigation, Defendants have not had cause to file a single motion to compel.  Meanwhile, Plaintiff has found it necessary to file five.  In the end, it is clear Defendants were going to present this Motion regardless of what Plaintiff did, and even though it was entirely unnecessary.  *See* §§ II.E.3, IV, *infra*.

### 3. If Defendants truly believed additional searches were necessary or would be fruitful, they could have served reasonable follow-up discovery requests.

Discovery closed on March 29, 2022.  Thus, after Defendants' letter of January 31, 2022, they had almost a full month to propound additional reasonable discovery requests.  If they had done so, Plaintiff – as she has throughout this litigation – would have fully complied with her

discovery obligations.  If there remained a disagreement thereafter, at least the issues in a

subsequent motion to compel would be reasonably defined (in contrast to the instant Motion).

### 4.   Defendants present no argument or authority that they are legally entitled to the relief they seek

Defendants seek the following relief:

1.   The production of "emails and attached documents forensically recovered from her MacBook and Mac Mini that are responsive to all of defendants requests for production using the search criteria defendants provided to her on January 31, 2022."[1]

2.   The amendment of Plaintiff's "discovery responses to withdraw her objections to Request for Production No. 12 that limited her search for responsive documents to the period beginning June 3, 2019."

3.   Requiring Plaintiff to "conduct additional searches for documents responsive to Request for Production No. 12 using the terminology defendants provided to her on January 31, 2022, and… supplement her production with responsive discovery recovered from those searches."

4.   Attorneys' fees and costs.

Motion at p. 12-13.  Putting aside that the requested relief includes data from the

MacBook that does not exist, nowhere does the Motion explain how Plaintiff's searches

and production did not comply with a particular request for production – indeed, aside

from Request for Production No. 12, no other request for production is even mentioned.

As to Request No. 12, Defendants do not explain why they think the additional requested

searches have any chance of discovering any relevant documents beyond those that have

already been produced.  Neither does the motion provide any authority supporting the

idea that a litigant is required to comply with the terms of letter demanding a search for

100+ names and terms, much less that they are required to comply with the terms of such

---

[1] This requested relief is nonsensical to the extent if refers to the MacBook, as no emails were recovered from that device.  *See* Doc. 359-2.

a letter when it was sent after the applicable deadline to file a motion to compel.  In short, the Motion lacks any basis in law or fact.

Whether it is to create a false equivalence with Plaintiff's pending motion to compel (Doc. 340), to support an utterly-false impression that Plaintiff has not been forthcoming during discovery, or simply to channel Plaintiff's resources away from far more critical issues coming to a head in this case, Defendants' Motion lacks merit, and should be denied.

## III.    DEFENDANTS' MOTION IS UNTIMELY

Pursuant to Local Rule 26.6, "A party served with objections to:… request for production or inspection… must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection…"  Where a party receives an objection to a request for production, a motion to compel additional production pursuant to that request filed after the 21-day period is untimely. *See generally e.g. Dentsply Irona, Inc. v. Edge Endo, LLC*, 2019 U.S.Dist. LEXIS 170039 (D.N.M. 2019); *Thymes v. Verizon Wireless, Inc.*, 2017 U.S. Dist. LEXIS 18657 (D.N.M. 2017) at *7 (denying motion to compel based on Local Rule 26.6 where motion to compel filed 47 days after response to requests for production).

Here, Plaintiff produced documents as required under the Analysis and Handling Agreement and responsive to Defendants' requests for production on December 21, 2021.  To satisfy Defendants demands, she served amended objections and responses to Defendants Requests for Production on January 3, 2022 explaining in detail her searches and production. *See* Email from Jesse Boyd to Cole Wilson, Dec. 28, 2021, attached hereto as Exhibit 7; Doc. 359-7.  Thus, to be timely, Defendants were required to file a motion to compel on or before

January 24, 2022. *See e.g. Dentply Irona, Inc.*, U.S.Dist. LEXIS 170039 at *4; *Thymes*, 2017

U.S. Dist. LEXIS 18657 at *7. No motion to extend the deadline was presented to the Court,

much less granted. The instant Motion was filed on April 19, 2022 – almost three months after

the after the LR 26.6 deadline. Nowhere in the Motion do Defendants seek relief from the

requirements of LR 26.6. Under these facts, and those outlined herein, summary denial of the

Motion pursuant to LR 26.6 is appropriate.

## IV.   THE MOTION WAS FILED IN VIOLATION OF L.R. 7.1 AND FED. R. CIV. P., RULE 37(a)(1)

A movant "must determine whether a motion is opposed, and a motion that omits

recitation of a good-faith request for concurrence may be summarily denied." L.R. 7.1. A

motion to compel "must include a certification that the movant has in good faith conferred or

attempted to confer with the person or party failing to make disclosure of discovery in an effort

to obtain it without court action." FED. R. CIV. P., Rule 37(a)(1). "The duty to confer requires

more than setting forth conflicting positions in written correspondence." *Estate of Gonzalez v.*

*Board of County Commissioners*, 2018 U.S.Dist. LEXIS 183877 (D.N.M. 2018), *5. "To confer

means more than making a demand for compliance; it means 'to hold conference; compare

views; consult together.'" *Id., quoting Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D.

Colo. 2003). "The process… is not satisfied by the exchange of letters or emails sent days apart

or cursory and perfunctory emails or letters which simply restate each other's positions on the

items of discovery." *Sundance Servs. v. Admiral Ins. Co.*, 2022 U.S.Dist. LEXIS 28625, at *11

(D.N.M. 2022) (citations and quotations omitted). "This meet-and-confer obligation requires a

'sincere effort to see if the dispute can be resolved before a party files a motion to compel' and

'might be established by telephonic conference, contemporaneous email communication, or the

now-rare personal meeting amongst parties.'" *Los Lobos Renewable Power, LLC v.*

*AmeriCulture, Inc.*, 2019 U.S. Dist. LEXIS 213692, at \*1-2 (D.N.M. 2019), *quoting Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 723 (D.N.M. 2017).

Defendants' Motion does not include a "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure of discovery in an effort to obtain it without court action."  FED. R. CIV. P., Rule 37(a)(1).  Rather, it incorrectly states that "[i]t has become apparent that plaintiff is unwilling to cooperate in discovery without the Court's intervention."  Motion at p. 6.  It goes on to state merely that "counsel requested plaintiff's position by telephone and email," and that "Plaintiff opposes this motion."  *Id*.  These statements are by no means sufficient to satisfy L.R. 7.1 or Rule 37(a)(1), especially given where the communications stood at the time the motion was filed.  *See* Exhibit 5 hereto; Doc. 359-16.

As expressed in repeated communications, Plaintiff believed the issues raised in the Motion had been appropriately abandoned, and was surprised to learn on April 18 Defendants planned to file a motion.  It is precisely the situation that makes "letters and emails sent days apart" insufficient.  *See Sundance Servs.*, 2022 U.S.Dist. LEXIS 28625, at \*11.  Indeed, the emails and letters upon which Defendants rely were weeks apart, with the last communication being a full month prior to the cited call on April 18, 2022.  After that call, counsel for Plaintiff did not even have time to confer with his client about what additional discovery she might be willing to perform before Defendants filed their Motion.  Since then, and despite the fact that the exercise would be excessively burdensome and almost certainly pointless, she expressed a willingness to search the forensic data as outlined in the January 31 letter, if Defendants would agree to produce the documents related to their extensive and unauthorized use of her work, which is the subject of Plaintiff's motion to compel Doc. 340.  Putting aside that she knew

Defendants would not agree to produce the highly-relevant (and likely damning) documents she seeks absent a court order, Plaintiff stood ready to a reach a resolution of the issues raised in this Motion without having to involve the Court if Defendants had only sought such a path prior to her having to file this Response. *See* Exhibit 5 hereto.

Defendants have not provided the requisite certification that they made a good-faith attempt to confer. Plaintiff assumes this is because they realize they cannot legitimately do so. As such, Defendants have not complied with LR 7.1 or Rule 37(a)(1), and their Motion should be denied.

## V.    PLAINTIFF IS ENTITLED TO HER COSTS IN RESPONDING TO DEFENDANTS' MOTION

In her five motions to compel in this case, including those recently granted by the Court, *see* Doc. 398, Plaintiff has not sought expenses or attorneys' fees. Given that Defendants have chosen to seek attorneys' fees and costs in their Motion, and given its infirmities as outlined herein, Plaintiff shall request her fees and costs pursuant to Fed. R. Civ. P., Rule 37(a)(5)(B).

## VI.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendants' Motion be denied, and that she be awarded the attorneys' fees and costs she incurred in responding to the Motion.

Date:   May 11, 2022                         Respectfully Submitted,

ERICKSEN ARBUTHNOT

By:___ */s/ Jesse A. Boyd*_____
         JESSE A. BOYD
         2300 Clayton Road, Suite 350
         Concord, CA 94520
         (510) 832-7770
         (510) 832-0102 facsimile
         jboyd@ericksenarbuthnot.com
         *Attorneys for Plaintiff Lauren Adele Oliver*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2022, a true and correct copy of the foregoing document was served via CM/ECF on all interested parties.

/s/ Jesse A. Boyd
Jesse A. Boyd