IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,
an individual,

    Plaintiff,

v.

MEOW WOLF, INC. a Delaware
corporation; VINCE KADLUBEK, an
individual and officer; and DOES 1-50,

    Defendants.

Case No. 1:20-CV-00237-KK-SCY

### RESPONSE OF THE REGISTER OF COPYRIGHTS
### TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On August 25, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") on whether the U.S. Copyright Office ("Copyright Office" or "Office") would have refused registration of the work claimed in registration number VA0002170075 (the "Work") had it known that "the applicant did not create or own the copyright in the artistic bench pictured [in] the deposit material."[1]

The Register hereby responds that, based on the legal standards and examining practices set forth below, the Office would not have registered the Work if it had known that the deposit material included undisclosed copyrightable elements that the Plaintiff, the sole author identified in the application, did not create or own. However, as explained herein, the Register notes that the Plaintiff could correct the omission in her original application by filing a supplementary registration application to exclude the third-party authorship contained in the artistic bench.

---

[1] Mem. Op. and Order at 18, ECF No. 492 ("Order").

1

**BACKGROUND**

I. **Examination History**

A review of the records of the Office reveals the following:

On September 19, 2019, the Office received an application to register an art installation titled "Ice Station Quellette - The Last Ice on Earth." The application identified Plaintiff Lauren A. Oliver as the sole author and copyright claimant. It stated that the work was completed in 2016 and first published in the United States on March 16, 2016.

The deposit copy that accompanied the application was a forty-page PDF that depicted photographs of the art installation. Ms. Oliver identified the Work as a work of visual art. The application specifically excluded from the claim "text" and the material covered by previous registration number TXu002144749, another registration owned by Ms. Oliver for a brochure about the art installation. Ms. Oliver identified "photograph, 2-D artwork, sculpture, [and] Text" as the new material included in the claim. Based on the information provided in the application, the Office had no reason to question Ms. Oliver's representations and accepted them as true and accurate. The Office registered the claim with an effective date of registration ("EDR")[2] of September 19, 2019, and assigned it registration number VA0002170075 (the "Registration").

II. **The Court's Request**

In its Order, the Court reviewed the facts before it and analyzed the registration materials submitted to the Office by Ms. Oliver. After reviewing the deposit material, specifically the new material claimed by Ms. Oliver, the Court concluded that Ms. Oliver "knowingly and

---

[2] The EDR is the date the Office received a completed application, correct deposit copy, and the proper filing fee. 17 U.S.C. § 410(d).

inaccurately indicated that she authored the bench Ms. [Katherine] Lee designed on her application for the VA Registration."[3]  According to the Order, Ms. Oliver "included an 'artistic bench' designed by someone else in her deposit for the VA Registration,"[4] even though she conceded in her deposition that "Katherine Lee designed the bench" and "definitely owns the copyright for that design."[5]  When asked why she included the bench in the deposit material submitted to the Office for registration, Ms. Oliver stated, "I didn't realize I did that, and I think that was probably a slip."[6]  Based on this evidence, the Court held that Ms. Oliver's registration application included inaccurate information and that she "was at best willfully blind to the need to identify Ms. Lee as the bench's author when she applied for the VA Registration."[7]  Pursuant to section 411(b) of the Copyright Act, the Court asked the Register to advise "whether the inaccurate information, if known, would have caused her to refuse the registration."[8]

## ANALYSIS

### I.   Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410.  Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to 202.24.  Further, the principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an

---

[3] Order at 16.
[4] *Id.* at 14.
[5] *Id.*; Zoom Dep. of Lauren Adele Oliver at 2–4, ECF No. 236-4.
[6] Order at 14; Zoom Dep. of Lauren Adele Oliver at 3, ECF No. 236-4.
[7] Order at 16 (citing U*nicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, — U.S. —, 142 S. Ct. 941, 948 (2022)).
[8] *Id.*  The Court also addressed a number of other questions in its Order unrelated to the question referred to the Register.

administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law. The Office publishes regular revisions of the *Compendium of U.S. Copyright Office Practices* to provide additional guidance where necessary and to reflect changes in the law and/or Office practices, which are provided for public comment prior to finalization. Because Ms. Oliver filed her application in September 2019, the governing principles the Office would have applied when evaluating her application are set forth in the *Compendium of U.S. Copyright Office Practices, Third Edition* (referred to as "COMPENDIUM (THIRD)") that was first released in September 2017.[9]

Here, where Ms. Oliver failed to inform the Office that her application included copyrighted material authored by a third party, the relevant portions of the application are the "limitation of claim" and "author" fields. We now turn to requirements related to these portions.

      **A.**      **Limitation of Claim**

COMPENDIUM (THIRD) explains that "[a] claim should be limited if the work contains an appreciable amount of material that was previously published, material that was previously registered, material that is in the public domain, and/or material that is owned by an individual or legal entity other than the claimant who is named in the application."[10] It further provides that "[i]f the work . . . contains an appreciable amount of unclaimable material,[11] the applicant should

---

[9] The Copyright Office published a new version of the COMPENDIUM (THIRD) in January 2021. The 2017 version cited in this Response is available at https://www.copyright.gov/comp3/2017version/docs/compendium.pdf.
[10] COMPENDIUM (THIRD) § 621.
[11] Unclaimable material is "(i) previously published material; (ii) previously registered material; (iii) material that is in the public domain; and/or (iv) copyrightable material that is not owned by the claimant named in the application." *Id.*, Glossary.

identify the unclaimable material that appears in that work and should exclude that material from the claim [by providing] . . . a brief, accurate description of the unclaimable material in the appropriate field/space of the application."[12]

There are certain exceptions to this rule. COMPENDIUM (THIRD), for example, provides several scenarios where exclusions and disclaimers are not required. First, "[i]f the applicant intends to register a work that contains a minimal amount of unclaimable material, the applicant need not identify or disclaim that material in the application."[13] Second, there is no need to exclude "material that is uncopyrightable, such as facts or mere ideas," or "attributions, citations, or direct quotations," which may be indicated by "the quotation[] marks themselves," "blocks of text that have been indented and set aside from the rest of the text," or "attributions, citations, or other bibliographic references."[14] Finally, "[i]f it is clear that the claimant is not asserting a claim to copyright in the unclaimable material that appears in the work," and the applicant does not identify the unclaimable material in the appropriate field/space of the application, "the registration specialist may register the claim without communicating with the applicant."[15] In certain cases, the registration specialist may annotate the registration record to clarify the extent of the claim and to identify material that is excluded from the claim.[16]

### B. Identifying the Author

An application for registration must include "the name . . . of the author or authors," unless the work is anonymous or pseudonymous.[17] The Supreme Court has explained that, other

---

[12] *Id.* § 621.1.
[13] *Id.* § 621.2; *see also id.* § 621.9(A)(1).
[14] *Id.* § 621.2.
[15] *Id.* § 621.9(A)(2).
[16] *Id.* § 621.9.
[17] 17 U.S.C. § 409(2).

than in the case of a work made for hire, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."[18]

When completing the "author" field in a registration application, "the applicant should only provide the name(s) of the author(s) [or work made for hire author] who created the copyrightable material that the applicant intends to register."[19] The author field is not intended to include the names of individuals whose contributions were "*de minimis* or uncopyrightable."[20] Likewise, the applicant should not include "the name of any person who created material that is not owned by the copyright claimant or material that the applicant does not intend to register."[21] COMPENDIUM (THIRD) provides the example of an application submitted for a 500-page biography and a separately authored foreword that names only the author of the biography as the author of "text." In this case, the registration specialist will register the claim because it is clear that the applicant intends to register only the text of the biography, rather than the text of the foreword.[22]

### C. The Role of Supplementary Registration

The Copyright Office recognizes that there may be a need for a registrant to correct certain errors or provide additional information after a registration has been issued. It therefore permits the filing of an application for a supplementary registration to correct certain errors or

---

[18] *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *see also* COMPENDIUM (THIRD) § 613.1.
[19] COMPENDIUM (THIRD) § 613.3.
[20] *Id.*
[21] *Id.* § 613.10(C).
[22] *Id.*

amplify the information provided in a copyright registration.[23]  The availability of a supplementary registration to correct errors is limited.  The current version of COMPENDIUM (THIRD), which would apply to any application for supplementary registration filed now, provides that a supplementary registration can be used to "correct or amend the information that appears on the certificate of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work," so long as the authorship described in the application for supplementary registration is registrable.[24]

If an application for supplementary registration to correct or amplify the registration record is approved, the Office will prepare a certificate of supplementary registration that contains pertinent information from the application, create a public record that identifies and describes the changes or revisions that have been made, and assign a separate registration number and EDR[25] to the supplementary registration.[26]  The Office will not cancel or replace the original registration or the public record of that registration, or change the information or EDR set forth therein.  Instead, the original registration and the supplementary registration, including the EDRs for each, coexist with each other in the public record because the "supplementary registration augments — but does not supersede — the information" submitted in the original

---

[23] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1802 (3d ed. 2021) ("2021 COMPENDIUM (THIRD)").  However, the Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute.  2021 COMPENDIUM (THIRD) § 1802.9(G).
[24] 2021 COMPENDIUM (THIRD) § 1802.6(J).
[25] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office."  2021 COMPENDIUM (THIRD) § 1802.12.
[26] *Id.* § 1802.10.  The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration.  *Id.* § 1802.11.

registration.[27] The current version of COMPENDIUM (THIRD) explicitly defers to a court to determine whether the changes in the supplementary registration should be deemed effective as of the original EDR, or the EDR for the supplementary registration, providing the following guidance:

> The Office maintains both records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[28]

## II. Register's Response to Court's Request

Applying the foregoing governing statutory and regulatory standards, and its examining practices to the question here, the Register concludes that, had the Office been aware that Ms. Oliver did not create or own the copyright in the artistic bench pictured in the deposit materials submitted with the application for registration, it would have refused to register the work. Although Ms. Oliver testified that she did not intend to register the copyrightable elements on the artistic bench,[29] on her application for registration she named herself as the sole author and claimant, and asserted an unlimited claim to the copyrightable elements contained in the submitted deposit materials. Unlike some of the examples described above, nothing in her

---

[27] *Id.* § 1802; 17 U.S.C. § 408(d).
[28] 2021 COMPENDIUM (THIRD) § 1802.12.
[29] *See* Order at 14; Zoom Dep. of Lauren Adele Oliver at 3, ECF No. 236-4. As the Court noted, the bench is a useful article. *See* 17 U.S.C. § 101 (defining "useful article" as those "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."). Useful articles may receive copyright protection "only if, and only to the extent that," they incorporate pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article. *Id.* § 101 (definition of "pictorial, graphic, and sculptural works"). The Office applies the test articulated by the Supreme Court in *Star Athletica, LLC v. Varsity Brands, Inc.* to determine whether a sculptural feature "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated." 137 S. Ct. 1002, 1007 (2017).

application made clear to the Office that she did not own or intend to register the authorship in the artistic bench.  Therefore, Ms. Oliver was required to disclaim the artistic bench in her application.[30]

Had the registration specialist been aware of the facts as now presented, the specialist would have asked Ms. Oliver either to identify all of the authors who contributed copyrightable authorship to the work submitted for registration, or to exclude the artistic bench from the application.  As noted above, her registration can now be corrected through the filing of an application for a supplementary registration.[31]  Such a supplementary registration application could amend her existing registration to exclude the copyrightable elements in the artistic bench.  However, because Ms. Oliver's registration is the subject of litigation, the Office would follow its usual practice to decline to consider a supplementary registration until resolution of the dispute.[32]  The Office will depart from its usual practice if the Court advises it that the supplementary registration application can proceed despite the pendency of the litigation.

If Ms. Oliver files a supplementary registration application and it is accepted, the supplementary registration would be assigned a new EDR.  It would then be within the Court's discretion to determine whether the errors in the original registration were material or not and

---

[30] Ms. Oliver does not argue, and the Court does not suggest, that the art installation is a "joint work."  A work is considered a "joint work" if it is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101 (definition of "joint work"). If the work is a "joint work," then each joint author owns the copyright in the entire work.  *Id.* § 302(b); H.R. REP. NO. 94-1476, at 121 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736 (joint authors are "treated generally as tenants in common, with each co-owner having an independent right to use or license the use of a work").  To be considered a joint author, a person must "contribute a sufficient amount of original authorship to the work." COMPENDIUM (THIRD) § 505.2.  If the art installation was a "joint work," then Ms. Oliver should have identified Ms. Lee as an author in her registration application.  *Id.* § 613.5.
[31] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2021 COMPENDIUM (THIRD) § 1802.
[32] *See* 2021 COMPENDIUM (THIRD) § 1802.9(G) (noting that the Office may decline to issue a supplementary registration if it is "aware that there is actual or prospective litigation" involving an original registration).

whether the amended registration should be "deemed effective as of the date that the [original] registration was made or the date that the supplementary registration was made."[33]  The Court may, based on its assessment of the significance of the errors, deem the changes effective as of the original EDR, rather than the EDR of any supplementary registration.

## CONCLUSION

After review of the available facts in this action along with the Court's analysis and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that the Office would have refused the registration if it had been aware that Ms. Oliver was not the author or owner of the copyright in the artistic bench depicted in the deposit materials for her application.  This error, however, may be remedied by the filing of a supplementary registration application to amend the original registration to exclude the artistic bench.

Dated: February 2, 2023

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov

---

[33] *Id.* § 1802.12.