## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LAUREN ADELE OLIVER,

     Plaintiff,

v.                                        Civ. No. 20-237 KK/SCY

MEOW WOLF, INC., *et al.,*

     Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on: (1) Defendants' Motion to Invalidate Plaintiff's Copyright Registration VA 1-90-174 (Doc. 538), filed March 24, 2023 ("Motion to Invalidate")[1]; (2) Plaintiff's Motion to Allow Plaintiff's Supplementary Registration Application to Proceed Before the Copyright Office (Doc. 539) ("Motion to Allow"), filed March 24, 2023; and, (3) Defendants' Motion to Exclude from Consideration Plaintiff's New Factual Declaration Submitted for the First Time in Reply Brief (Doc. 552) ("Motion to Exclude"), filed April 28, 2023. Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, the Court FINDS that Defendants' Motion to Invalidate and Motion to Exclude are well-taken and should be GRANTED, and Plaintiff's Motion to Allow is not well-taken and should be DENIED.

---

[1] In her amended complaint, Plaintiff refers to two copyright registrations, numbered TXu 2-144-749 and VA 2-170-075. (Doc. 148 at 11.) Likewise, Defendant Meow Wolf, Inc.'s Motion for Referral of Registration Questions under 17 U.S.C. § 411(b)(2) to the Register of Copyrights (Doc. 236), as well as Plaintiff's response to that motion (Doc. 250), address copyright registrations numbered TXu 2-144-749 and VA 2-170-075. (*See* Docs. 236-1, 236-3, 250-5, 250-6.) And the Register of Copyrights, responding to the question the Court referred to her, addresses the "VA" registration numbered VA0002170075. (Doc. 529 at 1-2.) Defendants' Motion to Invalidate plainly concerns the "VA" registration referenced in Plaintiff's amended complaint and the Register's response, *i.e.*, VA 2-170-075, (*see generally* Docs. 148, 529, 538), and Plaintiff has not challenged the motion on the basis that it refers to this registration by a different number or concerns a different registration. (*See generally* Doc. 545.) Thus, the copyright registration number Defendants use in their Motion to Invalidate appears to be a typographical error and the Court will construe the motion as addressing the registration numbered VA 2-170-075.

## I. <u>Procedural History and Factual Findings</u>[2]

The parties' disputes in this matter arise out of Plaintiff's installation of a visual work of art called Ice Station Quellette ("ISQ") in a permanent exhibition in Santa Fe, New Mexico, called the House of Eternal Return ("HoER"). (Docs. 148, 183.) Defendant Meow Wolf, Inc. ("MWI") operates the HoER, and Defendant Vince Kadlubek was formerly the company's CEO. (*Id.*; Doc. 348-3 at 2.) Plaintiff filed her original complaint against Defendants in March 2020, asserting claims for copyright infringement and violation of the Visual Artists Rights Act ("VARA"), as well as several state law claims sounding in contract and tort. (Doc. 1.) In June 2021, Plaintiff amended her complaint, adding new factual allegations and new and modified state law claims. (Doc. 148.) Defendant MWI, in turn, filed a declaratory judgment counterclaim sounding in contract in July 2021. (Doc. 183.)

In her amended complaint, Plaintiff refers to two copyright registrations, *i.e.*, the registrations numbered TXu 2-144-749 ("TXu Registration") and VA 2-170-075 ("VA Registration").[3] (Doc. 148 at 11.) The TXu Registration has an effective date of registration ("EDR") of June 24, 2018, and pertains to "Ice Station Quellette," an "unpublished collection" created in 2017 and consisting of "artwork, additional text[,] and photographs" but excluding "some" pre-existing "text and photographs from other sources." (Doc. 250-5 at 2.) The deposit[4] for the TXu Registration includes but is not limited to photographs of the version of ISQ installed

---

[2] The Court presumes that the parties are familiar with this matter's factual background, which the Court has described in prior orders and will not repeat here. (*See* Doc. 59 at 1-4, Doc. 135 at 1-4, Doc. 325 at 1-3, *and* Doc. 499 at 2-6.)

[3] The Copyright Office's "TX" classification is for "[n]ondramatic literary works" and its "VA" classification is for "[w]orks of the visual arts." 37 C.F.R. § 202.3(b)(1)(i), (iii).

[4] The Copyright Act requires applicants to "deposit" the work to be registered with the Register of Copyrights. 17 U.S.C. § 408(a). The specific requirements for deposits differ depending on whether the work has been published, whether it was published outside the United States, and whether it is a contribution to a collective work. 17 U.S.C. § 408(b).

in the HoER. (Doc. 236-1 at 5-26.) At her deposition, Plaintiff testified that this registration is "for the whole Ice Station project, and I believe that [is] covering the story, because … it's a much larger project than what you just see at Meow Wolf."[5] (Doc. 236-4 at 4.)

The VA Registration has an EDR of September 19, 2019, and pertains to "Ice Station Quellette - The Last Ice on Earth," created in 2016 and published on March 16, 2016. (Doc. 250-6 at 2.) It consists of "photograph[s], 2-D artwork, sculpture, [and t]ext" with "[p]ictorial, graphic, and sculptural features identified separately from and capable of existing independently of the utilitarian aspects of a useful article." (*Id.*) It excludes pre-existing "[t]ext" and the material covered by the TXu Registration. (*Id.*; Doc. 529 at 2.) The deposit for this registration consists exclusively of photographs and drawings of the version of ISQ installed in the HoER. (Doc. 236-3 at 5-45.) Plaintiff testified that the VA Registration is for "the Ice Station piece at Meow Wolf." (Doc. 236-4 at 4.)

Plaintiff included an artistic bench in her deposit for the VA Registration. (Doc. 236 at 3, 8; Doc. 236-3 at 6, 13; Doc. 236-4 at 2-3.) It is the sole object in the first photograph in the deposit and is also shown from above in another photograph.[6] (Doc. 236-3 at 6, 13.) At her April 8, 2021 deposition, Plaintiff testified that "Katherine Lee designed the bench." (Doc. 236-4 at 2.) Nevertheless, on her application for the VA Registration, Plaintiff listed herself as the sole author of the work to be registered. (Doc. 236-3 at 2-3; Doc. 250-6 at 2.)

---

[5] Plaintiff further testified that "a children's book" is "maybe" the Copyright Office's "analog for what [the TXu Registration] represent[s], with the story and images that were integrated." (Doc. 236-4 at 4.) Relatedly, the Register of Copyrights referred to the material protected by the TXu Registration as a "brochure." (Doc. 529 at 2.)

[6] One edge of the bench can also be seen in a third photograph in the deposit. (Doc. 236-3 at 30.)

At Plaintiff's deposition, defense counsel asked her why she included the bench in the deposit for the VA Registration even though she did not make it. (Doc. 236-4 at 3.) Plaintiff responded,

> [b]ecause it was part of the overall piece. I didn't realize I did that, and I think that was probably a slip. That was copyrighted by [Ms. Lee]. Certainly if you look at all my materials, I take great pains to credit her, so, you know, the entire piece was what I was copyrighting, but thank you for pointing that out.

(*Id.*) Defense counsel then stated, "[s]o that was a mistake," to which Plaintiff responded, "I would have to say that there's – she definitely owns the copyright for that design." (*Id.* at 3-4.)

On November 4, 2021, Defendant MWI filed a Motion for Referral of Registration Questions under 17 U.S.C. § 411(b)(2) to the Register of Copyrights (Doc. 236) ("Motion for Referral"), in which it asked the Court to ask the Register of Copyrights ("Register") whether she would have refused the TXu and VA Registrations if she had known that Plaintiff's registration applications included inaccurate information. In the motion, Defendant argued, among other things, that Plaintiff knowingly and inaccurately included the bench in the VA Registration deposit without identifying Ms. Lee as its author. (Doc. 236 at 3-4, 8.) Plaintiff responded in opposition to the motion on November 18, 2021, and Defendant replied in support of it on December 22, 2021. (Docs. 250, 270.) In addition, Plaintiff filed a surreply on January 13, 2022; Defendant filed a supplemental brief on March 16, 2022; and, Plaintiff responded to Defendant's supplemental brief on March 30, 2022. (Docs. 282, 335, 346.)

In the briefing on Defendant's Motion for Referral, Plaintiff made three arguments to defend her inclusion of the bench in the VA Registration deposit without identifying Ms. Lee as its author. (Doc. 250 at 6-8.) Specifically, Plaintiff argued that: (1) the bench was not copyrightable because it is a useful article; (2) the bench was not included in the scope of her application for the VA Registration; and, (3) Plaintiff "included the bench unknowingly and accidentally." (*Id.*)

Elaborating on the third argument, Plaintiff refused to "concede" that "identification of the creator of the bench … was legally required … or that she did not 'design' the bench." (Doc. 346 at 3-4.) Nevertheless, she asserted, her failure to identify Ms. Lee as the bench's author "was at most a simple mistake of law," because she "was not aware … that she might have been required" to do so. (*Id.*)

The Court granted Defendant's Motion for Referral as to the VA Registration in a Memorandum Opinion and Order (Doc. 492) ("Referral Order") filed on August 25, 2022. In its order, the Court first noted Plaintiff's testimony admitting that Ms. Lee designed the bench, her inclusion of the bench in the VA Registration deposit, and the fact that she listed herself as the sole author of the work to be registered. (*Id.* at 14-16.) Then, the Court rejected each of Plaintiff's arguments defending this course of conduct. (*Id.*)

Particularly pertinent here, the Court found Plaintiff's third argument—*i.e.*, that she did not know she needed to identify Ms. Lee as the bench's author—"wholly implausible, and not only because authorship is the basis of copyright." (*Id.* at 16 (citing 17 U.S.C. §§ 102(a), 201(a)).) The Court explained:

> when Plaintiff applied for the TXu Registration, [Copyright Office examiner Ashley] Emmett told her that her application should identify material from other sources…. Ms. Emmett informed Plaintiff of this requirement on May 13, 2019, and Plaintiff applied for the VA Registration on September 19, 2019…. In short, Plaintiff was at best willfully blind to the need to identify Ms. Lee as the bench's author when she applied for the VA Registration.

(*Id.* (citing Doc. 236-3 at 3; Doc. 250-4 at 2) (quotation marks and footnote omitted).) Thus, the Court found, "Defendant has shown that Plaintiff knowingly and inaccurately indicated that she authored the bench Ms. Lee designed on her application for the VA Registration." (*Id.*) Based on this finding, the Court referred the following question to the Register under 17 U.S.C. § 411(b):

> Whether the Register of Copyrights would have refused Registration No. VA 2-170-075 had she been made aware that the applicant did not create or own the copyright in the artistic bench pictured [in] the deposit material.

(*Id.* at 18.)

The Register filed her response to the Court's Referral Order (Doc. 529) ("Register's Response") on February 3, 2023. In it, the Register advised the Court that the Copyright Office "would have refused the [VA Registration] if it had been aware that [Plaintiff] was not the author or owner of the copyright in the artistic bench depicted in the deposit materials for her application." (*Id.* at 10.) The Register added that Plaintiff could correct this inaccuracy by filing "a supplementary registration application to amend the original registration to exclude the artistic bench." (*Id.*) However, the Register noted that

> because [Plaintiff's] registration is the subject of litigation, the Office would follow its usual practice to decline to consider a supplementary registration until resolution of the dispute. The Office will depart from its usual practice if the Court advises it that the supplementary registration application can proceed despite the pendency of the litigation.

(*Id.* at 9 (footnote omitted).)

On March 24, 2023, in reaction to the Register's Response, the parties filed the dueling motions now before the Court. (Docs. 538, 539.) In their Motion to Invalidate, Defendants ask the Court to declare the VA Registration invalid under 17 U.S.C. § 411(b). (Doc. 538 at 1, 7.) In her Motion to Allow, Plaintiff asks the Court to advise the Copyright Office that Plaintiff's supplementary registration application to exclude the bench from the VA Registration can proceed while this litigation is pending. (Doc. 539 at 3.) The parties filed responses to the motions on April 7, 2023, and replies in support of them on April 21, 2023. (Docs. 544, 545, 548, 549.) In addition, on April 28, 2023, Defendants filed their Motion to Exclude, asking the Court to exclude from its consideration the evidence Plaintiff submitted for the first time with her reply in support of her

6

Motion to Allow. (Doc. 552.) Plaintiff responded in opposition to the Motion to Exclude on May 12, 2023, and Defendants replied in support of it on May 26, 2023. (Docs. 560, 561.)

## II.  <u>Analysis</u>

In their briefs regarding the motions now before the Court, Defendants argue that the Court should declare the VA Registration invalid under 17 U.S.C. § 411(b), because the Court has found that Plaintiff knowingly included inaccurate information on her registration application, and the Register has stated that the inaccuracy, if known, would have caused her to refuse the registration. (Doc. 538 at 2.) Defendants tacitly concede that Plaintiff could try to correct the inaccuracy by submitting an application for supplementary registration to exclude the bench Ms. Lee designed. (Doc. 544 at 4-5.) However, they assert that the Court should not direct the Register to consider such an application while this litigation is pending. (*Id.*) According to Defendants, "[s]upplementation is inappropriate during litigation … if it seems likely that the proposed change would be directly at issue" or "may confuse or complicate the pending dispute." (*Id.*) And here, Defendants add, "a supplemental registration would inject a new [EDR] into this case when [P]laintiff's [EDR] is highly consequential." (Doc. 538 at 3.) It would also, Defendants argue, substantially delay the case and unfairly prejudice Defendants. (*Id.* at 6; Doc. 544 at 6-7.)

Plaintiff, conversely, asks the Court "to advise the [Copyright] Office that Plaintiff's supplementary registration application can proceed while the litigation is pending,"[7] and argues that it would be premature to invalidate the VA Registration before the Register decides whether to accept the supplementary registration. (Doc. 539 at 3; Doc. 545 at 2, 6.) According to Plaintiff, "federal courts across the country have allowed parties to file supplemental registrations to amend

---

[7] The way this request is phrased suggests that Plaintiff has already filed an application for supplementary registration; however, neither she nor Defendants expressly indicate that she has actually done so. (*See generally* Docs. 538, 539, 544, 545, 548, 549.)

applications" while litigation is pending, and Plaintiff will be "severely prejudiced" if the Register does not consider her supplementary application until after this litigation is concluded. (Doc. 539 at 2.) Plaintiff further contends that "the bench … has no relevance to the facts of this case," and Defendants have not relied on its inclusion in the registration to their detriment. (Doc. 545 at 3.) Plaintiff adds that allowing her application for supplementary registration to proceed will not create confusion in this litigation because the applicable EDR "should be the date of the original registration." (*Id.* at 6.) Finally, notwithstanding the Court's prior finding to the contrary, Plaintiff again argues that she did not knowingly make any misstatements to the Copyright Office. (*Id.* at 3.) For the first time in her reply in support of her Motion to Allow, Plaintiff supports this argument with evidence to suggest that the principal photo of the bench in the VA Registration deposit was included in the deposit due to her copyright attorney's "clerical error." (Doc. 548 at 2; Doc. 548-1.)

## A.      In its present form, the VA Registration is invalid under 17 U.S.C. § 411(b).

Section 411(a) of the Copyright Act provides that copyright registration is generally a prerequisite for bringing a copyright infringement action.[8] 17 U.S.C. § 411(a); *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, — U.S. —, 142 S. Ct. 941, 944 (2022). "To obtain registration, the author of a work must submit to the Register of Copyrights a copy of the work and an application." *Unicolors, Inc.*, 142 S. Ct. at 945. "If the Register determines that the work is copyrightable and meets other statutory requirements" based on the application, "she will issue a

---

[8] Section 411(a) "allows courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) (emphasis omitted). In addition, Section 411(c) "permits courts to adjudicate infringement actions over certain kinds of unregistered works" not at issue here "where the author declares an intention to secure copyright in the work and makes registration for the work, if required by subsection (a), within three months after the work's first transmission." *Id.* (quotation marks and brackets omitted). But neither side alleges that any of these exceptional circumstances are present here.

certificate of registration." *Id.* "The information on this certificate reflects the information that the copyright holder provided on the application." *Id.*

Section 411(b)(1) provides a "safe harbor" for claimants who inadvertently include inaccurate information on a registration application. *Id.* Specifically, under this provision,

> [a] certificate of registration satisfies the requirements of this section and section 412,[9] regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1). For the following reasons, the Court finds as a matter of law that Section 411(b) does not preserve the VA Registration from invalidation in its present form, because Plaintiff included inaccurate information on her application with knowledge that it was inaccurate, and the inaccuracy, if known, would have caused the Register to refuse registration.

As to the first point, the Court made the following finding in its Referral Order: "Defendant [MWI] has shown that Plaintiff knowingly and inaccurately indicated that she authored the bench Ms. Lee designed on her application for the VA Registration." (Doc. 492 at 16.) The Court so found after considering the evidence the parties submitted in their briefing on Defendant's Motion for Referral, including Plaintiff's application for the VA Registration, the registration deposit, Plaintiff's deposition and declaration, and e-mails between Plaintiff and copyright examiner Emmett. (Docs. 236-3, 236-4, 250-3, 250-4, 250-6, 250-7, 335-1; *see also* Doc. 492 at 14-16.) Implicit in the Court's unqualified finding is that Plaintiff failed to show a genuine issue of material fact regarding whether she knowingly and inaccurately represented that she authored the bench Ms. Lee designed. (Doc. 492 at 14-16.)

---

[9] Under Section 412, "a plaintiff in an infringement action normally cannot obtain an award of statutory damages or attorney's fees for infringement that occurred prior to registration." *Unicolors, Inc.*, 142 S. Ct. at 945 (citing 17 U.S.C. § 412).

Plaintiff now attempts to show a genuine factual dispute on this point by presenting new evidence in her reply in support of her Motion to Allow. Specifically, she declares:

> [w]hile investigating the background of my copyright applications as part of responding to Defendants' filings with regard to [the Motion to Allow], I reviewed what I provided to my copyright attorney and saw that I used "Bench – designed and built by Katherine Lee" as the title of the JPEG document that bears the bench. … I provided this document, along with other images relevant to the copyright, to my copyright attorney in a folder titled "ISQ Misc Elements," and my copyright attorney apparently included all photos from the file to the Copyright Office…. The Copyright Office then included all the photos, including the bench, in the deposit[.][10]

(Doc. 548-1 at 2.) Plaintiff also proffers a screenshot and metadata to support her declaration. (Doc. 548-2 at 2; Doc. 548-3 at 2.) Plaintiff does not claim that she disclosed the facts set forth in her declaration, or produced the supporting screenshot and metadata to Defendants, during discovery, (*see generally* Doc. 560), and Defendants affirmatively state that she did not produce the screenshot and metadata. (Doc. 561 at 2.)

There are at least four problems with Plaintiff's new evidence, which prevent it from creating a genuine issue of material fact. First, as Defendants point out in their Motion to Exclude, (Doc. 552 at 1-2), courts generally do not consider new arguments or evidence presented for the first time in a reply and must either permit a surreply or refrain from relying on the new material. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); *Belshaw v. Yost*, No. 22-cv-324, 2022 WL 17848108, at *12 (D.N.M. Dec. 22, 2022); *Welch v. City of Albuquerque*, No. 11-cv-700, 2016 WL 8809479, at *3 n.6 (D.N.M. May 13, 2016); *Harvey v. THI of New*

---

[10] In her declaration, Plaintiff states that the Copyright Office included all of the photos from the "ISQ Misc Elements" file in the VA Registration deposit "despite the title of the bench file being named 'Bench – designed and built by Katherine Lee.'" (Doc. 548-1 at 2.) In so declaring, Plaintiff appears to imply that her copyright attorney submitted the bench file to the Copyright Office using that title. However, Plaintiff does not directly state that he did so, nor does she demonstrate that she has any personal knowledge on this point. As such, even if the Court were to consider Plaintiff's declaration, the Court could not rely on it to find a genuine issue of material fact regarding what information her copyright attorney provided to the Copyright Office about the bench.

*Mexico at Albuquerque Care Ctr., LLC*, No. 12-cv-727, 2013 WL 12329078, at *6 (D.N.M. Sept. 30, 2013); *Alexander v. New Mexico Vocational Rehab.*, No. 07-cv-230, 2008 WL 11399605, at *7 (D.N.M. Sept. 25, 2008). "It is unfair to the opposing party for the court to consider new issues submitted with a reply; it deprives the opposing party of a chance to respond and it deprives the court of the benefit of full briefing." *Alexander*, 2008 WL 11399605 at *7.

Second, Plaintiff was on notice of Defendant MWI's position that she had knowingly misrepresented the authorship of the bench in her VA Registration application no later than November 4, 2021. (Doc. 236 at 3-4, 8.) Yet, not until April 21, 2023, did Plaintiff submit any evidence to suggest that her copyright attorney included the bench in the VA Registration deposit even though she effectively told him that Ms. Lee authored it. (Docs. 548-1, 548-2, 548-3; *see generally* Docs. 250, 282, 346, 539, 545.) Nor does Plaintiff explain why she waited for almost a year and a half to come forward with such evidence, even though she filed no fewer than four other pleadings related to the improper inclusion of the bench in the VA Registration deposit during this period. (Docs. 250, 346, 539, 545.)

Third, Plaintiff's new evidence is inconsistent with her prior refusal to "concede … that she did not 'design' the bench," as well as her prior argument that she did not identify Ms. Lee as the bench's author when she applied for the VA Registration because she "was not aware … that she might have been required to" do so. (Doc. 346 at 3-4.) Nor does Plaintiff offer any justification for why her position has changed so conspicuously over the course of litigating this issue. In short, "[b]ecause Plaintiff had ample opportunity earlier in these proceedings" to present the discrepant new evidence she now relies on, "and Defendants have not had the opportunity to rebut this new[]"

  
evidence, or even to take discovery about it, the Court declines to consider it.[11] *Sec. USA Servs., LLC v. Invariant Corp.*, 606 F. Supp. 3d 1100, 1108 n.3 (D.N.M. 2022).

 Finally, and perhaps most fatally, even if the Court were to consider Plaintiff's new evidence, it would not help her. At most, this evidence shows that Plaintiff's attorney, rather than Plaintiff herself, knowingly and inaccurately indicated that Plaintiff authored the bench Ms. Lee designed in applying for the VA Registration. And in general, courts hold civil litigants "accountable for the acts and omissions of their attorneys," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993), "declin[ing] to visit the sins of a plaintiff's lawyer upon the defendant." *Nelson v. Boeing Co.*, 446 F.3d 1118, 1121 (10th Cir. 2006) (quotation marks and brackets omitted). Civil litigants voluntarily choose their counsel and "cannot … avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer Inv. Servs. Co.*, 507 U.S. at 397. Plaintiff has not identified any applicable exception to this general rule, nor is the Court aware of any.[12] Thus, even if, as Plaintiff's new evidence suggests, the fault lies with her attorney rather than herself, the Court would be required to hold her accountable for it.[13] For all of the above reasons, the Court declines to revisit its finding that Plaintiff knowingly included

---

[11] Also, the Court is wholly unwilling to reopen discovery so that Defendants can take discovery on the new evidence Plaintiff has submitted because this case is already over three years old and the discovery and dispositive motions deadlines expired over a year ago. (Doc. 240.)

[12] Exceptions not applicable here include "the unique situation of sanctions, where it can be appropriate to attribute fault between counsel and client in order to determine where an appropriate penalty should fall," *Handy v. City of Sheridan*, 636 F. App'x 728, 732 n.2 (10th Cir. 2016), and situations where an attorney acts "without authority," *e.g.*, where an attorney agrees to settle a lawsuit without the client's consent or "where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf." *United States v. Hopkins*, 329 F.R.D. 285, 316 n.9 (D.N.M. 2018); *Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 670 n.12 (D.N.M. 2017).

[13] Notably, although Plaintiff now *suggests* that the fault lies with her copyright attorney, she does not accuse her attorney outright, nor does she directly describe the relevant attorney-client communications between them, such as precisely what information the attorney asked her to send him, precisely what she told the attorney she was sending, and whether she and her attorney had any follow-up communications about what she sent. (*See generally* Doc. 548-1.) As such, Plaintiff's latest declaration still allows for the possibility that the fault lies with her personally.

inaccurate information on her application for the VA Registration within the meaning of 17 U.S.C. § 411(b).

Turning to the second condition required to exclude a copyright registration from Section 411(b)'s protection—*i.e.*, that the inaccuracy at issue, if known, would have caused the Register to refuse the registration—here, the Register has expressly stated that, "had the [Copyright] Office been aware that [Plaintiff] did not create or own the copyright in the artistic bench pictured in the deposit materials submitted with the application for [the VA Registration], it would have refused to register the work." (Doc. 529 at 8.) Moreover, the Register provided a clear and cogent explanation for her assessment, (*see generally id.*), which the Court discerns no reason to reject. Nor has Plaintiff presented any evidence or argument to persuade the Court to quarrel with the Register's assessment. Thus, though the Court "is not abdicating to the Register its duty to determine" this question, the Court is persuaded by the Register's "advisory opinion based on her expert knowledge of the [Copyright Office's] registration policies and procedures." *HealtheState, LLC v. United States*, 160 Fed. Cl. 91, 97 (Fed. Cl. 2022).

Having concluded that the two conditions for exclusion from Section 411(b)'s safe harbor have been met, the Court must next consider the effect of that exclusion. The Ninth Circuit has held that where "(1) there is no genuine dispute over whether [the p]laintiff knowingly included inaccurate information on its application," and "(2) the Register of Copyrights told the court that it would have refused registration had it known about the inaccurate information[,]" a copyright registration is "invalid" under 17 U.S.C. § 411(b). *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670 (9th Cir. 2020) ("*SellPoolSupplies*"). And where a certificate of registration is invalid, the plaintiff "fail[s] to satisfy the registration precondition under 17 U.S.C. § 411 to bring a copyright infringement claim." *Id.*; *see also Neman Bros. & Assoc., Inc. v.*

*Interfocus, Inc.*, No. 20-cv-11181, 2023 WL 115558, at *13 (C.D. Cal. Jan. 4, 2023) (granting defendant summary judgment on plaintiff's copyright infringement claims pursuant to Section 411(b) where plaintiff submitted inaccurate information on registration applications with knowledge that it was inaccurate and inaccuracy, if known, would have caused Register to refuse registration).

Likewise, the United States District Court for the Western District of New York has explained that

> 17 U.S.C. § 411(b) requires the Court to answer two questions before invalidating a copyright registration: 1) whether the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate, and 2) whether the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. If the Court answers both questions in the affirmative, it should hold the registration invalid and thus incapable of supporting an infringement action.

*Argento v. Santiago for Love of Ramon LLC*, No. 16-cv-6172, 2018 WL 903516, at *1 (W.D.N.Y. Feb. 15, 2018) (quotation marks and citation omitted).

Neither Plaintiff nor the Court has uncovered any authority that contradicts the holdings in *SellPoolSupplies* and *Argento*.[14] (*See generally* Docs. 539, 545, 548.) Moreover, it is logical to conclude that a registration excluded from the safe harbor of Section 411(b) is invalid and incapable of supporting an infringement action. By delineating when a registration that "contains any inaccurate information" is valid, Section 411(b) also delineates by implication when it is not.

---

[14] Plaintiff does of course rely on caselaw in her briefs. For example, in her response to Defendants' Motion to Invalidate, Plaintiff cites to *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 854 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012), *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003), *Suzhou Angela Online Game Tech. Co. v. Snail Games USA Inc.*, No. 21-cv-9552, 2023 WL 2414261, at *6 (C.D. Cal. Mar. 7, 2023), *UAB "Planner5D" v. Facebook, Inc.*, No. 19-cv-3132, 2020 WL 4260733, at *5 (N.D. Cal. July 24, 2020), *Volumecocomo Apparel, Inc. v. Guess?, Inc.*, No. 11-cv-6694, 2012 WL 13009117, at *3 (C.D. Cal. July 27, 2012), and *Chirco v. Gateway Oaks, LLC*, No. 02-cv-73188, 2005 WL 1355482, at *4 n.5 (E.D. Mich. Apr. 29, 2005). (Doc. 545 at 1-6.) But there was no finding in any of the cases on which Plaintiff relies that Section 411(b)'s two conditions for exclusion had been met.

14

*Cf. Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1312 (10th Cir. 2012) ("[C]ommon sense, reflected in the canon *expressio unius est exclusio alterius,* suggests that the specification of one provision implies the exclusion of others.") (brackets and quotation marks omitted). Given the scarcity of caselaw directly on point, and the commonsense conclusion reached by the courts in *SellPoolSupplies* and *Argento*, this Court likewise concludes that a registration excluded from Section 411(b)'s safe harbor is invalid and incapable of supporting an infringement action under Section 411(a).

Here, as explained above, it is not genuinely factually disputed that: (1) Plaintiff included inaccurate information on her application for the VA Registration with knowledge that it was inaccurate; and, (2) the Register would have refused the registration if she had known of the inaccuracy. Thus, the two conditions for exclusion from the safe harbor provided by 17 U.S.C. § 411(b) have been met, and the VA Registration in its present form is invalid as a matter of law.[15] *SellPoolSupplies*, 804 F. App'x at 670; *Argento*, 2018 WL 903516 at *1. And because the registration is invalid, it is insufficient to support a copyright infringement action under 17 U.S.C. § 411(a). *SellPoolSupplies*, 804 F. App'x at 670; *Argento*, 2018 WL 903516 at *1.

**B.    The Court will not direct the Register to allow an application for supplementary registration to proceed while this litigation is pending.**

In her Response, the Register indicates that Plaintiff could correct the inaccuracy in the VA Registration by filing "a supplementary registration application to amend the original registration to exclude the artistic bench."[16] (Doc. 529 at 1, 9-10); *see generally* 17 U.S.C. § 408(d) (Register

---

[15] Plaintiff contends that the Register "refused" to invalidate the VA Registration "when presented with this question." (Doc. 545 at 2.) But the Court did not ask the Register to decide whether to invalidate the VA Registration, (Doc. 492 at 18), nor did the Register take up this question *sua sponte*. (*See generally* Doc. 529.) As such, the Register cannot be said to have "refused" to invalidate the registration.

[16] Plaintiff contends that the Register "invit[ed]" her to apply for supplementary registration. (Doc. 545 at 2.) In fact, the Register simply stated that Plaintiff could choose to do so. (Doc. 529 at 1, 9-10.) In accordance with the Register's

may establish procedures for filing applications for supplementary registration "to correct an error in a copyright registration or to amplify the information given in a registration"); 37 C.F.R. § 202.6 (setting forth conditions related to filing applications for supplementary registration). However, the Register also noted that

> because [Plaintiff's] registration is the subject of litigation, the Office would follow its usual practice to decline to consider a supplementary registration until resolution of the dispute. The Office will depart from its usual practice if the Court advises it that the supplementary registration application can proceed despite the pendency of the litigation.

(Doc. 529 at 9 (footnote omitted).)

According to the Compendium of U.S. Copyright Office Practices ("Compendium"),[17] the Register "may decline to issue a supplementary registration" while litigation is pending "if it seems likely that the proposed change would be directly at issue in the litigation" or "if it seems likely that the proposed change … may confuse or complicate the pending dispute." U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* ("*Compendium*") § 1802.9(G). The Compendium also states that the Register "may issue a supplementary registration" while litigation is pending if the proposed change is "minor" or "if the proposed change does not appear to be directly at issue in the dispute." *Id.* "Examples of minor changes or changes that are not likely to be at issue in a legal dispute include spelling mistakes, clerical errors, or changes to the title of the work." *Id.* Here, Plaintiff claims that the proposed change at issue—*i.e.*, to exclude the bench Ms.

---

statement, the Court notes that its invalidation of the VA Registration is limited to the registration *in its present form* and is not intended to prevent Plaintiff from applying for supplementary registration to correct the inaccuracy in the original registration.

[17] The United States Supreme Court has described the Compendium as "a non-binding administrative manual" that courts should follow "to the extent it has the power to persuade." *Georgia v. Public.Resource.Org, Inc.*, — U.S. —, 140 S. Ct. 1498, 1510 (2020) (quotation marks omitted). In her Response, the Register describes the Compendium as "an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law." (Doc. 529 at 3-4.)

Lee designed from the VA Registration—is a minor one to correct a clerical error, while Defendants contend that it would be directly at issue and would likely confuse or complicate the pending dispute.

Initially, the change Plaintiff proposes cannot be fairly characterized as a "minor" one to correct a "clerical error." *Compendium* § 1802.9(G). Plaintiff's failure to identify Ms. Lee as the author of the bench included in the VA Registration deposit was not a mere clerical error. Rather, it went to the central question of which works or elements Plaintiff authored and was therefore entitled to register. And removing the bench from the registration would not be a minor change like the correction of a misspelled word or a misstated title. Rather, it would substantively alter the scope of the registration.

Further, in light of the claims in Plaintiff's amended complaint, it seems likely that the proposed change would be directly at issue in the litigation and would confuse or complicate it. *Id.* In her amended complaint, Plaintiff seeks injunctive relief under the Copyright Act and VARA prohibiting Defendants from, among other things: (1) infringing or copying "any element of ISQ"; (2) removing, modifying, or destroying "ISQ at [the] HoER, or any element thereof"; and, (3) using "ISQ, or any element thereof," without attribution to Plaintiff.[18] (Doc. 148 at 24-25.) Plaintiff identified the bench as an "element of ISQ" in the VA Registration deposit, and has submitted other record evidence that supports the identification. (Doc. 236-3 at 6, 13; *see also, e.g.*, Doc.

---

[18] Although Plaintiff does not cite to any legal authority in the portion of her amended complaint seeking injunctive relief, she does reference the Copyright Act and VARA elsewhere in the pleading, and these statutory provisions are the only plausible bases for the claims for injunctive relief discussed here. (Doc. 148 at 1, 12-13, 17-19, 24-25); *see generally* 17 U.S.C. § 106(1) (Copyright Act grants owner exclusive right to copy her work); 17 U.S.C. § 106A (VARA grants author of visual art right of attribution and right to prevent prejudicial modification of her work and to prevent destruction of such work if "of recognized stature"); 17 U.S.C. § 501 (Copyright Act authorizes owner to sue for infringement); 17 U.S.C. § 502(a) (Copyright Act authorizes court to enjoin infringement).

420-16 at 6.) Thus, her claims for injunctive relief plainly include the bench.[19] Nor has Plaintiff ever moved to amend her operative complaint to exclude the bench from these claims.

In light of these circumstances, the change Plaintiff proposes would directly impact her claims for injunctive relief under the Copyright Act. Excluding the bench from the VA Registration would remove from the registration an element of ISQ that Plaintiff has sought to enjoin Defendants from infringing or copying. And as noted in Section II.A., *supra*, registration is generally a prerequisite for bringing a civil action for copyright infringement, *Unicolors, Inc.*, 142 S. Ct. at 944, including an action to enjoin an infringer from continued violation of the owner's exclusive rights. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, — U.S. —, 139 S. Ct. 881, 891 (2019). If the bench were excluded from the VA Registration, it is likely that Plaintiff would no longer be able to satisfy the statutory prerequisite of registration with respect to her claims seeking to enjoin Defendants from infringing or copying the bench.[20]

In addition, the proposed change to the VA Registration would likely confuse or complicate Plaintiff's claims for injunctive relief under VARA, even though registration is not a prerequisite for such claims.[21] 17 U.S.C. §§ 106A, 411(a). Again, in her amended complaint, Plaintiff asks the

---

[19] Plaintiff's request for injunctive relief prohibiting Defendants from "displaying … any element of ISQ" obviously encompasses the bench as well. (Doc. 148 at 24-25.) However, the Court has already granted Defendants summary judgment on Plaintiff's claims for copyright infringement based on the display of ISQ at the HoER on other grounds; and, these other grounds appear to undercut Plaintiff's claims for injunctive relief prohibiting Defendants from displaying the work. (*See generally* Doc. 499 at 15-42.)

[20] The TXu Registration does include a photograph of the bench. (Doc. 236-1 at 21.) However, the "TX" classification is for "literary works," and Plaintiff testified that the TXu Registration is for a story with integrated images, whereas the "VA" classification is for "[w]orks of the visual arts," and Plaintiff testified that the VA Registration is for the ISQ piece at the HoER. (Doc. 236-4 at 4); 37 C.F.R. § 202.3(b)(1)(i), (iii). It thus appears that the VA Registration includes the actual bench while the TXu Registration does not. The parties have not addressed whether Plaintiff properly included a photograph of the bench in the TXu Registration deposit, and the Court therefore does not consider that issue here.

[21] The Court recognizes that Defendants have moved for summary judgment on Plaintiff's VARA claims on other grounds, (Doc. 372), and that if the Court grants the motion in full, these claims will be eliminated. In that event, of course, the proposed change to the VA Registration would no longer confuse or complicate Plaintiff's VARA claims

Court to enjoin Defendants from removing, modifying, or destroying any element of ISQ, or using any such element without attribution, under VARA. (Doc. 148 at 24-25.) And as just explained, these claims plainly include the bench, because Plaintiff has identified the bench as an element of ISQ. But if Plaintiff were to remove the bench from the VA Registration deposit, she would appear to be taking the inconsistent position that the bench is *not* an element of ISQ, which would likely muddy the waters regarding her entitlement to include it in her VARA claims for injunctive relief. For these reasons, the change Plaintiff proposes appears likely to be directly at issue in this litigation and to confuse or complicate it,[22] and the Compendium indicates that the Court should decline to direct the Register to allow Plaintiff's application for supplementary registration to proceed while the litigation is pending. *Compendium* § 1802.9(G).

More broadly, the permissive language in the Compendium and the Register's Response make clear that it is within the Court's discretion whether to direct the Register to deviate from her usual practice and allow Plaintiff's application for supplementary registration to proceed while this litigation is pending. *Compendium* § 1802.9(G); (Doc. 529 at 9.) And here, it is not only the Compendium's guidance that persuades the Court to decline to exercise its discretion as Plaintiff requests. In addition, as explained below, the totality of the circumstances weighs against such an exercise of discretion.

First, it bears repeating that the Court has invalidated the VA Registration in its present form because Plaintiff *knowingly* included inaccurate information on her registration application.

---

for injunctive relief. However, it would still directly impact Plaintiff's claims for injunctive relief under the Copyright Act.

[22] In addition, the mere existence of a supplementary VA Registration would likely confuse or complicate this litigation by obfuscating the applicable EDR. (*See* Doc. 529 at 8-10.) The applicable EDR is pertinent here because Plaintiff has asserted claims for statutory damages and attorney fees under the Copyright Act, (Doc. 148 at 18, 25-26), which are generally unavailable for copyright infringements "commenced after the first publication of the work and before [its EDR]." 17 U.S.C. § 412(2).

In addition, as noted in Section II.A., *supra*, Plaintiff has taken inconsistent positions regarding why she included the bench in the VA Registration deposit without identifying Ms. Lee as its author, asserting in one pleading that she did so due to her own personal ignorance of legal requirements but suggesting in another that she did so due to her lawyer's mistake.[23] (*Compare, e.g.,* Doc. 346 at 3-4 *with* Doc. 548-1 at 2.) Further, she failed to promptly apply for a supplementary registration, and ask the Court to direct the Register to consider it, after defense counsel first alerted her to the inaccuracy in her application in April 2021. (Doc. 236-4 at 3-4.) Instead, she waited until (a) Defendant MWI filed its Motion for Referral on November 4, 2021, (Doc. 236), (b) regular and supplemental briefing on this motion was completed on March 30, 2022, (Doc. 346), (c) the Court granted the motion on August 25, 2022, (Doc. 492), (d) the Register responded to the Court's referral on February 3, 2023, (Doc. 529), and (e) more than another month passed, before filing her Motion to Allow on March 24, 2023. (Doc. 539.) In short, Plaintiff waited *almost two years* to ask the Court for the relief she now seeks. Yet she offers no explanation for the delay. The Court therefore finds that Plaintiff bears significant culpability for the circumstances leading to the invalidation of the VA Registration in its present form.

Moreover, Plaintiff's culpable conduct has unfairly prejudiced Defendants and substantially interfered with the judicial process. It was a direct cause of Defendant MWI's original Motion for Referral and associated briefing, (Docs. 236, 270, 335), Defendants' Motion to Invalidate and associated briefing, (Docs. 538, 549), Defendants' response to Plaintiff's Motion to Allow, (Doc. 544), and Defendants' Motion to Exclude and reply in support, (Docs. 552, 561). In

---

[23] Nor is this the only example of Plaintiff taking inconsistent positions in this case. As the Court observed in an order imposing sanctions against Plaintiff for spoliation of evidence, Plaintiff initially declared that, before June 2019, the idea of litigation against Defendants was "inconceivable" to her; but, she later "backstepped" to admitting that she considered the possibility of litigation "remote" but conceivable. (Doc. 522 at 2, 8-9 & n.5.) Notably, the Court ultimately concluded, based on a belatedly disclosed text message thread, that litigation with Defendants was in fact "reasonably foreseeable" and even "imminent" to Plaintiff before June 2019. (*Id.* at 10-11.)

addition, while the Motion for Referral was pending, the April 29, 2022 deadline for dispositive motions expired, (Doc. 240), requiring Defendants to file and brief at least three summary judgment motions regarding Plaintiff's copyright infringement claims, (*see* Docs. 277, 384, 391), even though those claims are predominantly if not entirely based on a copyright registration now found to be invalid in its present form.

Further, due to the plethora of dispositive motions filed in this case—including those necessitated by Plaintiff's culpable conduct—the Court found it necessary to vacate the trial set for November 28, 2022, and reset it for November 3, 2023, nearly a year later. (Docs. 284, 285, 489, 564.) And, granting Plaintiff's requested relief would cause yet more delay, while the Register considers Plaintiff's application for supplementary registration, the parties brief the issue of the applicable EDR, and the Court decides that issue as well as the remaining motions regarding Plaintiff's copyright infringement claims based on the VA Registration.

The Court recognizes that Plaintiff will be prejudiced by its refusal to direct the Register to deviate from her usual practice and consider Plaintiff's application for supplementary registration while this litigation is pending.[24] However, the Court does not find this prejudice to be unfair, for several reasons. First, as discussed above, it is in large part the result of Plaintiff's own culpable conduct. Second, Plaintiff has not identified a result less prejudicial to her that would as

---

[24] The Court also recognizes that this prejudice is not limited to the loss of Plaintiff's copyright infringement claims based on the VA Registration in this case. For example, if a nonparty were to use the work protected by the VA Registration in an infringing way, Plaintiff could not file suit against the nonparty until after this litigation ends and the Register issues a supplementary registration. 17 U.S.C. § 411(a). Of course, the EDR for the supplementary registration would be the date of Plaintiff's *application* for the registration, which she is free to submit whenever she likes. 17 U.S.C. § 410(d); *Compendium* § 1802.12. And "a copyright owner can recover for infringement that occurred both before and after registration" once the registration issues. *Fourth Est. Pub. Benefit Corp., LLC*, 139 S. Ct. at 886–87, 891. But it is possible Plaintiff would still be barred from suing a nonparty for damages by the Copyright Act's three-year statute of limitation in the unlikely event this litigation, plus the Register's subsequent processing of her application for supplementary registration, takes more than three years from the accrual of her claims against the nonparty. 17 U.S.C. § 507(b).

effectively alleviate the unfair prejudice to Defendants and interference with the judicial process she has caused. Third, without commenting on their viability, Plaintiff may have copyright infringement claims against Defendants that will survive this ruling or can be reasserted if her supplementary registration application is ultimately granted.[25] And finally, as to the possible impairment of any potential copyright infringement claims against nonparties: (a) in her briefing, Plaintiff has not identified any alleged infringers other than Defendants; (b) the Copyright Office allows claimants to seek expedited processing of registration applications for an additional fee,[26] *Compendium* §§ 623.2, 623.4; and, (c) it is likely that any infringement claims against nonparties would merely be delayed rather than wholly barred. *See Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 886–87, 891. In sum, both the Compendium and the totality of the circumstances just described persuade the Court to decline to direct the Register to deviate from her usual practice and allow Plaintiff's application for supplementary registration to proceed while this litigation is pending.

## C.   The Court will grant Defendants' Motion to Exclude.

As explained in Section II.A., above, courts generally do not consider new arguments or evidence presented for the first time in a reply and must either permit a surreply or refrain from relying on the new material. *Doebele*, 342 F.3d at 1139 n.13; *Belshaw*, 2022 WL 17848108 at *12; *Welch*, 2016 WL 8809479 at *3 n.6; *Harvey*, 2013 WL 12329078 at *6; *Alexander*, 2008 WL 11399605 at *7. And, Plaintiff was on notice of Defendant MWI's position that she knowingly misrepresented the authorship of the bench on her VA Registration application no later than November 2021. (Doc. 236 at 3-4, 8.) Yet, not until April 2023 did Plaintiff submit evidence to suggest that her copyright attorney included the bench in the VA Registration deposit even though

---

[25] For example, the Court's ruling in this Memorandum Opinion and Order would not affect any copyright infringement claims based on the work protected by the TXu Registration.

[26] In fact, Plaintiff appears to have applied for the VA Registration using this expedited process. (Doc. 236-3 at 4.)

she effectively told him that Ms. Lee authored it. (Docs. 548-1, 548-2, 548-3; *see generally* Docs. 250, 346, 539, 545.) Nor does Plaintiff explain why she waited so long to come forward with such evidence. Further, Plaintiff's new evidence is inconsistent with her prior positions regarding why she included the bench in the VA Registration deposit without identifying Ms. Lee as its author. (*See* Doc. 346 at 3-4.) Because Plaintiff has had ample opportunity earlier in these proceedings to present the new evidence she now relies on, and Defendants have not had the opportunity to rebut this new evidence, the Court has declined to consider it, and will therefore grant Defendants' Motion to Exclude. *Sec. USA Servs., LLC*, 606 F. Supp. 3d at 1108 n.3.

### III. Conclusion

IT IS THEREFORE ORDERED as follows:

1. Defendants' Motion to Invalidate Plaintiff's Copyright Registration VA 1-90-174 (Doc. 538), is GRANTED, and Plaintiff's copyright registration numbered VA 2-170-075 is declared to be invalid and inadequate to support claims of copyright infringement under 17 U.S.C. § 411 in its present form;

2. Plaintiff's Motion to Allow Plaintiff's Supplementary Registration Application to Proceed Before the Copyright Office (Doc. 539) is DENIED, and the Court declines to direct the Register of Copyrights to deviate from her usual practice and consider Plaintiff's application for supplementary registration of the copyright registration numbered VA 2-170-075 while this litigation is pending; and,

3. Defendants' Motion to Exclude from Consideration Plaintiff's New Factual Declaration Submitted for the First Time in Reply Brief (Doc. 552) is GRANTED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent